John E. MacDonald (Pa. Bar No. 82828)
    jmacdonald@constangy.com
CONSTANGY, BROOKS, SMITH &
    PROPHETE, LLP
989 Lenox Drive
Suite 206 (2nd Floor)
Lawrenceville, New Jersey 08648
Telephone: (609) 454-0096
Facsimile:  (609) 844-1102


Donald S. Prophete (admitted *pro hac vice*)
    dprophete@constangy.com
CONSTANGY, BROOKS, SMITH &
    PROPHETE, LLP
2600 Grand Boulevard, Suite 750
Kansas City, Missouri 64108-4600
Telephone: (816) 472-6400
Facsimile:  (816) 472-6401

Steven B. Katz (admitted *pro hac vice*)
    skatz@constangy.com
Sarah Kroll-Rosenbaum (admitted *pro hac vice*)
    skroll-rosenbaum@constangy.com
Naveen Kabir (admitted *pro hac vice*)
    nkabir@constangy.com
Alexandria Gilbert (admitted *pro hac vice*)
    agilbert@constangy.com
CONSTANGY, BROOKS, SMITH &
    PROPHETE, LLP
2029 Century Park East, Suite 1100
Los Angeles, California 90067
Telephone: (310) 909-7775
Facsimile:  (424) 465-6630

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RALPH "TREY" JOHNSON, *et al.*, individually and on behalf of all persons similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, a/k/a the NCAA, *et al.*,<br><br>            Defendants. | Civil Action No. 2:19-cv-05230-JP<br><br>**MEMORANDUM IN SUPPORT OF MOTION OF THE ATTENDED SCHOOL DEFENDANTS TO DISMISS FIRST AMENDED COMPLAINT** |

# TABLE OF CONTENTS

Page

I.   SUMMARY OF MOTION TO DISMISS………………………………………………1

II.  THIS COURT—LIKE EVERY OTHER COURT (STATE AND FEDERAL),
     ADMINISTRATIVE AGENCY, AND LEGISLATURE BEFORE IT THAT HAS
     CONSIDERED THE ISSUE—SHOULD DECLINE PLAINTIFFS' INVITATION
     TO CREATE AN EMPLOYMENT RELATIONSHIP BETWEEN STUDENT-ATHLETES
     AND THEIR SCHOOLS………………………………………….………………9

     A.   THE ABSENCE OF ANY 'COMPENSATION BARGAIN' BETWEEN
          ATHLETE AND SCHOOL DOOMS PLAINTIFFS' CLAIMS UNDER
          SUPREME COURT PRECEDENT…………………………………………..17

III. THE DEPARTMENT OF LABOR'S LONGSTANDING VIEW THAT
     STUDENT-ATHLETES ARE NOT "EMPLOYEES" UNDER THE FLSA
     BY ITSELF PROVIDES A COMPLETE DEFENSE TO THIS ACTION………………………..22

     A.   PLAINTIFFS' STRAINED INTERPRETATION OF FOH § 10B03(E)
          VIOLATES MULTIPLE CANONS OF CONSTRUCTION……………………………30

IV.  PLAINTIFFS' RESORT TO MULTI-FACTOR TESTS CREATED FOR DIFFERENT
     FACTUAL SETTINGS IS IN VAIN………………………………………………………...34

     A.   BERGER II CORRECTLY ESCHEWED ALL MULTI-FACTOR TESTS IN
          FAVOR OF A HOLISTIC STANDARD BASED ON AMATEURISM…………………36

     B.   APPLYING THE STUDENT INTERN MULTI-FACTOR TEST LEADS TO
          THE SAME CONCLUSION DRAWN BY THE SEVENTH CIRCUIT…………………38

V.   CONCLUSION…………………………………………………………………………....45

## **TABLE OF AUTHORITIES**

Page

**Cases**

*Advanced Career Training v. Riley,*
   No. CIV.A . 96-7065, 1997 WL 476275 (E.D. Pa., Aug. 18, 1997) ........................................ 30

*Alvarez v. IBP, Inc.,*
   339 F.3d 894 (9th Cir. 2003) ................................................................. 23, 27, 28

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .......................................................................... 6, 30

*AT & T Corp. v. Core Commc'ns, Inc.,*
   806 F.3d 715 (3d Cir. 2015) ................................................................. 25, 48

*Attanasio v. Cmty. Health Sys.,*
   863 F. Supp. 2d 417 (M.D. Pa. 2012) ............................................................... 38

*Barfield v. N.Y.C. Health & Hospital Corp.,*
   537 F.3d 132 (2d Cir. 2008) ...................................................................... 34

*Bastardo-Vale v. Attorney General United States,*
   934 F.3d 255 (3d Cir. 2019) ...................................................................... 10

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) .......................................................................... 6, 30

*Berger v. National Collegiate Athletic Association,*
   843 F.3d 285 (7th Cir. 2016), *aff'g*, 162 F. Supp. 3d 845 (S.D. Ind. 2016) ..................... *passim*

*Bowen v. Georgetown University Hospital,*
   488 U.S. 204 (1988) ............................................................................ 34

*Carnegie-Mellon University v. Cohill,*
   484 U.S. 343 (1988) ............................................................................. 2

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
   467 U.S. 837 (1984) ............................................................................ 25

*Christensen v. Harris County,*
   529 U.S. 576 (2000) ............................................................................ 25

*Christopher v. SmithKline Beecham Corp.,*
   567 U.S. 142 (2012) ............................................................................ 25

*Colby v. J.C. Penney Co.,*
   811 F.2d 1119 (7th Cir. 1987) ................................................................... 10

*Coleman v. Western Michigan University,*
   125 Mich. App. 35, 336 N.W.2d 224 (1983) ........................................................ 13

*Conn. Nat'l Bank v. Germain,*
   503 U.S. 249 (1992) ............................................................................ 31

*Covington v. International Association of Approved Basketball Officials,*
   710 F.3d 114 (3d Cir. 2013) ..................................................................... 6

## TABLE OF AUTHORITIES

Page

**Cases**

*D. Ginsberg & Sons v. Popkin*,
  285 U.S. 204 (1932) ................................................................. 32

*Dawson v. National Collegiate Athletic Association*,
  250 F. Supp. 3d 401 (N.D. Cal. 2017),
  *aff'd*, 932 F.3d 905 (9th Cir. 2019) .............................................. *passim*

*DelRio-Mocci v. Connolly Props. Inc.*,
  672 F.3d 241 (3d Cir. 2012) ........................................................ 6

*Dixon v. Zabka*,
  No. 3:11-CV-982 MPS, 2014 WL 6084351 (D. Conn. Nov. 13, 2014) ................... 1

*Dole v. Shenandoah Baptist Church*,
  899 F.2d 1389 (4th Cir. 1990) ............................................... 26, 35

*Donovan v. Brandel*,
  736 F.2d 1114 (6th Cir. 1984) .............................................. 35, 40

*Ellington v. City of East Cleveland*,
  689 F.3d 549 (6th Cir. 2012) ...................................................... 34

*Encino Motorcars, LLC v. Navarro*,
  — U.S. —, 138 S. Ct. 1134 (2018) .............................................. 23

*Epic Systems v. Lewis*,
  — U.S. —, 138 S. Ct. 1612 (2018) .............................................. 33

*Fast v. Applebee's Intern., Inc.*,
  638 F.3d 872 (8th Cir. 2011) ............................................... 25, 26

*FDIC v. Meyer*,
  510 U.S. 471 (1994) ............................................................... 31

*Figas v. Horsehead Corp.*,
  No. CIV. A. 06-1344, 2008 WL 4170043 (W.D. Pa. Sept. 3, 2008) ................... 27

*Gagnon v. United Technisource, Inc.*,
  607 F.3d 1036 (5th Cir. 2010) .................................................... 26

*Goldberg v. Whitaker House Coop., Inc.*,
  366 U.S. 28 (1961) ........................................................... *passim*

*Graczyk v. Workers' Comp. Appeals Board*,
  184 Cal. App. 3d 997, 229 Cal.Rptr. 494 (1986) .................................. 14

*Hall v. Guardsmark, LLC*,
  Case No. 11–213, 2013 WL 4855328 (W.D. Pa. 2013) ............................... 26

*Hedges v. Musco*,
  204 F.3d 109 (3d Cir. 2000) ....................................................... 2

## TABLE OF AUTHORITIES

Page

**Cases**

*Helen Mining Company v. Elliott*,
    859 F.3d 226 (3d Cir. 2017) ................................................ 25

*Hill v. Delaware North Cos. Sportservice, Inc.*,
    838 F.3d 281 (2d Cir. 2016) ................................................ 26

*Hultgren v. Cty. of Lancaster, Neb.*,
    913 F.2d 498 (8th Cir. 1990) ............................................... 27

*In re Cargill Meat Sols. Wage and Hour Litig.*,
    632 F. Supp. 2d 368 (M.D. Pa. 2008) ................................. 27

*In re Philadelphia Newspapers, LLC*,
    599 F.3d 298 (3d Cir. 2010) ........................................... 31, 32

*Jochim v. Jean Madeline Educ. Ctr. Of Cosmetology*,
    98 F. Supp. 3d 750 (E.D. Pa. 2015) ................................... 16

*Joyce v. Maersk Line Ltd.*,
    876 F.3d 502 (3d Cir. 2017) ............................................... 10

*Katz v. DNC Servs. Corp., Civil Action*,
    No. 16-5800, 2018 WL 692164 (E.D. Pa. Feb. 2, 2018) ............... 38, 46

*Kavanagh v. Trustees of Boston Univ.*,
    440 Mass. 195, 795 N.E.2d 1170 (2003) ............................ 13

*Klinedinst v. Swift Investments, Inc.*,
    260 F.3d 1251 (11th Cir. 2001) .......................................... 25

*Korellas v. Ohio State Univ.*,
    121 Ohio Misc. 2d 16, 779 N.E.2d 1112 (Ohio Ct. Cl. 2002) ...... 13

*Krause v. Cherry Hill Fire Dist. 13*,
    969 F. Supp. 270 (D.N.J. 1997) ...................................... 40, 42

*Lawson v. FMR LLC*,
    571 U.S. 429 (2014) ......................................................... 20

*Livers v. National Collegiate Athletic Association*,
    No. CV 17-4271, 2018 WL 2291027 (E.D. Pa. May 17, 2018) ...... *passim*

*Lopez v. Gonzales*,
    549 U.S. 47 (2006) ........................................................... 21

*Lucia Vlad-Berindan v. NYC Metro. Transp. Auth.*,
    No. 14CV10304VECFM, 2016 WL 1317700 (S.D.N.Y., Apr. 1, 2016) .... 39

*Lugo v. Farmer's Pride Inc.*,
    802 F. Supp. 2d 598 (E.D. Pa. 2011) ................................. 15

*Maple v. Citizens Nat. Bank & Trust Co.*,
    437 F. Supp. 66 (W.D. Okla. 1977) .................................... 10

## <u>TABLE OF AUTHORITIES</u>

Page

**Cases**

*Marsh v. J. Alexander's LLC*,
   869 F.3d 1108 (9th Cir. 2017)..................................................................... 26

*Marshall v. Baptist Hospital, Inc.*,
   473 F. Supp. 465 (M.D. Tenn. 1979) ......................................................... 24

*Martin v. Selker Bros., Inc.*,
   949 F.2d 1286 (3d Cir. 1991)............................................................... 12, 15

*Mineo v. Port Authority of New York and New Jersey*,
   779 F.2d 939 (3d Cir. 1985)................................................................. 23, 40

*National Collegiate Athletic Ass'n v. Board of Regents*,
   468 U.S. 85 (1984) ............................................................................. *passim*

*New Prime Inc. v. Oliveira*,
   — U.S. —, 139 S. Ct. 532 (2019) ............................................................. 31

*Newman v. Advanced Tech. Innovation Corp.*,
   749 F.3d 33 (1st Cir. 2014) ........................................................................ 26

*O'Bannon v. National Collegiate Athletic Association*,
   802 F.3d 1049 (9th Cir. 2015)........................................................... *passim*

*Onyeanusi v. Pan Am*,
   952 F.2d 788 (3d Cir. 1992)................................................................. 10, 17

*Onyebuchim Onyeanusi v. Pan American World Airways, Inc.*,
   767 F. Supp. 654 (E.D. Pa. 1990) .............................................................. 10

*Ortega v. Denver Institute LLC*,
   No. 14-cv-01351-MEH, 2015 WL 4576976 (D. Colo. July 30, 2015) .................... 22

*Perez v. Mortgage Bankers Ass'n*,
   575 U.S. 92 (2015) .................................................................................... 23

*Perry v. Randstad General Partner (US) LLC*,
   876 F.3d 191 (6th Cir. 2017)............................................................... 23, 28

*Phila. World Hockey Club, Inc. v. Phila. Hockey Club, Inc.*,
   351 F. Supp. 457 (E.D. Pa. 1972) .............................................................. 10

*Price v. Del. St. Police Fed. Credit Union*,
   370 F.3d 362 (3d Cir. 2004)....................................................................... 31

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
   566 U.S. 639 (2012) ............................................................................ 32, 33

*Razak v. Uber Technologies, Inc.*,
   No. 18-1944, — F.3d —, 2020 WL 1022404 (3rd Cir. Mar. 3, 2020) ...... 1, 5, 11, 41

*Razak v. Uber Technologies, Inc.*,
   No. 15-cv-573, 2016 WL 5874822 (E.D. Pa. Oct. 7, 2016)............................ 5, 12

# TABLE OF AUTHORITIES

Page

**Cases**

*Rensing v. Indiana State Univ. Board of Trustees,*
    444 N.E.2d 1170 (Ind. 1983)...................................................... 13

*Richards v. Local 134, Intern. Broth. of Elec. Workers,*
    790 F.2d 633 (7th Cir. 1986)..................................................... 10

*Richardson v. Bezar, Civil Action,*
    No. 15-0772, 2015 WL 5783685 (E.D. Pa. Oct. 5, 2015)..................... 38

*Rodriguez v. Township of Holiday Lakes,*
    866 F. Supp. 1012 (S.D. Tex. 1994) .......................................... 41

*Sandoz Inc. v. Amgen Inc.,*
    — U.S. —, 137 S. Ct. 1664 (2017) ............................................ 22

*Schleicher v. Salvation Army,*
    518 F.3d 472 (7th Cir. 2008)..................................................... 35

*Schumann v. Collier Anesthesia, P.A.,*
    803 F.3d 1199 (11th Cir. 2015).................................................. 40

*Schuylkill Health Sys. v. Cardinal Health, Inc.,*
    No. 12-7065, 2014 WL 3805466 (E.D. Pa. Mar. 14, 2014).................... 29

*Sec'y United States Dep't of Labor v. Am. Future Sys. Inc.,*
    873 F.3d 420 (3d Cir. 2017).......................................... 26, 35, 40, 41

*Sekula v. F.D.I.C.,*
    39 F.3d 448 (3d Cir. 1994)........................................................ 30

*Sethi v. Narod,*
    974 F. Supp. 2d 162 (E.D.N.Y. 2013).......................................... 1

*Shephard v. Loyola Marymount Univ.,*
    102 Cal. App. 4th 837, 125 Cal. Rptr. 2d 829 (2002) ........................ 13

*Sicklesmith v. Hershey Entertainment & Resorts Co.,*
    No. 19-cv-1675, 2020 WL 902544 (M.D. Pa. Feb. 25, 2020) ................ 27

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) ........................................................ 25, 26, 27

*Solis v. Laurelbrook Sanitarium and Sch., Inc.,*
    642 F.3d 518 (6th Cir. 2011)................................................. 34, 35

*State Comp. Ins. Fund v. Industrial Commission,*
    135 Colo. 570, 314 P.2d 288 (1957) .......................................... 13

*Steelman v. Hirsch,*
    473 F.3d 124 (4th Cir. 2007).................................................... 20

## TABLE OF AUTHORITIES

Page

**Cases**

*Stuckey v. Colvin,*
No. 2:12CV386, 2013 WL 6185837 (E.D. Va., Nov. 25, 2013) ........................................... 10

*Tony & Susan Alamo Foundation v. Secretary of Labor,*
471 U.S. 290 (1985) ........................................................................................ *passim*

*Tennessee Coal, Iron & R. Co. v. Muscoda Local,*
321 U.S. 590 (1944) ................................................................................ 15, 20

*Townsend v. State of California,*
191 Cal. App. 3d 1530, 237 Cal. Rptr. 146 (1987) ............................................... 13

*U. S. ex rel. Geisler v. Walters,*
510 F.2d 887 (3d Cir. 1975) ........................................................................... 29

*United Mine Workers v. Gibbs,*
383 U.S. 715 (1966) ........................................................................................ 2

*Univ. of Denver v. Nemeth,*
257 P.2d 423 (Colo. 1953) ................................................................... 13, 14, 34

*Valladares v. Insomniac, Inc.,*
No. EDCV 14-00706-VAP (DTBx), 2015 WL 12656267 (C.D. Cal. Jan. 29, 2015) ............ 22

*Van Horn v. Indus. Accident Comm'n,*
219 Cal. App. 2d 457 (1963) .................................................................... 13, 14

*Waldrep v. Texas Employers Ins. Ass'n,*
21 S.W.3d 692 (Tex. App. 2000) ..................................................................... 13

*Werner v. Werner,*
267 F.3d 288 (3d Cir. 2001) ........................................................................... 29

*Wheeler v. Hurdman,*
825 F.2d 257 (10th Cir. 1987) ........................................................................ 41

*Williams v. Strickland,*
87 F.3d 1064 (9th Cir. 1996) ........................................................................ *passim*


**Statutory Authorities**

28 U.S.C. § 1367(c)(3) ........................................................................................ 2

29 U.S.C.
§ 201 ............................................................................................. 1, 14
§ 203(d) ............................................................................................. 11
§ 203(e)(1) ......................................................................................... 11
§ 203(g) ............................................................................................. 11
§ 251 ................................................................................................. 15
§ 259 ............................................................................................. 8, 24

## TABLE OF AUTHORITIES

Page

**Statutory Authorities**

29 U.S.C
   § 259(a).................................................................................................. 22, 27

Mich. Comp. Laws Ann. § 423.201 ...................................................... 13

Ohio Rev. Code § 3345.56..................................................................... 13


**Rules and Regulations**

29 C.F.R.
   § 553.106(a)............................................................................................ 16
   § 790.13(a).............................................................................................. 24
   § 790.17(c).............................................................................................. 24
   § 790.18(a).............................................................................................. 24


Fed. R. Civ. Proc.
   8(a)(2).................................................................................................... 2
   12(b)(1).............................................................................................. 2, 45
   12(b)(6).............................................................................................. 2, 45

Department of Labor, Field Operations Handbook
   § 10b03(e) ...................................................................................... *passim*
   § 10b24(a) ......................................................................................... 8, 27


**Additional Authorities**

Kevin D. Brown & Antonio Williams,
   *Out of Bounds: A Critical Race Theory Perspective On "Pay for Play"*,
   29 J. Leg. Aspects of Sport 30, 31 (2019) ............................................ 9

Adam Epstein & Paul M. Anderson,
   *The Relationship Between a Collegiate Student-Athlete and the University: An
   Historical and Legal Perspective*, 26 Marq. Sports L. Rev. 287 (2016)............................. 9

*NLRB Gen'l Counsel Memo No. 17-01 (Jan. 31, 2017),
   withdrawn, NLRB Gen'l Counsel Memo No. 18-02 (Dec. 1, 2017)* ......................................... 34

Webster's Third New International Dictionary (1986) ........................................... 31, 32

# I.
## SUMMARY OF MOTION TO DISMISS.

Plaintiffs are three current, and three former, college student-athletes.[1] They sue their

own schools (the "Attended Schools"), the National Collegiate Athletic Association

("NCAA") and 20 other universities in this Circuit (the "Non-Attended Schools"[2]) under the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.,* and parallel state laws,[3] for

---

[1] The current student-athletes are Alexa Cooke (tennis, Lafayette College), Stephanie Kerkeles (swimming and diving, Fordham University) and Nicholas Labella (baseball, Fordham).  The former student-athletes are Ralph "Trey" Johnson (football, Villanova University, 2013-17); Claudia Ruiz (tennis, Sacred Heart University, 2014-18); and Jacob Willebeek-Lemair (soccer, Cornell University, 2017-18).  (First Amended Complaint [ECF 2] ["FAC"] ¶¶ 19-24.)

[2] The Non-Attended Schools are:  Bucknell University; Drexel University; Duquesne University; Farleigh Dickinson University; La Salle University; Lehigh University; Monmouth University; Penn State University; Princeton University; Rider University; Robert Morris University; Rutgers, The State University of New Jersey; Saint Francis University; Saint Joseph's University; Seton Hall University; St. Peter's University; Temple University; University of Delaware; University of Pennsylvania; and University of Pittsburgh.

[3] Plaintiffs' Pennsylvania, New York and Connecticut state law wage claims are analyzed under the same standards as their FLSA claims.  *See, e.g.*, *Razak v. Uber Technologies, Inc.,*  No. 18-1944, — F.3d —, 2020 WL 1022404, *4  (3rd Cir. Mar. 3, 2020) ("*Razak* II") ("Pennsylvania state courts have looked to federal law regarding the FLSA for guidance in applying the PMWA"); *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 229 (3d Cir. 2019) (same); *Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) (courts in the Second Circuit "have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA.") (internal citations and quotations omitted); *Dixon v. Zabka*, No. 3:11-CV-982 MPS, 2014 WL 6084351, at *17 (D. Conn. Nov. 13, 2014) (federal precedent interpreting the FLSA can be used to interpret parallel provisions defining "employee," "employer," and "employ" under the Connecticut Minimum Wage Act) (citations omitted).  The grounds for dismissal of the federal claim apply equally to them.

Alternately, upon dismissal of the FLSA claim, this Court should decline to exercise supplemental jurisdiction over them.  Indeed, it "*must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (*quoting Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 [3d Cir.1995]).  *See also Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (dismissal is the "usual case"); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)

minimum wages for the time they devoted to playing sports.  They seem to seek certification of a collective action of all student-athletes in all sports in all NCAA Division I[4] schools (First Amended Complaint ["FAC"] ¶ 256[5] [ECF 2]), and a Rule 23 defendant class of those schools.  (FAC ¶ 360 & Ex. C.)

The Attended Schools, joined by the NCAA and the Non-Attended Schools, move under Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6) to dismiss Plaintiffs' prolix 126-page, 421 paragraph FAC[6] without leave to amend.[7]

This is the fourth such lawsuit filed in the past six years (three of which were filed by Plaintiffs' lead counsel Paul L. McDonald):

**The _Berger_ Case:**  The first case was filed in the Southern District of Indiana in 2014. In it—as here—plaintiffs sought to certify a collective of all NCAA Division I student-

---

("should be dismissed"); |28 U.S.C. § 1367(c)(3) ("may decline to exercise supplemental jurisdiction").

[4] _See, e.g._, _O'Bannon v. National Collegiate Athletic Ass'n_, 802 F.3d 1049, 1053 (9th Cir. 2015) ("The NCAA has grown to include some 1,100 member schools, organized into three divisions: Division I, Division II, and Division III. Division I schools are those with the largest athletic programs—schools must sponsor at least fourteen varsity sports teams to qualify for Division I—and they provide the most financial aid to student-athletes. Division I has about 350 members.").

[5] FAC ¶ 256 defines the "Proposed FLSA Collective" as "[a]ll individuals, in all NCAA sports and of both genders, who were identified on any NCAA Squad List maintained by _Defendants_ . . . ."  (emphasis added).  The term "Defendants" is never clearly defined in the FAC.  The Attended Schools assume that "Defendants" in ¶ 256 refers to the proposed defendant class defined in ¶ 360.

[6] Conservatively, 53 paragraphs of the FAC (13%) are devoted to purely legal argument. The rest of the FAC, while 'factual' in some general sense, is largely devoted to facts that have no relevance to the applicable legal standards which govern their claims and appear to be included solely in an attempt to generate publicity.  In any event, the FAC is the very antithesis of "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a)(2).

[7] The NCAA and Non-Attended Schools also separately move to dismiss on grounds applicable to them alone.

-2-

athletes and a Rule 23 defendant class of all Division I schools (along with named defendant
NCAA), alleging that student-athletes were "employees" of their schools under the FLSA
solely because they played a sport.  The District Court dismissed the action at the pleading
stage, rejecting the contention that student-athletes are *ipso facto* employees of their schools,
and rejecting any contention they could state a claim against the NCAA or any schools they
did not attend on any joint employment theory.  The Seventh Circuit affirmed on both
grounds.  *See Berger v. National Collegiate Athletic Ass'n*, 843 F.3d 285 (7th Cir. 2016)
(*Berger* II), *aff'g* 162 F. Supp. 3d 845 (S.D. Ind. 2016) (*Berger* I).

      **The *Dawson* Case:**  The second case was filed in the Northern District of California in
2016.  It was brought on behalf of a proposed collective confined to student-athletes in one of
the so-called 'money' sports—football—against only the NCAA and the PAC-12 conference
(no schools were named).  The Northern District of California—like the Southern District of
Indiana—dismissed at the pleading stage on both of the same grounds.  The Ninth Circuit
affirmed on the joint employment issue.  Since no individual schools were named, it was
unnecessary for the Ninth to address employment status under the FLSA.  *See Dawson v.
Nat'l Collegiate Athletic Ass'n*, 250 F. Supp. 3d 401 (N.D. Cal. 2017) ("*Dawson* I"), *aff'd*,
932 F.3d 905 (9th Cir. 2019) ("*Dawson* II").

      **The *Livers* Case:**  The third case was filed in this District in 2017, and assigned to
Judge Baylson.  It was brought on behalf of a proposed collective confined to *scholarship*
athletes in all sports in Division I schools.  Like *Berger* II, it sought to certify a Rule 23

defendant class of all Division I schools along with the NCAA.  Most schools named as defendants here were defendants in *Livers* as well.[8]

Judge Baylson dismissed at the pleading stage all schools except for the one plaintiff attended (Villanova), but declined to dismiss the NCAA or Villanova, expressing no definitive view on the question of employment status.  *See Livers v. Nat'l Collegiate Athletic Ass'n*, No. CV 17-4271, 2018 WL 2291027 (E.D. Pa. May 17, 2018) ("*Livers* I"); *Livers v. Nat'l Collegiate Athletic Ass'n,* et al, Civil Action No. 17-4271, 2018 WL 3609839 (E.D. Pa. July 26, 2018) ("*Livers* II").  After a short period of discovery, and the substitution of a new plaintiff for the original one, the new plaintiff voluntarily—and unilaterally—requested dismissal.  (The action was not settled.)

It is important to note that *Livers* was brought by a *scholarship* athlete, and the collective he sought to certify was limited to *scholarship* athletes.  In his dismissal, Judge Baylson held that while the plaintiff's status as a scholarship athlete might state a claim for relief, his original complaint was deficient:

> "Plaintiff alleges that he received a full academic scholarship in return for his agreement to participate as a member of the Villanova football team, which could be seen in a similar light to the benefits that the workers in *Tony & Susan Alamo Foundation* [*v. Secretary of Labor,* 471 U.S. 290 (1985)] received and which the Supreme Court viewed as 'wages in another form.' While similar, though, Plaintiff has not alleged facts tending to establish that he relied on these benefits to the same extent as the workers in *Tony & Susan Alamo Foundation*, who were 'entirely dependent upon the Foundation for long periods.' Plaintiff has alleged merely that his scholarship served to 'defray the costs of

---

[8] Specifically, Bucknell University; Drexel University; Duquesne University; Farleigh Dickinson University; La Salle University; Lafayette College; Lehigh University; Monmouth University; Penn State University; Rider University; Robert Morris University; Rutgers, The State University of New Jersey; Saint Francis University; Saint Joseph's University; Seton Hall University; St. Peter's University; Temple University; University of Delaware; University of Pittsburgh; and Villanova University.

> attendance' at Villanova. This is a far cry from the absolute
> dependence by the *Tony & Susan Alamo Foundation* workers on
> the Foundation for their livelihoods—an 'economic reality'
> which the Supreme Court held reflected an employment
> relationship. Plaintiff's allegations do not rise to this level."
> *Livers* I, 2018 WL 2291027, *16.

Judge Baylson gave plaintiff leave to amend to "attempt" to state a claim under this theory.

*Id.* at *16 & n.7. Livers did so in an amended complaint, in which he specifically alleged that

he was "substantially economically dependent" on his athletic scholarship to attend school.

*Livers* II, 2018 WL 3609839, *1. Judge Baylson found that the plaintiff's amended

allegations of "reliance on the financial benefits he received as a Scholarship Athlete" to

attend school made for "a more precise FLSA claim . . . that is plausible on its face." *Id.* at

*5.

      The FAC here does not rest on any similar theory. It does not allege that the Plaintiffs

received athletic scholarships, let alone that any of them depended on a scholarship to attend

school. (*See* FAC ¶¶ 19-24.) The FLSA collective, and state law classes, all consist of

student-athletes "on any squad list" for any NCAA sport. (FAC ¶¶ 256, 267, 298, 329.) The

word "dependent" appears only once in the FAC—but not referring to any student-athlete.

(*See* FAC ¶ 233 n.19.) The theory of relief alleged in the FAC is indistinguishable from the

one rejected by the Seventh Circuit in *Berger* II—student-athletes are *ipso facto* employees

because they play sports (and nothing else). Because *Livers* did not raise **this** theory of relief,

its conclusion that Livers stated a claim there does not apply here.

      "To state a *prima facie* claim under the FLSA, a Plaintiff must allege . . . [that he or

she] was an 'employee' as defined by the FLSA . . . ." *Razak v. Uber Technologies, Inc.*, No.

15-cv-573, 2016 WL 5874822, at *3 (E.D. Pa. Oct. 7, 2016) ("*Razak* I"). *See also Razak* II,

2020 WL 1022404, *4 ("The minimum wage and overtime wage provisions at issue all require that Plaintiffs prove that they are 'employees.'")

Plaintiffs cannot make a plausible[9] legal case for **their** theory of relief, which was squarely rejected by the Seventh Circuit in *Berger* II.

**First**, **student-athletes are not *ipso facto* employees of the schools for which they compete, as a matter of law.**  The "test of employment" under the FLSA is one of "'economic reality' rather than 'technical concepts.'"  *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961).  College athletics in the United States is defined by its century-old "revered tradition of amateurism."  *National Collegiate Athletic Ass'n v. Board of Regents of the Univ. of Oklahoma*, 468 U.S. 85, 120 (1984).  *Berger* II correctly held "[t]hat long-standing tradition defines the economic reality of the relationship between student-athletes and their schools."  *Berger* II, 843 F.3d at 291.  (*See infra* pp. 9-17.)  The Department of Labor has long concurred with this view in its written interpretation of the FLSA.[10]  (*See infra* pp. 22-30.)

---

[9] A complaint must be dismissed under Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do."  *DelRio-Mocci v. Connolly Props. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (*citing Twombly*, 550 U.S. at 555).  In other words, "factual allegations must be enough to raise a right to relief above the speculative level."  *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  *A fortiori*, the legal basis for the claim must be more than speculative.

[10] Plaintiffs' efforts to misrepresent the DOL's views in order to serve their own arguments should be disregarded, as should Plaintiff's efforts to refute the DOL by pointing to opinions of NLRB staff that its Board declined to adopt, and which, in any event, cannot even apply to public universities.  (*See infra* pp. 29-34.)

"While the statutory definition [of employment under the FLSA] is exceedingly broad . . . , it does have its limits. An individual who, 'without promise or expectation of compensation, but solely for his personal purpose or pleasure, work[s] in activities carried on by other persons either for their pleasure or profit,' is outside the sweep of the Act." *Alamo*, 471 U.S. at 295 (quoting *Walling v. Portland Terminal Co.,* 330 U.S. 148, 152 [1947]). *Accord, Dawson* II, 932 F.3d at 908-09 ("The FLSA definition of employee is 'exceedingly broad,' but 'does have its limits.' . . . 'An individual may work for a covered enterprise and nevertheless not be an "employee."' . . . . For example, an individual 'who, "without any express or implied compensation agreement, might work for their own advantage on the premises of another"' falls outside the FLSA definition of employee.") (citations omitted) (*quoting Alamo*, 471 U.S. at 299-300, *and Walling*, 330 U.S. at 150). This principle underscores *Berger* II*'s* holding that amateurism defines the "economic reality" of student-athletics. Plaintiffs' concession that "[s]tudent-athletes do **not** have any options to choose any opportunities to play NCAA sports for wages at any NCAA D1 school" and "do **not** have any option to bargain for such wages with any such school" (FAC ¶ 43 [emphasis in original]) is fatal to their claims. (*See infra* pp. 17-22.)

Further, *Berger* II held that multi-factor employment tests designed for other contexts—like well-established tests tailored to independent contractor classification (*e.g.*, *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 [3d Cir. 1985], *cert. denied*, *DialAmerica Marketing, Inc. v. Brock*, 474 U.S. 919 [1985]), joint employment (*e.g.*, *Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 468 [3rd Cir. 2012]), or student internships (*e.g.*, *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538 [2d Cir. 2016]; *Benjamin v. B & H Education, Inc.*, 877 F.3d 1139 [9th Cir. 2017])—are not

suitable to judge the "economic reality" of student-athletics.  *Berger* II, 843 F.3d at 290-91.  It was correct in doing so.  (*See infra* pp. 36-38.)  But even if an inappropriate multi-factor test was applied here, it would point decisively ***away from*** a finding an employment relationship with student-athletes.  (*See infra* pp. 38-45.)

       **Second**, **the Department of Labor's longstanding agreement that student-athletes are not *ipso facto* employees of their schools constitutes a complete *statutory* defense to liability.**  Even if this Court were convinced that *Berger* II was wrongly decided, the Department of Labor's written interpretation of the FLSA—which specifically excludes student-athletes from the reach of the statute—constitutes a complete statutory defense to liability under 29 U.S.C. § 259.

       Section 259 provides that "[n]o employer shall be subject to any liability or punishment" under the FLSA if it relies "on any written administrative . . . interpretation, of the . . . Administrator of the Wage and Hour Division of the Department of Labor . . . ."  The DOL's FIELD OPERATIONS HANDBOOK[11] ("FOH") is one such "written administrative . . . interpretation."  FOH § 10b03(e) specifically provides that "*interscholastic athletics* . . . are not work of the kind contemplated by [the FLSA] and do not result in an employer-employee relationship between the student and the school or institution" (emphasis added).  *See also* FOH § 10b24(a) ("University or college students who participate in activities generally recognized as extracurricular are generally not considered to be employees within the meaning of the Act.")

       Although Plaintiffs allege that discovery responses in *Livers* case show that the Attended Schools, NCAA, and Non-Attended Schools did not rely on the DOL's

---

      [11]Available at https://www.dol.gov/whd/FOH/FOH_Ch10.pdf.

interpretation (FAC ¶¶ 237-38), court records demonstrate otherwise. Every one of the Defendants here was a named defendant in *Berger*, *Livers*, or both. In both cases, the defendants cited the DOL's interpretation, relying on it to defend the "revered tradition of amateurism." *Board of Regents*, 468 U.S. at 120. These court records are subject to judicial notice, and conclusively refute Plaintiffs' allegation. (*See infra* pp. 22-30.)

This Court should join the *Berger* II and *Dawson* I courts in dismissing at the pleading stage yet another a bid from student-athletes for FLSA coverage.

## II.
### THIS COURT—LIKE EVERY OTHER COURT (STATE AND FEDERAL), ADMINISTRATIVE AGENCY, AND LEGISLATURE BEFORE IT THAT HAS CONSIDERED THE ISSUE—SHOULD DECLINE PLAINTIFFS' INVITATION TO CREATE AN EMPLOYMENT RELATIONSHIP BETWEEN STUDENT-ATHLETES AND THEIR SCHOOLS.

College athletics in the United States is defined by its century-old "tradition of amateurism." *Board of Regents*, 468 U.S. at 120. "[N]ot paying student-athletes is *precisely what makes them amateurs*." *O'Bannon*, 802 F.3d at 1076 (emphasis in original). "[T]he courts have been consistent finding that student-athletes are not recognized as employees under any legal standard," including "under . . . the FLSA." Adam Epstein & Paul M. Anderson, *The Relationship Between a Collegiate Student-Athlete and the University: An Historical and Legal Perspective*, 26 MARQ. SPORTS L. REV. 287, 297 (2016). *Cf.* Kevin D. Brown & Antonio Williams, *Out of Bounds: A Critical Race Theory Perspective On "Pay for Play"*, 29 J. LEG. ASPECTS OF SPORT 30, 31 (2019) ("Historically, what defined college sports were the twin principles of its identification with academic traditions and amateurism.")

In 2016, the Seventh Circuit reached the same conclusion, holding that Division I athletes are not "employees" under the FLSA as a matter of law. *Berger* II, 843 F.3d 285. In 2017, the Northern District of California followed *Berger* II to hold that Division I football

players are not "employees" under the FLSA, or under California state law. *Dawson* I, 250 F. Supp. 3d 401. *Berger* II and *Dawson* I are well-reasoned, agree with the long-standing views of the Department of Labor, and accord with governing principles handed down by the U.S. Supreme Court and the Third Circuit. This Court should follow them and also hold that student-athletes are not employees of their schools solely by the fact that they play sports.[12]

In *Berger* II, two former University of Pennsylvania track-and-field athletes sued their *alma mater*, over 120 NCAA Division I schools, and the NCAA itself, alleging, like Plaintiffs here (and Dawson), "that student-athletes are employees who are entitled to a minimum wage under the [FLSA]." *Berger* II, 843 F.3d at 288. The Southern District of Indiana dismissed their complaint with prejudice under Rule 12, "holding that (1) [plaintiffs] lacked standing to sue any of the [defendants] other than Penn, and (2) [plaintiffs] failed to state a claim against

---

[12] *Berger* is not mandatory authority in this District. However, it does not conflict with Third Circuit precedent, and "should [be] regard[ed] as '*highly persuasive.*'" *Onyebuchim Onyeanusi v. Pan American World Airways, Inc*., 767 F. Supp. 654, 655 n.1 (E.D. Pa. 1990), *aff'd sub nom. Onyeanusi v. Pan Am*, 952 F.2d 788 (3d Cir. 1992) (emphasis added) (quoting 1B J. Moore, J. Lucas & T. Currier, MOORE'S FEDERAL PRACTICE ¶ 0.402[1] [2d ed. 1988]). *Accord*, *Stuckey v. Colvin*, No. 2:12CV386, 2013 WL 6185837, at *2 n.3 (E.D. Va., Nov. 25, 2013) (recognizing such decisions as "highly persuasive . . . especially . . . when the relevant appeals court has yet to settle an issue that other circuits have addressed . . . .").

It is at a minimum "entitled to *serious consideration.*" *In re Philadelphia Newspapers, LLC*, No. 09-11204SR, 2009 WL 3242292, at *8 & n.2 (Bankr. E.D. Pa., Oct. 8, 2009) (citing *Onyeanusi*), *rev'd in part*, 418 B.R. 548 (E.D. Pa. 2009), *as amended* (May 7, 2010), *aff'd,* 599 F.3d 298 (3d Cir. 2010) (emphasis added). *Accord*, *Phila. World Hockey Club, Inc. v. Phila. Hockey Club, Inc.*, 351 F. Supp. 457, 461 (E.D. Pa. 1972) ("Although decisions in other circuits or other districts are not binding, they are entitled to 'serious consideration' by a federal district court."). *See also Colby v. J.C. Penney Co*., 811 F.2d 1119, 1123 (7th Cir. 1987) (should be "give[n] most respectful consideration," and district courts should "follow them whenever [they] can."); *Richards v. Local 134, Intern. Broth. of Elec. Workers*, 790 F.2d 633, 636 (7th Cir. 1986) (carry "substantial weight" and should be given "appropriate deference"); *Maple v. Citizens Nat. Bank & Trust Co*., 437 F. Supp. 66, 69 (W.D. Okla. 1977) (treated as "substantially binding"). *Cf. Joyce v. Maersk Line Ltd*., 876 F.3d 502, 512 (3d Cir. 2017) (when the Third Circuit "is in disagreement with every other circuit to consider a question, it can be wise to reconsider our prior reasoning.") (en banc); *Bastardo-Vale v. Attorney General United States*, 934 F.3d 255, 267 (3d Cir. 2019) (following *Joyce*).

Penn because student-athletes are not employees under the FLSA." *Id*. at 289.  The Seventh

Circuit affirmed both holdings.

Regarding the athletes' relationship to Penn itself, the Seventh Circuit broadly held

that "student-athletes are not employees" of the schools they attend "and are not covered by

the FLSA" as a matter of law.  *Id*. at 288.  *Accord*, *Dawson* I, 250 F. Supp. 3d at 403

(following *Berger* II).

*Berger* II started with the observation that the FLSA defines the employment

relationship in a "circular fashion."  *Berger* II, 843 F.3d at 290.  An "employee" is "any

individual employed by an employer."  29 U.S.C. § 203(e)(1).  An "employer" is "any person

acting directly or indirectly in the interest of an employer in relation to an employee."  29

U.S.C. § 203(d).  "Employ" is defined as "to suffer or permit to work."  29 U.S.C. § 203(g).

"Work" is not defined at all.  *Berger* II, 843 F.3d at 290. *See also Razak* II, 2020 WL

1022404, *4 ("Given the circularity of the definitions, federal courts, with guidance from the

Department of Labor, have established standards to determine how to define employee and

employer.").

The U.S. Supreme Court has made clear that "the test of employment" under the FLSA

is one of "'economic reality' rather than 'technical concepts.'"  *Goldberg*, 366 U.S. at 33;

*accord Alamo,* 471 U.S. at 301.  Accordingly, *Berger* II turned to a well-established FLSA

principle to resolve the issue: "Because status as an 'employee' for purposes of the FLSA

depends on the totality of circumstances rather than on any technical label, courts must

examine the *'economic reality'* of the working relationship . . . to decide whether Congress

intended the FLSA to apply to that particular relationship."  *Berger* II, 843 F.3d at 290.

To guide the "economic reality" inquiry, *Berger* II observed that courts have established various "multifactor tests" to determine whether a particular relationship qualifies as "employment" under the FLSA. *Id.* It declined to apply any multi-factor test because such a test would "fail to capture the true nature of the relationship' between student-athletes and their schools and [it] is not a 'helpful guide.'" *Id.*[13]

*Berger* II instead focused on the fundamental "economic reality" of the relationship between the student-athlete and his or her university. *Id.* at 291. *Berger* II first noted there "exists a 'revered tradition of amateurism in college sports.'" *Id.* (*quoting Board of Regents.*, 468 U.S. at 120). "That long-standing tradition," rather than any multi-factor test, "defines the economic reality of the relationship between student-athletes and their schools." *Id.*

Citing the Ninth Circuit's decision in *O'Bannon*, *Berger* II noted that "the NCAA and its member universities and colleges have created an elaborate system of eligibility rules" in order to "maintain this tradition of amateurism." *Id.* These rules, *Berger* II held, "'define what it means to be an amateur or a student-athlete, and are therefore essential to the very existence of collegiate athletics." *Id.* (*quoting Agnew v. National Collegiate Athletic Ass'n*, 683 F.3d 328, 343 [7th Cir. 2012]).

*Berger* II concluded that "[t]he multifactor test proposed by [plaintiffs] simply does not take into account this tradition of amateurism or the reality of the student athlete

---

[13] The Third Circuit also applies multi-factor tests when appropriate, and departs from them when appropriate. *See Enterprise*, 683 F.3d at 469 (multi-factor tests for joint employment "cannot be 'blindly applied' as the sole considerations."); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991) ("It is a well-established principle that the determination of the employment relationship does not depend on isolated factors but rather upon the 'circumstances of the whole activity.'") (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 [1947]). *See also Razak* I, 2016 WL 5874822, at *4 ("Courts applying the *Donovan* factors are admonished that '[n]either the presence nor absence of any particular factor is dispositive' . . . .") (quoting *DialAmerica*, 757 F.2d at 1382).

experience." *Id.* Rather than straining to fit the case into an inappropriate multi-factor test, *Berger* II evaluated the fundamental "economic reality" of the relationship between the student athlete and the school, turning first to the extensive experience of courts and of regulators.

"A majority of courts," *Berger* II noted, "have concluded—albeit in different contexts—that student-athletes are not employees." *Id.*[14] On the regulatory front, *Berger* II

---

[14] What Berger called a "majority" is really a "unanimity." *See, e.g.*, *Kavanagh v. Trustees of Boston Univ.*, 440 Mass. 195, 199, 795 N.E.2d 1170, 1175 (2003) ("a scholarship or other financial assistance does not transform the relationship between the academic institution and the student into any form of employment relationship"); *Korellas v. Ohio State Univ.*, 121 Ohio Misc. 2d 16, 19, 779 N.E.2d 1112, 1114 (Ohio Ct. Cl. 2002) (football student-athlete was not an employee of Ohio State University); *Shephard v. Loyola Marymount Univ.*, 102 Cal. App. 4th 837, 844–46, 125 Cal. Rptr. 2d 829, 833–36 (2002) (student athlete not an "employee" for purpose of applying state antidiscrimination laws); *Waldrep v. Texas Employers Ins. Ass'n*, 21 S.W.3d 692, 701 (Tex. App. 2000) (rejecting argument that football student-athlete was an employee of his school); *Townsend v. State of California*, 191 Cal. App. 3d 1530, 1537, 237 Cal. Rptr. 146, 150 (1987) (holding "as a matter of law" that a student-athlete "was not an employee" of his university for purposes of the state Tort Claims Act, Cal. Gov't Code § 810); *Rensing v. Indiana State Univ. Board of Trustees*, 444 N.E.2d 1170, 1175 (Ind. 1983) ("the appellant shall be considered only as a student athlete and not as an employee within the meaning of the Workmen's Compensation Act."); *Coleman v. Western Michigan University*, 125 Mich. App. 35, 44, 336 N.W.2d 224, 228 (1983) ("[W]e conclude that the WCAB did not err in finding that our Plaintiff was not an 'employee' of defendant within the meaning of the act."); *State Comp. Ins. Fund v. Industrial Commission*, 135 Colo. 570, 572-74, 314 P.2d 288, 289-90 (1957) (rejecting workers' compensation claim on the ground that student-athlete was not an employee).

*See also* Ohio Rev. Code §3345.56 ("a student attending a state university … is not an employee of the state university based on the student's participation in an athletic program offered by the state university"); Mich. Comp. Laws Ann. § 423.201(1)(e)(iii) ("[A] student participating in intercollegiate athletics on behalf of a public university in this state . . . is not a public employee entitled to representation or collective bargaining rights.").

In answer to all this, Plaintiffs will likely cite *Univ. of Denver v. Nemeth*, 257 P.2d 423 (Colo. 1953), and *Van Horn v. Indus. Accident Comm'n*, 219 Cal. App. 2d 457 (1963) (*per curiam*). But as *Berger* recognized, those decisions rested "at least in part" on the premise that "the student-athletes . . . were also *separately* employed by their universities." 843 F.3d at 292 (emphasis added). In fact, the court that decided *University of Denver* later distinguished that decision on the ground that the "claimant's employment as a student worker" for the university "depended wholly on his playing football, and . . . if he failed to perform as a football player he would [have lost] the job provided for him by the University." *State Compensation Insurance*

---

noted, "[t]he Department of Labor . . . has also indicated that student-athletes are not employees under the FLSA." *Id.* at 292.  (*See infra* pp. 22-30.)

The Seventh Circuit synthesized its "economic reality" analysis by stating definitively that student-athletes cannot be employees *as a matter of law* because their participation in sports is voluntary, there is a long tradition of amateurism in college sports, and student-athletes have participated in sports for over a hundred years with no expectation of pay:

> "Appellants in this case have not, and quite frankly cannot, allege that the activities they pursued as student-athletes qualify as 'work' sufficient to trigger the minimum wage requirements of the FLSA. Student participation in collegiate athletics is entirely voluntary. Moreover, the long tradition of amateurism in college sports, by definition, shows that student-athletes—like all amateur athletes—participate in their sports for reasons wholly unrelated to immediate compensation. Although we do not doubt that student-athletes spend a tremendous amount of time playing for their respective schools, they do so—and have done so for over a hundred years under the NCAA—without any real expectation of earning an income. Simply put, student-athletic 'play' is not 'work,' at least as the term is used in the FLSA. ***We therefore hold, as a matter of law, that student-athletes are not employees and are not entitled to a minimum wage under the FLSA.***"  (*Id.* at 293 [emphasis added].)[15]

---

*Fund*, 314 P.2d at 290.  And the California legislature expressly repudiated *Van Horn* by amending the state labor code to "clarify" that student-athletes are not employees for purposes of workers' compensation.  *Graczyk v. Workers' Comp. Appeals Board*, 184 Cal. App. 3d 997, 1005, 229 Cal.Rptr. 494 (1986). Thus, neither *University of Denver* nor *Van Horn* provides any meaningful counterbalance to the phalanx of precedent holding that student-athletes are not employees.

[15] Plaintiffs will no doubt point to that Judge Hamilton's concurrence in *Berger* in an attempt to support their cause. It is telling that a (two-paragraph) concurring opinion is the only judicial authority they can muster.  And the opinion simply "add[ed] a note of caution" regarding issues not before the *Berger* panel. 843 F.3d at 294 (Hamilton, J., concurring).  In particular, Judge Hamilton stated that he was "less confident" that the panel's reasoning "should extend to students who receive athletic scholarships to participate in so-called revenue sports," and opined that "there may be room for further debate" in such cases.  *Id.*  But he did not state that he would hold student-athletes in "revenue sports" to be employees.  And he cited no case law that would support such a holding.

Finally, the Seventh Circuit emphasized the appropriateness of resolving the *Berger* II case at the motion to dismiss stage:

> "We briefly conclude by addressing Appellants' argument that employment status is an inherently fact-intensive inquiry and thus should not be decided at the motion-to-dismiss stage. We reject this argument. Because we conclude, as a matter of law, that student-athletes are not employees under the FLSA, no discovery or further development of the record could help Appellants. Appellants did not and could not allege facts, even taken as true, that give rise to a cause of action."  (*Id.* at 293.)

*Accord*, *Martin*, 949 F.2d at 1292 (whether a person is an employee is a question of law).

*Berger* II*'s* holding that student-athletes "cannot . . . allege that the activities they pursued as student-athletes qualify as 'work' sufficient to trigger the minimum wage requirements of the FLSA," *Berger II*, 843 F.3d at 293, is in accord with this District's analysis in *Lugo v. Farmer's Pride Inc.*, 802 F. Supp. 2d 598 (E.D. Pa. 2011).  Reviewing the Supreme Court's donning and doffing decisions, *Lugo* observed that the Supreme Court in *Tennessee Coal, Iron & R. Co. v. Muscoda Local*, 321 U.S. 590 (1944) (*superseded by statute*, 29 U.S.C. § 251 *et seq.*), "defined 'work' as 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and *pursued necessarily and primarily for the benefit of the employer and his business.*'"  *Lugo,* 802 F. Supp. 2d at 602 (emphasis added) (quoting *Tennessee Coal*, 321 U.S. at 598).  This definition "remains operative" today.  *Lugo,* 802 F. Supp. 2d at 602.  While student-athletes exert themselves

---

In fact, this lawsuit is ***not*** confined to "students who receive athletic scholarships to participate in so-called revenue sports," which is the only "note of caution" added by Judge Hamilton.  This lawsuit is exactly like *Berger*—it claims that all student-athletes in all sports are employees regardless of whether they receive a scholarship.  Moreover, the concurring opinion unquestionably suggested to the majority that the FLSA analysis might differ across schools or sports.  That the majority nonetheless declined to restrict the language of its opinion leaves no doubt that it rejected Judge Hamilton's note of caution.

mentally and physically, they do so for their own reasons and their own benefit.  And their schools—which are in the business of education, scholarship, and service to their community and beyond—offer athletics as a part of their *educational* mission, not as an end in itself.  *See Berger* II, 843 F.3d at 293 ("Student participation in collegiate athletics is entirely voluntary. Moreover, the long tradition of amateurism in college sports, by definition, shows that student-athletes—like all amateur athletes—participate in their sports for reasons wholly unrelated to immediate compensation.").  *See also Walling*, 330 U.S. at 152 (the FLSA "cannot be interpreted so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction.") (*superseded by statute*, 29 C.F.R. § 553.106[a]).

In *Dawson* I, a former football player for the University of Southern California sued the NCAA and PAC-12 under the FLSA and state law based on the same theory of relief alleged by Plaintiffs here, and by the plaintiffs in *Berger* II.  As in *Berger* II, the Northern District of California granted defendants' motion to dismiss under Rule 12(b)(6) without leave to amend, because the "reasoning" of *Berger* II "is persuasive."  *Dawson* I, 250 F. Supp. 3d at 403.[16]

---

[16] *Dawson* I adopted the reasoning of *Berger* wholesale and without significant elaboration.  The opinion is largely devoted to analyzing and rejecting plaintiff's arguments that *Berger* was distinguishable "because it involved track and field athletes at the University of Pennsylvania, while this case involves Division I football players who earn 'massive revenues' for their schools."  *Dawson* I, 250 F. Supp. 3d at 406.  The *Dawson* court's reasons for rejecting this distinction are not pertinent here because Plaintiffs seek conditional certification of a collective action on behalf of *all* athletes, whether they play one of the "big money" sports or not.  (*See* FAC ¶¶ 256-60.)

Moreover, as noted in *Dawson* I, "the premise that revenue generation is determinative of employment status is not supported by the case law."  *Dawson* I, 250 F. Supp. 3d at 407.  *See also Jochim v. Jean Madeline Educ. Ctr. Of Cosmetology*, 98 F. Supp. 3d 750, 759 (E.D. Pa. 2015) ("[Defendant's] alleged profit from its clinical program does not change our analysis under the FLSA.") (cited in *Dawson*, 250 F. Supp. 3d at 407).

Because the Seventh Circuit's holding in *Berger* II is in accord with Third Circuit law, this Court should treat it as "***highly persuasive***" and dismiss the FAC.  *Onyeanusi*, 767 F. Supp. at 656 (emphasis added) (quoting MOORE'S FEDERAL PRACTICE ¶ 0.402[1]).

### A.
### THE ABSENCE OF ANY "COMPENSATION BARGAIN" BETWEEN ATHLETE AND SCHOOL DOOMS PLAINTIFFS' CLAIMS UNDER SUPREME COURT PRECEDENT.

*Berger* II's focus on the fact that student-athletes play sports "without any real expectation of earning an income"—"and have done so for over a hundred years under the NCAA" (*Berger* II, 843 F.3d at 293)—squarely accords with Supreme Court precedent holding that without a 'compensation bargain,' there can be no employment relationship under the FLSA.  Accordingly, Plaintiffs' concession that "[s]tudent [a]thletes do **not** have any options to choose any opportunities to play NCAA sports for wages at any NCAA D1 school [and] . . . also do **not** have any option to bargain for such wages with any such school" (FAC ¶ 43 [emphasis in original]) is fatal to their claims.  *See, e.g., Dawson* II, 932 F.3d at 09 (among the "circumstances relevant in evaluating economic reality" "found" by "[t]he Supreme Court," the first is an "expectation of compensation.").

The Supreme Court has held that "[t]he test of employment under the [FLSA] is one of 'economic reality.'"  *Alamo*, 471 U.S. at 301; *accord Goldberg*, 366 U.S. at 33.  Individuals cannot be "employees" covered by the FLSA unless they are laboring under an "express or implied compensation agreement."  *Walling*, 330 U.S. at 152; *see also Alamo*, 471 U.S. at 300-01; *Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996).  When an individual's work "did not contemplate . . . compensation" in the first place, he or she is "outside the sweep of the Act."  *Alamo*, 471 U.S. at 295, 300 (omission in original) (quotation marks

-17-

omitted).  "While the statutory definition [of employment under the FLSA] is exceedingly

broad . . . , it does have its limits. An individual who, 'without promise or expectation of

compensation, but solely for his personal purpose or pleasure, work[s] in activities carried on

by other persons either for their pleasure or profit,' is outside the sweep of the Act."  *Id*. at

295 (quoting *Walling*, 330 U.S. at 152).  *Accord, Dawson* II, 932 F.3d at 908-09 ("The FLSA

definition of employee is 'exceedingly broad,' but 'does have its limits.' . . .  'An individual

may work for a covered enterprise and nevertheless not be an "employee."' . . . . For example,

an individual 'who, "without any express or implied compensation agreement, might work for

their own advantage on the premises of another"' falls outside the FLSA definition of

employee.") (citations omitted) (*quoting Alamo*, 471 U.S. at 299-300, *and Walling*, 330 U.S.

at 150).

In *Walling*, for example, the Supreme Court held that participants in a short-term

railroad training program were not "employees" within the meaning of the statute because

they were functionally similar to students "tak[ing] courses in railroading in a public or

private vocational school."  330 U.S. at 152-53.  The FLSA's definition of employment, the

Court explained, "was obviously not intended to stamp all persons as employees who, without

any express or implied compensation agreement, might work for their own advantage on the

premises of another."  *Id.* at 152.  "Otherwise, all students would be employees of the school

or college they attended, and as such entitled to receive minimum wages."  *Id.*  "[S]uch a

construction," the Court held, "would sweep under the Act each person who, without promise

or expectation of compensation, but solely for his personal purpose or pleasure, worked in

activities carried on by other persons either for their pleasure or profit."  *Id.*  That would

exceed the FLSA's "purpose as to wages," which was simply "to insure that every person

-18-

whose employment *contemplated compensation* should not be compelled to sell his services for less than the prescribed minimum wage." *Id.* (emphasis added).

Similarly, the Ninth Circuit held in *Williams* that the plaintiff—a participant in a Salvation Army adult rehabilitation center—was not employed by the center, even though he participated full-time in what the center called "work therapy" and the center gave him "food, clothing, shelter, and a small stipend of seven to twenty dollars per week." 87 F.3d at 1065. Mr. Williams was not an employee under the FLSA, the Court held, because he "had neither an express nor an implied agreement for compensation." *Id.* at 1067. Rather, his "relationship with the Salvation Army was solely rehabilitative": His "work therapy was not performed in exchange for in-kind benefits, but rather was performed to give him a sense of self-worth [and] accomplishment," "enabl[ing] him to overcome his drinking problems and reenter the economic marketplace." *Id.* And the "in-kind benefits" that he received were given to him not to compensate him for his services but "to enable him to pursue his rehabilitation." *Id.*

Following these cases, student-athletes are not employees because amateurism—a system in which compensation is explicitly *prohibited*—"defines the economic reality" of their activity. *Berger* II, 843 F.3d at 291; *see also Board of Regents*, 468 U.S. at 120; *O'Bannon*, 802 F.3d at 1076. As the Seventh Circuit has stated, for example, NCAA "eligibility rules," including those prohibiting compensation for play, "define what it means to be an amateur or a student-athlete, and are therefore essential to the very existence of the product of college football." *Agnew*, 683 F.3d at 343. If student-athletes were paid for playing, and no longer amateurs, then collegiate sport would cease to exist; it would become

the "minor league" version of professional sport that the Supreme Court has clarified it is not. *O'Bannon*, 802 F.3d at 1074 (quoting *Board of Regents*, 486 U.S. at 101-102).

As *Berger* II explained, the centrality of amateurism to the enterprise of college sports forecloses, as a matter of law, any contention that student-athletes are employees under the FLSA. 843 F.3d at 291. "[S]tudent athletes—like all amateur athletes—participate in their sports for reasons wholly unrelated to immediate compensation." *Id.* at 293. These reasons include the enjoyment of playing a sport they love, health benefits of being physically active, opportunity to develop personal discipline and leadership skills, camaraderie of joining with teammates in a common endeavor, opportunity (for students with athletic scholarships) to earn a college degree otherwise out of reach, desire to develop their skills and profile in hopes of eventually playing professionally (however unlikely that may be) and so on. Student-athletes cannot plausibly claim to have been motivated by an "express or implied compensation agreement" when they entered college, *Walling*, 330 U.S. at 152, given that the economic reality participation in collegiate athletics has been defined "for over a hundred years" by the prohibition of compensation. *Berger* II, 843 F.3d at 293.

Further, the Supreme Court—consistent with its frequent holdings that courts interpreting statutes "giv[e] the words used their ordinary meaning," *Lawson v. FMR LLC*, 571 U.S. 429, 440 (2014)—has explained that the key terms in the FLSA, "employment" and "work," have their normal, everyday meaning, *i.e.*, how the words are "commonly used." *Tennessee Coal*, 321 U.S. at 598. Hence, "when relationships have deviated from the traditional understanding of employment in fundamental ways, the Supreme Court has refused to shoehorn them into the" FLSA. *Steelman v. Hirsch*, 473 F.3d 124, 129 (4th Cir. 2007).

Plaintiffs' claim that student-athletes are "employees" when they play sports is not "what the English language tells us . . . to expect." *Lopez v. Gonzales*, 549 U.S. 47, 54 (2006).  It would be confusing to say that a student who plays an intercollegiate sport does so as an "employee" of his team—let alone of the NCAA or other schools in the geographic area.  After all, the student-athlete is not an assistant coach, a trainer, or team administrator, consistent with the everyday sense of the word "employee" in college sports.  *See also Berger* II, 843 F.3d at 293 ("Simply put . . . 'play' is not 'work.'").  Common usage confirms the correctness of the *Berger* II's ruling.[17]

The FAC boils down to Plaintiffs' argument that they deserve to share in the revenues generated by college sports.  That argument is totally unmoored from the FLSA and relevant precedent. That a few (but not most) schools generate television revenues from a few (but not most) sports has nothing to do with the legal question of whether student-athletes are "employees" within the meaning of the FLSA.  And for good reason: Nothing about the analysis prescribed by *Walling*, *Alamo*, and *Williams* turns on the profits that the alleged employer earns from this activity.  The Supreme Court has explained the irrelevance of that fact.  The Court observed in *Alamo*, for example, that the FLSA applies to "commercial activities conducted by religious or other nonprofit organizations" just as it does to for-profit commercial activities.  471 U.S. at 296-297.  What matters is not whether the activity generates large revenue or a profit—or even *any* revenue or profit—but whether its economic

---

[17] Any argument that "work" simply means any form of physical or mental exertion would be unavailing.  In both *Walling* and *Williams*, the plaintiffs were unquestionably engaged in such exertion.  So does that mean all classmates of Plaintiffs, whether they also play a sport, or not, are "employees" because they work hard to learn?  *See Walling*, 330 U.S. at 152 ("Otherwise, all students would be employees of the school or college they attended, and as such entitled to receive minimum wages.").

reality "contemplate[s] compensation."  *Walling*, 330 U.S. at 152; *see also Alamo*, 471 U.S. at 301; *Ortega v. Denver Institute LLC*, No. 14-cv-01351-MEH, 2015 WL 4576976, at *12-13 (D. Colo. July 30, 2015) (discussing decisions declining to treat cosmetology students as employees notwithstanding that cosmetology schools earned profits from the trainees' labor); *Valladares v. Insomniac, Inc.*, No. EDCV 14-00706-VAP (DTBx), 2015 WL 12656267, at *10 (C.D. Cal. Jan. 29, 2015) ("Plaintiff argues it is inequitable to allow [her employer] to use [an FLSA] exemption when its 'revenue is in the millions of dollars.' If Congress agrees with Plaintiff, it may amend the FLSA.  Until then, a defendant's revenue is irrelevant to whether the [statutory] exemption applies.") (citation and paragraph break omitted).

Plaintiffs' argument has nothing to do with what the FLSA *actually* covers, only what they think it *should* cover.  That is not a sound basis to depart from the statute's plain meaning.  *See, e.g.*, *Sandoz Inc. v. Amgen Inc.*, — U.S. —, 137 S. Ct. 1664, 1678 (2017) ("Even if we were persuaded that Amgen had the better of the policy arguments, those arguments could not overcome the statute's plain language, which is our 'primary guide' to Congress' preferred policy.").  Nor is it a basis to disregard Supreme Court precedent.

### III.
### THE DEPARTMENT OF LABOR'S LONGSTANDING VIEW THAT STUDENT-ATHLETES ARE NOT "EMPLOYEES" UNDER THE FLSA BY ITSELF PROVIDES A COMPLETE DEFENSE TO THIS ACTION.

Congress has provided that "[n]o employer shall be subject to any liability or punishment" under the FLSA if it relies "on any written administrative . . . interpretation, of the . . . Administrator of the Wage and Hour Division of the Department of Labor . . ." even if it "is determined by judicial authority to be invalid . . . ."  29 U.S.C. § 259(a).  Section 259(a) provides a complete defense to liability "even if the [DOL's] interpretation later turned out to

be wrong." *Perry v. Randstad General Partner (US) LLC*,  876 F.3d 191, 213 (6th Cir. 2017)

(*quoting Equal Emp't Opportunity Comm'n v. Home Ins. Co*., 672 F.2d 252, 263 [2d Cir.

1982]).  *Accord*, *Alvarez v. IBP, Inc*., 339 F.3d 894, 907 (9th Cir. 2003*) (same)*, *aff'd in part*

*on other grounds*, 546 U.S. 21 (2005); *Mineo v. Port Authority of New York and New Jersey*,

779 F.2d 939, 954 n.7 (3d Cir. 1985) (Becker, J., dissenting) (same).  *See also*, *Encino*

*Motorcars, LLC v. Navarro*, — U.S.  —, 138 S. Ct. 1134, 1147 (2018) (defense applies to

"superseded agency guidance"); *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 106 (2015)

(defense applies even when agency changes position on an issue).

The DOL's Field Operations Handbook is one such "interpretation."  Section

259(b)(1) specifies that "[t]he agency referred to in subsection (a) shall be[,] . . . in the case

the case of the [FLSA] . . . the Administrator of the Wage and Hour Division of the

Department of Labor."  The FOH is published by the Wage and Hour Division.[18]  *See Berger* II,

843 F.3d at 292 (the FOH is "an operations manual that provides [Department] investigators

and staff with interpretations of statutory provisions … and general administrative

guidance").[19]

---

[18] The preface to the FOH states:

> The Field Operations Handbook (FOH) is an operations manual
> that provides Wage and Hour Division (WHD) investigators and
> staff with *interpretations of statutory provisions*, procedures for
> conducting investigations, and general administrative guidance.
> The FOH was *developed by the WHD* under the general authority
> to administer laws that the agency is charged with enforcing. The
> FOH reflects policies established through changes in legislation,
> regulations, significant court decisions, and the *decisions and
> opinions of the WHD Administrator.*  (emphasis added)

(Available on the internet at https://www.dol.gov/whd/FOH/.)

[19] *See also Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1580, *modified*, 776
F.2d 265 (11th Cir. 1985) (holding that § 259 good faith defense could be based on FOH, but

The FOH agrees with *Berger* II and *Dawson* I that student-athletes fall outside the statute's reach.  It states that "[u]niversity or college students who participate in activities generally recognized as extracurricular are generally not considered to be employees within the meaning of the Act."  FOH § 10b24(a).  FOH § 10b03(e) addresses student-athletes directly:

> "As part of their overall educational program, public or private schools and institutions of higher learning may permit or require students to engage in activities in connection with dramatics, student publications, glee clubs, bands, choirs, debating teams, radio stations, intramural and ***interscholastic athletics*** and other similar endeavors.  Activities of students in such programs, conducted primarily for the benefit of the participants as a part of the educational opportunities provided to the students by the school or institution, are not work of the kind contemplated by [the FLSA] and do not result in an employer-employee

---

reversing judgment finding good faith because the employer failed to act "in conformity" with FOH); *Marshall v. Baptist Hospital, Inc*., 473 F. Supp. 465, 479 (M.D. Tenn. 1979) ("The right to rely on the Wage and Hour Field Operations Handbook is conferred by |29 U.S.C. [§] 259 . . . . The statute contains no limitation on the pronouncements of the Administrator that can be relied on, except that regulations, orders, rulings, approvals, and interpretations must be 'written.' Pronouncements of the Administrator in the form of administrative practices or enforcement policies do not even bear this limitation. Thus it is the opinion of this court, albeit dictum, that the Field Operations Handbook may be relied on for purposes of establishing a defense pursuant to |29 U.S.C. [§] 259."), *rev'd*, 668 F.2d 234 (6th Cir. 1981) (agreeing that Section 259 good faith defense may be based on FOH, but reversing judgment that defense did not apply under the circumstances).

The regulations construing |29 U.S.C. § 259 further demonstrate that the FOH is a basis for this defense.  They provide that "the . . . interpretation . . . or enforcement policy relied upon and conformed with must be that of the 'Administrator of the Wage and Hour Division . . . [and] in writing.'"  |29 C.F.R. § 790.13(a).  "The term 'interpretation' has been used to describe a statement 'ordinarily of an advisory character, indicating merely the agency's present belief concerning the meaning of applicable statutory language.'  This would include bulletins, releases, and other statements issued by an agency which indicate its interpretation of the provisions of the statute."  |29 C.F.R. § 790.17(c).  "The term[] '. . . enforcement policy' refer[s] to courses of conduct or policies which an agency has determined to follow in the administration and enforcement of a statute, either generally, or with respect to specific classes of situation."  |29 C.F.R. § 790.18(a).

-24-

relationship between the student and the school or institution." (Emphasis added).

These provisions leave no doubt about the Department's view that participants in "interscholastic athletics" are not "employees" within the meaning of the FLSA.

Although the DOL was well aware—like the rest of the country—that colleges and universities do not pay student-athletes wages, it has ***never*** initiated enforcement proceedings against the NCAA or any schools for FLSA violations against student athletes as such. This is significant because, as the Supreme Court has explained in an analogous context, "while it may be 'possible for an entire industry to be in violation of the [FLSA] for a long time without the Labor Department noticing,' the 'more plausible hypothesis' is that the Department did not think the industry's practice was unlawful." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158 (2012) (alteration in original) (*quoting Dong Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 510–511 [7th Cir. 2007]).

The Supreme Court has held that interpretations contained in "agency manuals" or "enforcement guidelines," such as the FOH, "are 'entitled to respect' under . . . *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) . . . to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). [20]  The Third

---

[20] Defendants concede that since the FOH is an internal operations manual of the DOL, not a formal regulation promulgated through regular notice-and-comment rulemaking, it is not entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Helen Mining Company v. Elliott*, 859 F.3d 226, 233-34 (3d Cir. 2017) ("In addressing the validity of a regulation promulgated through notice-and-comment procedures, we apply the familiar two-step analysis of *Chevron* . . . ."); *Fast v. Applebee's Intern., Inc.*, 638 F.3d 872, 878 (8th Cir. 2011); (rejecting *Chevron* deference for the FOH because "[t]hese types of agency interpretations (opinion letters and handbooks) of its own regulation . . . are not subject to notice and comment rule making procedures."); *Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1255 (11th Cir. 2001) ("Although the Field Operations Handbook is not entitled to *Chevron* deference, we find it persuasive.").

Circuit has afforded *Skidmore* deference to the FOH.  *See AT & T Corp. v. Core Commc'ns, Inc.*, 806 F.3d 715, 725 (3d Cir. 2015) (courts should "defer to an agency's interpretation of its regulations . . . unless the interpretation is plainly erroneous or inconsistent with the regulations or there is any other reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.") (citations omitted); *Friedrich,* et al. *v. U.S. Comput. Services*, 974 F.2d 409, 417-18 (3rd Cir. 1992) (consulting the FOH for interpretative guidance) (*superseded by statute as stated in McMaster v. Eastern Armored Services, Inc.*, 780 F.3d 167, 171 [3rd Cir. 2015]); *Hall v. Guardsmark, LLC*, Case No. 11–213, 2013 WL 4855328, at *14, 16-17 (W.D. Pa. 2013) (following FOH).  So have the First, Second, Fifth, Seventh, Eighth and Ninth.[21]  This Court should do likewise.

When it comes to *Skidmore* deference, the Third Circuit has "adopted . . . [a] conceptualization of the *Skidmore* framework as a 'sliding-scale' test in which the level of weight afforded to an interpretation varies depending on [the] analysis of the enumerated factors." [*Citation omitted*.]  Those factors include whether the interpretation was: (1) issued contemporaneously with the statute; (2) consistent with other agency pronouncements; (3) reasonable given the language and purposes of the statute; (4) within the expertise of the relevant agency; and (5) part of a longstanding and unchanging policy." *Sec'y United States Dep't of Labor v. Am. Future Sys. Inc.*, 873 F.3d 420, 427 (3d Cir. 2017).  FOH § 10b03(e) meets this test:  (1)  While FOH § 10b03(e) is not contemporaneous with enactment of the

---

[21] *See, e.g.*, *Berger* II, 843 F.3d at 293 ("[w]e find the FOH's interpretation of the student-athlete experience to be persuasive."); *Hill v. Delaware North Cos. Sportservice, Inc.*, 838 F.3d 281, 295 (2d Cir. 2016); *Newman v. Advanced Tech. Innovation Corp.*, 749 F.3d 33, 37 (1st Cir. 2014); *Fast*, 638 F.3d at 878-79; *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 n.6 (5th Cir. 2010); *cf. Marsh v. J. Alexander's LLC*, 869 F.3d 1108, 1124 n.19 (9th Cir. 2017) (applying *Skidmore* but finding the handbook unpersuasive on the specific issue in that case).

FLSA in 1938, it has been in effect for more than 50 years, satisfying prong (5) of the test. *See Dole v. Shenandoah Baptist Church*, 899 F.2d 1389, 1396 (4th Cir. 1990) (citing 1967 version of FOH § 10b03[b]).  (2)  It is consistent with FOH § 10b24(a) ("University or college students who participate in activities generally recognized as extracurricular are generally not considered to be employees within the meaning of the Act."), and there are no inconsistent opinion letters or other interpretive pronouncements of the DOL.  *Cf. Sicklesmith v. Hershey Entertainment & Resorts Co.,* No. 19-cv-1675, 2020 WL 902544, *8 (M.D. Pa. Feb. 25, 2020) (declining *Skidmore* deference to "stark shift in DOL policy.").  (3)  Over 50 years of unanimity in the courts (*see supra* p. 13 n.14) demonstrates the reasonableness of FOH § 10b03(e).  And (4) specifying what is, and what is not, an employment relationship under FLSA sits at the center of the DOL's expertise.  *Skidmore* deference is clearly merited.

But regardless of *Skidmore* deference, 29 U.S.C. § 259(a) provides a complete defense to any employer who relies on the FOH.

"The test under section 259 is an objective one."  *Hultgren v. Cty. of Lancaster, Neb*., 913 F.2d 498, 507 (8th Cir. 1990).  To meet it, "an employer must 'show it acted in (1) good faith, (2) conformity with, and (3) reliance on the DOL's regulations. . . .'" *Alvarez*, 339 F.3d at 907 (*quoting Frank v. McQuigg*, 950 F.2d 590, 598 [9th Cir.1991].)  *Accord*, *In re Cargill Meat Sols. Wage and Hour Litig.*, 632 F. Supp. 2d 368, 389-90 (M.D. Pa. 2008) (following *Alvarez*); *Figas v. Horsehead Corp*., No. CIV. A. 06-1344, 2008 WL 4170043, at *21 (W.D. Pa. Sept. 3, 2008).  "The good faith requirement contains both subjective and objective components. The subjective component requires an employer to show that it had 'honesty of intention and no knowledge of circumstances which ought to put him upon inquiry.' However, subjective good faith is not enough-the employer must also satisfy an objective test. In other

words, 'good faith is not to be determined merely from the actual state of [the employer's] mind.' The employer must show that it 'acted as a reasonably prudent man would have acted under the same or similar circumstances.'" *Perry*, 876 F.3d at 214 (*quoting Swigart v. Fifth Third Bank*, 870 F. Supp. 2d 500, 510 [S.D. Ohio 2012]). *Accord Alvarez*, 339 F.3d at 907. Defendants meet this test.

First, good faith is demonstrated—objectively—by over 50 years of unanimity among state and federal courts that student-athletes are not *ipso facto* "employees" of their schools. (*See supra* p. 13 n.14.) Plaintiffs will undoubtedly press the FAC's comparison of student-athletes to work-study students (*see* FAC ¶¶ 28-31, 61-90, 112-24, 132-69) as demonstrating "knowledge of circumstances which ought to put [Defendants] upon inquiry." *Perry*, 876 F.3d at 214 (*quoting Swigart*, 870 F. Supp. 2d at 510). The *Berger* plaintiffs made the very same argument, which was dismissed as "essentially a fairness argument" and totally beside the point. *Berger* I, 162 F. Supp. 3d at 849 ("the question is not whether the Plaintiffs, as student athletes, are 'deserving' of employee status, but rather whether Congress intended for the FLSA to apply to them."). That the Seventh Circuit was not swayed by this argument in *Berger* II demonstrates Defendants' good faith belief that FOH § 10b03(e) was a correct statement of the law.

Second, there is no substantial debate over the proposition that the "revered tradition of amateurism" in college sports (*Board of Regents*, 468 U.S. at 120) conforms with the plain language in FOH § 10b03(e): "interscholastic athletics . . . [is] not work of the kind contemplated by [the FLSA] and do not result in an employer-employee relationship between the student and the school or institution." Plaintiffs will try to argue that FOH § 10b03(e)

does not actually mean what it says—but they can only do so by violating long-established canons of construction.  (*See infra* pp. 30-34.)

Third, Plaintiffs will dispute reliance by alleging that discovery responses in *Livers* show that the Attended Schools, NCAA, and Non-Attended Schools did not rely on the DOL's interpretation.  (*See* FAC ¶¶ 237-38). Federal court records conclusively refute this claim.  Every one of the Defendants here was a named defendant in *Berger*, *Livers*, or both. In both cases, the defendants cited the FOH § 10b03(e), relying on it to defend the "revered tradition of amateurism."  *Board of Regents*, 468 U.S. at 120. *See, e.g., Berger*, 2016 WL 3438089, *40-50 (7th Cir. June 14, 2016) (Appellee's Brief); *Berger*, 2015 WL 3811730 (S.D. Ind. April 30, 2015) (Motion to Dismiss); *Dawson*, 2017 WL 5632769, *22-26 (9th Cir. Nov. 20, 2017) (Appellee's Brief); *Dawson*, 2017 WL 2492229 (N.D. Cal. Jan. 27, 2017) (Motion to Dismiss); *Livers*, 2017 WL 8232469 (E.D. Pa. Dec. 28, 2017) (Motion to Dismiss).  These court records are subject to judicial notice.[22]

The unequivocal language in FOH § 10b03(e) that "interscholastic athletics . . . [is] not work of the kind contemplated by [the FLSA] and do[es] not result in an employer-employee relationship between the student and the school or institution," establishes a complete defense to Plaintiffs' claim.

---

[22] *See U. S.* ex rel. *Geisler v. Walters*, 510 F.2d 887, 890 n.4 (3d Cir. 1975) (explaining that district courts may take judicial notice of briefs and other documents filed with other courts); *see also Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001) (explaining that "courts may take judicial notice of filings or developments in related proceedings"); *Schuylkill Health Sys. v. Cardinal Health, Inc.*, No. 12-7065, 2014 WL 3805466, at *1 n.1 (E.D. Pa. Mar. 14, 2014) (taking "judicial notice of [ ] court filings because, as public filings on the docket of a district court, they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

## A.
### PLAINTIFFS' STRAINED INTERPRETATION OF FOH § 10B03(E) VIOLATES MULTIPLE CANONS OF CONSTRUCTION.

Recognizing the decisive impact that FOH § 10b03(e) has on its claims, the FAC argues that the phrase "interscholastic athletics" in the FOH § 10b03(e) "clearly does **not** apply to NCAA Sports" (FAC ¶ 239 [emphasis in original]) because they "are not 'conducted primarily for the benefit of the participants as part of the educational opportunities provided to the students' as required to meet the criteria set forth in FOH § 10b03(e)."[23]  (FAC ¶ 241.) Plaintiff's argument ignores the plain meaning of the regulation and defies multiple canons of construction.[24]

***First***, Plaintiffs' strained interpretation contradicts the plain language of FOH § 10b03(e).  The second sentence of FOH § 10b03(e)  begins: "[a]ctivities of students in ***such programs***, conducted primarily for the benefit of the participants as a part of the educational opportunities provided . . ." (emphasis added).  "[S]uch programs" plainly refers to the list of programs set forth in sentence one, which expressly includes "interscholastic sports." Moreover, the phrase "conducted primarily for the benefit of the participants as a part of the educational opportunities provided" modifies "programs," the word it immediately follows. Accordingly, FOH § 10b03(e) itself reflects the DOL's conclusion that interscholastic sports ***are*** programs that are conducted primarily for the benefit of the participants as part of the educational opportunities provided to them.

---

[23] Of course, writing a legal argument into a pleading means nothing in the face of a Motion to Dismiss.  *See, e.g.*, *Twombly*, 550 U.S. at 555 (legal conclusions must be disregarded on a motion to dismiss); *Iqbal*, 556 U.S. at 678 (same).

[24] The rules of statutory construction apply to administrative regulations as well.  *See, e.g.*, *Sekula v. F.D.I.C.,* 39 F.3d 448, 453 (3d Cir. 1994) ("We also will examine the regulation in view of the accepted standards of statutory construction."); *Advanced Career Training v. Riley*, No. CIV.A . 96-7065, 1997 WL 476275, at *8 (E.D. Pa., Aug. 18, 1997) (following *Sekula*.)

**Second**, Plaintiffs' contention that "interscholastic athletics" means *only* "intramural and interscholastic **club** athletics" simply ignores the rules of construction. In construing statutory language, "[w]e are to begin with the text of a provision and, if its meaning is clear, end there." *Price v. Del. St. Police Fed. Credit Union*, 370 F.3d 362, 368 (3d Cir. 2004). "[I]ntramural and interscholastic athletics" does not just mean "intramural and interscholastic [*club*] athletics." "Interscholastic" means what it says—"characterized by participation or cooperation of two or more . . . schools." II WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, p. 1182 (1986) ("WEBSTER'S 3RD NEW INT'L"). *See also New Prime Inc. v. Oliveira,* — U.S. —, 139 S. Ct. 532, 540 n.1 (2019) (consulting WEBSTER'S 3RD NEW INT'L on a question of statutory interpretation). The phrase "interscholastic athletics" means athletic completion between schools—regardless of whether the sport is NCAA-governed or a club sport. When words are not specifically defined in a statute or regulation, they are construed "in accordance with [their] ordinary or natural meaning*." FDIC v. Meyer*, 510 U.S. 471, 476 (1994). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then this first canon is also the last: *judicial inquiry is complete*." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010) (emphasis added) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).

That FOH § 10b03(e) used the phrase "interscholastic athletics" in its ordinary, unrestricted sense—referring to all forms of athletic competition between schools—is further underscored by the fact that the first sentence in it joined it with "intramural" to provide that "intramural and interscholastic athletics" both are school-sponsored activities to which the FLSA does not apply. "Intramural" means "undertaken within the limits usu[ally] of a[n] . . .

institution (as an academic institution) . . . ." II WEBSTER'S 3RD NEW INT'L, p. 1185.  The phrase "intramural and interscholastic athletics" ordinarily and plainly means "all school-sponsored sports," regardless of whether the competitors are drawn from the student body of a single school, or from multiple schools.  As Judge Baylson recognized in *Livers*, FOH § 10b03(e) provides "relatively straightforward FOH guidance to schools that their student-athletes are not FLSA covered employees."  *Livers* I, 2018 WL 2291027, at *9.

*Third,* Plaintiffs try to make the general prevail over the specific, when the rules of construction require the opposite.  The phrase "intramural and interscholastic athletics" specifically refers to school sports, and appears as a part of a list of other specific activities schools typically offer "[a]s part of their overall educational program," including, "dramatics, student publications, glee clubs, bands, choirs, debating teams, [and] radio stations."  FOH § 10b03(e).  To permit the general language in the second sentence of § 10b03(e)—"conducted primarily for the benefit of the participants as a part of the educational opportunities provided"—to somehow limit "interscholastic athletics" to "interscholastic [*club*] athletics" (excluding NCAA-governed "interscholastic athletics") is to ignore the "commonplace of statutory construction that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 [1992]).  *Accord, e.g.*, *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 (1932) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling."); *Philadelphia Newspapers,* 599 F.3d at 304 ("It is 'a well-settled maxim that specific statutory provisions prevail over more general provisions.'") (quoting *In re: Combustion Eng'g*, 391 F.3d 190, 237 n.49 [3d Cir. 2004]).

"The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. *To eliminate the contradiction, the specific provision is construed as an exception to the general one*." *RadLAX Gateway Hotel*, 566 U.S. at 645.  If the general reference to activities "conducted primarily for the benefit of the participants as a part of the educational opportunities provided" contradicts the specific reference to "interscholastic athletics,"[25] the proper resolution of the contradiction is not to cabin or ignore the specific enumerated activity (as Plaintiffs assume)—rather, "[t]o eliminate the contradiction, the specific provision is construed as an *exception* to the general one." *Id.* (emphasis added).

**Fourth,** Plaintiffs ignore the maxim of construction, *ejusdem generis*.  *Ejusdem generis* is one version of the "commonplace of statutory construction that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 384 [1992]).  *Ejusdem generis* requires that the more general, residual language in a statute be subordinated to the specific language which precedes it.  *See, e.g.*, *Epic Systems v. Lewis*, — U.S. —, 138 S. Ct. 1612, 1625 (2018) ("[W]here, as here, a more general term follows more specific terms in a list, the general term is usually understood to 'embrace only objects similar in nature to those objects enumerated by the preceding specific words.'") (*quoting Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 [2001]).  The general cannot be used to limit or eliminate the specific.

---

[25] In fact, as discussed above, student-athletes *are* the primary beneficiaries of their participation in NCAA-governed "interscholastic athletics."  That fact is of central importance to the "economic reality" of the relationship between student-athlete and school, which is why the DOL and courts have consistently opined that student-athletes are not *ipso facto* employees of their school under the FLSA.  (*See supra,* p. 13 & n.14.)

When FOH § 10b03(e) stated that "interscholastic athletics" is outside the scope of the FLSA, the Department meant exactly what it said.  Nothing more, and nothing less.[26]

### IV.
### PLAINTIFFS' RESORT TO MULTI-FACTOR TESTS
### CREATED FOR DIFFERENT FACTUAL SETTINGS
### IS IN VAIN.

The "'economic reality' standard . . . is not a precise test susceptible to formulaic application."  *Ellington v. City of East Cleveland*, 689 F.3d 549, 555 (6th Cir. 2012).  ***There is no single, definitive test or set of criteria for "economic reality" which applies to all contexts.  See, e.g.***, *Barfield v. N.Y.C. Health & Hospital Corp*., 537 F.3d 132, 141-42 (2d Cir. 2008) ("[T]his court has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances."); *Solis v. Laurelbrook Sanitarium and Sch., Inc.*, 642 F.3d 518, 522-23 (6th Cir. 2011) ("To state that economic realities govern is no more helpful than attempting to determine employment status

---

[26] Plaintiffs will likely attempt to counter the DOL's views by relying on (1) an opinion by a regional director of the National Labor Relations Board, which concluded that Northwestern University football players who receive athletic scholarships are "employees" under the National Labor Relations Act ("NLRA"), and (2) a memorandum to the same effect by the NRLB's outgoing general counsel that was withdrawn by the agency after less than one year.  *See Northwestern University & College Athletes Players Association*, 198 L.R.R.M. (BNA) ¶ 1837 (NLRB Mar. 26, 2014) (cited in FAC ¶ 142); *NLRB Gen'l Counsel Memo No.* 17-01 (Jan. 31, 2017), *withdrawn*, *NLRB Gen'l Counsel Memo No.* 18-02 (Dec. 1, 2017).

Even if interpretations of the NLRA could shed light on the meaning of the FLSA, neither the regional director's decision in *Northwestern* nor the former general counsel's opinion in his quickly-withdrawn memorandum to his staff carries the authority of the Board itself.  The full Board declined to assert jurisdiction in *Northwestern*, *see* 362 NLRB No. 167 (Aug. 17, 2015), so the regional director's decision and the former general counsel's memorandum represent only the views of two individuals.  And the Supreme Court has held that courts owe no "deference to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question."  *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 212 (1988).

by reference directly to the FLSA's definitions themselves.  There must be some ultimate question to answer, factors to balance, or some combination of the two."); *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984) ("The issue of the employment relationship does not lend itself to a precise test, but is to be determined on a case-by-case basis upon the circumstances of the whole business activity.").

The standard for "economic reality" varies from the holistic ("some ultimate question to answer") to the formulaic ("factors to balance"), depending upon the circumstances.  *Solis*, 642 F.3d at 522-23.   Sometimes that analysis takes the form of a multi-factor test tailored to the context.  The most well-established tests are tailored to independent contractor classification disputes (*e.g.*, *DialAmerica*, 757 F.2d at 1382), joint employment disputes (*e.g.*, *Enterprise*, 683 F.3d at 468), or student internships (*e.g.*, *Glatt,* 811 F.3d at 538; *Benjamin*, 877 F.3d at 1139).  *See also Dawson* II, 932 F.3d at 910 ("The Supreme Court has also considered more specific factors when helpful to probe the economic reality of a particular situation.")

Other times, no multi-factor test is appropriate because the nature of the relationship is so far outside the common world of work.  For example, persons who perform "sacerdotal functions" in, or act as "governors" of, religious institutions are not considered "employees" within the meaning of the FLSA, *even though there is no express statutory exemption for them.*[27]  *See, e.g., Shenandoah Baptist Church*, 899 F.2d at 1396.

---

[27] The FLSA does not expressly exempt ministers.  Rather, the ministerial exemption "was devised as a rule of interpretation of employment laws that do not make explicit reference to religious organizations."  *Schleicher v. Salvation Army*, 518 F.3d 472, 474 (7th Cir. 2008).  It comes from the FOH.  Just as FOH § 10b03(e) reflects the DOL's considered view concerning the inapplicability of the FLSA to students engaged in "intramural and interscholastic athletics," FOH § 10b03(*b*) reflects its view that "[p]ersons such as nuns, monks, priests, lay brothers,

*Berger* II correctly rejected the formulaic standards for a holistic one, based on college sports' "revered tradition of amateurism."  But even if one tries to shoehorn college sports into a formulaic standard, the result comes out the same.

## A.
### BERGER II CORRECTLY ESCHEWED ALL MULTI-FACTOR TESTS IN FAVOR OF A HOLISTIC STANDARD BASED ON AMATEURISM.

None of the multi-factor tests mentioned above wholly capture the "economic reality" of the relationship between student-athlete and school.  *See Berger* II, 843 F.3d at 291.  None accounts for the "revered tradition of amateurism in college sports."  *Board of Regents*, 468 U.S. at 120.  *Berger* II correctly assessed the "economic reality" of the relationship between student-athlete and school:

> "Appellants in this case have not, and quite frankly cannot, allege that the activities they pursued as student-athletes qualify as 'work' sufficient to trigger the minimum wage requirements of the FLSA. Student participation in collegiate athletics is entirely voluntary. Moreover, the long tradition of amateurism in college sports, by definition, shows that student-athletes—like all amateur athletes—participate in their sports for reasons wholly unrelated to immediate compensation. Although we do not doubt that student-athletes spend a tremendous amount of time playing for their respective schools, they do so—and have done so for over a hundred years under the NCAA—without any real expectation of earning an income. Simply put, student-athletic 'play' is not 'work,' at least as the term is used in the FLSA. We therefore hold, as a matter of law, that student-athletes are not employees and are not entitled to a minimum wage under the FLSA."  (*Berger* II, 843 F.3d at 293.)

The Supreme Court acknowledged in *Board of Regents* that the "revered tradition of amateurism in college sports" is the defining characteristic of student athletics.  *Board of*

---

ministers, deacons, and other members of religious orders who serve pursuant to their religious obligations in the schools, hospitals, and other institutions operated by their church or religious order shall not be considered to be 'employees.'"

*Regents*, 468 U.S. at 120.  In *O'Bannon*, the Ninth Circuit reaffirmed this.  In rejecting plaintiff's contention that college athletics should be subjected to the interplay of commercial forces, the Ninth Circuit pointed out that "the difference between offering student-athletes education-related compensation and offering them cash sums untethered to education expenses is not minor; it is a quantum leap." *O'Bannon*, 802 F.3d at 1078.  The "revered tradition of amateurism" is central to the "particular brand of football" that the NCAA offers. *Board of Regents*, 468 U.S. at 101, 120.  "Not paying student-athletes is *precisely what makes them amateurs*." *O'Bannon*, 802 F.3d at 1076 (emphasis in original). *See generally Dawson* I, 250 F. Supp. 3d at 407-08 (analyzing *O'Bannon* and concluding that it does not support holding college athletics subject to the FLSA).

Although in *Livers* Judge Baylson reached no conclusions on the appropriate standard to be applied in the student-athlete context and on whether student-athletes can be "employees" under the FLSA (*Livers* I, 2018 WL 2291027, *16; *Livers* II, 2018 WL 3609839, *5 n.2), he noted that "the broader message of [*Alamo*] is that in evaluating whether a particular person is an 'employee' within the meaning of the FLSA, a holistic approach to the fundamental task of discerning the 'economic reality' of the relationship between the alleged employee and employer may be appropriate and necessary." *Livers* I, 2018 WL 2291027, *14.  Had he not been relieved of the task of reaching a conclusion by plaintiff's abrupt abandonment of his lawsuit, he likely would have concluded that a holistic test centered on amateurism—not a multi-factor test designed for a different context—applied to student-athletes, just as *Berger* II and *Dawson* I did.[28]

---

[28] The Ninth Circuit has also expressed skepticism about the appropriateness of a multi-factor test in the student-athlete context, holding that *Benjamin*'s "primary beneficiary test" "is

**B.**

**APPLYING THE STUDENT INTERN MULTI-FACTOR TEST LEADS TO
THE SAME CONCLUSION DRAWN BY THE SEVENTH CIRCUIT.**

Among the three areas in which the courts have established multi-factor tests—

independent contractors, joint employment, and student volunteers—the one that lands closest

to student-athletics is the student intern test of *Glatt* and *Benjamin*.  Plaintiffs seem to agree.

(*See* FAC ¶ 40.)  Even though this analysis ignores the critical "revered tradition of

amateurism in college sports" (*Board of Regents*, 468 U.S. at 120), it still points decisively

***away from*** a finding an employment relationship with student-athletes.[29]

In *Glatt*, the Second Circuit held that "the proper question is whether the intern or the

employer is the primary beneficiary of the relationship" (*Glatt*, 811 F.3d at 536) and set forth

the following "set of non–exhaustive factors" to be used to answer that question:

> "1. The extent to which the intern and the employer clearly
> understand that there is no expectation of compensation. Any
> promise of compensation, express or implied, suggests that the
> intern is an employee—and vice versa.
> "2. The extent to which the internship provides training that
> would be similar to that which would be given in an educational
> environment, including the clinical and other hands–on training
> provided by educational institutions.
> "3. The extent to which the internship is tied to the intern's
> formal education program by integrated coursework or the
> receipt of academic credit.

---

not useful in determining whether an employment relationship exists between" student-athletes
and the NCAA.  *Dawson* II, 932 F.3d at 911.

[29] Although multi-factor tests tend to be factual, under appropriate circumstances courts
in the Third Circuit dismiss FLSA under Rule 12 because an employment relationship cannot
adequately be alleged.  *See, e.g.*, *Katz v. DNC Servs. Corp.*, Civil Action No. 16-5800, 2018 WL
692164 (E.D. Pa. Feb. 2, 2018) (dismissed on the ground that the complaint did not adequately
allege joint employment relationship); *Richardson v. Bezar*, Civil Action No. 15-0772, 2015 WL
5783685 (E.D. Pa. Oct. 5, 2015) (same); *Attanasio v. Cmty. Health Sys.*, 863 F. Supp. 2d 417,
422-26 (M.D. Pa. 2012) (same).  This is another such circumstance.  Even if this Court were to
apply the multi-factor test urged by Plaintiff, the allegations contained in the complaint do not
plausibly allege an employment relationship.

"4. The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar.

"5. The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning.

"6. The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern.

"7. The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship" (*Id*. at 536-37.)

"No one factor is dispositive and every factor need not point in the same direction for the court to conclude that the intern is not an employee entitled to the minimum wage." *Id*. at 537.

*Glatt* "is confined to internships and does not apply to training programs in other contexts." *Id*. As "[t]he purpose of a bona-fide internship is to integrate classroom learning with practical skill development in a real-world setting," *id*., it focuses broadly on two inquiries to determine the "economic reality" of the relationship: first, whether the intern is acting on the promise of present or future employment (factors 1, 6, and 7), and second, whether the intern is receiving training related to his or her formal education (factors 2, 3, 4, and 5). *See, e.g.*, *Lucia Vlad-Berindan v. NYC Metro. Transp. Auth.*, No. 14CV10304VECFM, 2016 WL 1317700, at *7 (S.D.N.Y., Apr. 1, 2016) ("As to interns working in the private sector, the court in *Glatt* embraced a primary beneficiary test that focuses on three considerations: (1) 'what the intern receives in exchange for his work,' (2) 'the economic reality ... between the intern and the employer,' and (3) whether 'the intern enters into the [intern-employer] relationship with the expectation of receiving educational or vocational benefits that are not necessarily expected with all forms of employment.'"). Because the second inquiry "reflects a central feature of the modern internship—the

relationship between the internship and intern's formal education—[it is] confined to internships and does not apply to training programs in other contexts." *Glatt*, 811 F.3d at 537.

The first inquiry (factors 1, 6, and 7) is the most important one, and most aligns with the "primary benefit" test of *Walling*. *(See supra* pp. 18-19.) *See Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1212 (11th Cir. 2015) ("[F]actors 1 and 7 are essentially the same as *Portland Terminal*'s considerations that the intern and employer both understand that the intern will not receive wages and that the intern is not entitled to a job upon completion of the internship, respectively.").[30]   All three factors point decisively *against* an employment relationship:

_____

[30] The FAC devotes 36 paragraphs to arguing that Plaintiffs are "employees" under the Third Circuit's *DialAmerica* test for independent contractor status.  (FAC 133-69.)  *DialAmerica* is wholly inappropriate for student-athletes, because it contains no factors relevant to the existence of a 'compensation bargain'—the most important factor in determining whether an employment relationship under the FLSA exists (*see supra* pp. 16-22).  That is because it only applies *where the parties have already agreed on compensation for work*.  *See Livers* I, 2018 WL 2291027, at *13 ("As in *Donovan*, the cases that have followed it in applying the multi-factor test have dealt with the question of whether particular workers *who receive monetary compensation for their work*, under varying conditions and circumstances, are in fact 'employees' entitled to FLSA coverage.") (emphasis in original).  It is only designed to determine whether the compensation is paid as part of an employer-employee relationship, or part of a contractor-client relationship.  *See Krause v. Cherry Hill Fire Dist*. *13*, 969 F. Supp. 270, 274–75 (D.N.J. 1997) ("Unfortunately, the six-part "economic realities" test [in *DialAmerica*] offers little guidance in this case.  The test is best suited to determine whether, as a matter of economic reality, an individual is in business for himself or herself as an independent contractor, or is an employee of another. The 'economic realities' test is of limited utility in determining whether an individual is an 'employee,' as opposed to a 'volunteer.'").

As *Livers* I noted, the claim that student-athletes are "employees" under the FLSA "presents a different issue [than that addressed in *DialAmerica*], that has to do more with the threshold question of who is properly considered to be a worker entitled to compensation at all, rather than what types of workers *who in fact do receive compensation* fall under the FLSA's definition of 'employee.'"  *Livers* I, 2018 WL 2291027, *13 (emphasis in original). *DialAmerica* has no useful application to situations involving volunteers or interns performing unpaid work.  *See Wheeler v. Hurdman* 825 F.2d 257, 271–72 & n.29 (10th Cir. 1987) ("The line-drawing exercise in those cases was between those who were really part of a business (employees) and those who were running a separate business (independent contractors)";

-40-

- Factor 1:  Whether there is an express or implied promise of compensation. FAC ¶ 43 concedes that "[s]tudent-athletes do **not** have any options to choose any opportunities to play NCAA sports for wages at any NCAA D1 school [and] . . . also do **not** have any option to bargain for such wages with any such school." (*See also* FAC ¶¶ 51-55 [sanctions for violating NCAA bylaws barring compensation of athletes].)

- Factor 6:  Whether the intern displaces paid employees.  Colleges and universities do not have professional sports franchises, so student-athletes do not perform work that institutions would otherwise pay someone to perform. Plaintiffs attempt to 'plead around' this issue by alleging that "Student Athlete

---

distinguishing *DialAmerica*); *Okoro v. Pyramid 4 Aegis*, No. 11-C-267 2012 WL 1410025, at *6 (E.D. Wis., Apr. 23, 2012) ("[S]ix-factor test" similar to *DialAmerica* "is of limited assistance" where "the question is not whether [plaintiff] was an employee or an independent contractor," but "whether [plaintiff] was an employee or a volunteer."); *Rodriguez v. Township of Holiday Lakes*, 866 F. Supp. 1012, 1020 (S.D. Tex. 1994) ("This test, however, is designed to distinguish an employee from an independent contractor, a distinction that presupposes a real economic exchange between the parties which can be gauged. In the volunteer area, however, there is no economic relation to measure. As Mr. Rodriguez's situation shows, no money exchanges hands, and thus the very purpose of the economic reality test—to measure and balance the competing economic realities involved in an employee/independent contractor distinction—completely fails.").

Plaintiffs will likely point to some loose language in a very recent Third Circuit ruling that "[t]he Third Circuit utilizes the test outlined in . . . *DialAmerica* . . . to determine employee status under the FLSA." *Razak* II, 2020 WL 1022404, *4.  This language, of course, is not literally true.  *DialAmerica* is not the *only* test the Third Circuit uses "to determine employee status under the FLSA."  In joint employment cases, for example, it uses the separate test established in *Enterprise*.

The only issue before the Circuit in *Razak* II was whether the district court erred in granting summary judgment against a group of Uber drivers on the ground that they were independent contractors, rather than employees.  *See Razak* II, 2020 WL 1022404, *4.  The Circuit did not address in any fashion the questions raised here, or any issue outside of that context.  The language used by the Circuit must be read in light of the issue it was deciding.

performance is integral to the billion dollar Big Business of NCAA sports. . . ." (FAC ¶ 113.)  While it may be true that student-athletes who play in 'money' sports are integral to those sports, Plaintiffs do not—and, consistent with Rule 11, *cannot*—allege that they replace professional athletes who would otherwise play sports for schools for money if student-athletes were not available.

- Factor 7:  Whether the intern expects permanent employment after the internship.  Plaintiffs concede that "**[n]either** student employees in Work Study, **nor** Student Athletes in the NCAA sports program, are entitled to a paid job at their respective NCAA D1 member school after graduation."  (FAC ¶ 132 [emphasis in original].)[31]

The second inquiry—whether the intern receives training related to formal education (factors 2, 3, 4, and 5)—also does not point to an employment relationship:

- Factors 2 (Whether the intern receives training similar to that provided by formal education programs), 3 (Whether the internship is tied to the intern's formal education program), and 5 (Whether the internship is limited to the period in which the position provides the student with beneficial learning).

---

[31] Because they concede Factor 7, Plaintiffs attempt to allege it out of existence by arguing that it "*only* applies to corporations and similar employers – **not** to colleges, universities or proprietary schools."  (FAC ¶ 132 n.9 [emphasis in original].)  Actually, they are right— *Glatt* expressly limited its test to "the context of unpaid internships" with "for-profit employers."  *Id*. at 536 & n.2.  All of the Defendants—Attend and Non-Attended Schools, as well as the NCAA—are nonprofit 501(c)(3) organizations.  (See ECF 24.)  The *Glatt* standard does not apply to them at all.

Plaintiffs are effectively conceding what *Berger* held—that *Glatt* is not appropriately applied to student-athletes.  *Berger*, 843 F.3d at 290-91 (declining to apply *Glatt*).  But if *Glatt* is going to be (mis-)applied to the facts of this case, Plaintiffs do not get to pick and choose which factors they like, and which factors they do not.

-42-

Intercollegiate athletics have been part of the college experience for over a century.  The educational benefits of sports have long been a part of the "educational environment."  Although Plaintiffs allege that work-study jobs sometimes have a closer relationship to formal education programs (*see* FAC ¶¶ 63-69), Plaintiffs do not deny that "[l]earning benefits from participation in NCAA athletics include, but are not limited to: discipline, work ethic, strategic thinking, time management, leadership, goal-setting, and teamwork."  (FAC ¶ 70 [quoting admissions made by defendants in prior student-athlete litigation].)

- Factor 4:  Whether the internship accommodates the student's academic needs.  The arguably-imperfect correspondence between some athletic seasons and the academic calendar means attention should be made to support student-athletes in the classroom.  Plaintiffs admit this attention is paid.  (FAC ¶¶ 93, 110-11 [time devoted to sports is tracked, reported and managed to avoid conflicts with academics]; 105-09 [Defendant Villanova provides dedicated academic support for student-athletes that provides, among other services, tutoring].)

The Second Circuit held that "every factor need not point in the same direction . . . ." *Glatt*, 811 F.3d at 537.  Here, even on Plaintiffs' allegations, at least 3 of 7 factors point decisively toward finding there is no employment relationship, and the rest are at the very least neutral.  Although this Court need not apply *Glatt*—and should not, as discussed above—if it did, it would find that the Complaint fails to plausibly allege an employment relationship.

The Ninth Circuit's decision in *Benjamin* confirms that *Berger* II and *Dawson* I would have reached the same conclusion even had they applied *Glatt*.  *Benjamin* concerned

-43-

cosmetology students.  The Ninth Circuit recognized that while it had not yet addressed vocational students or interns, it had held in various other contexts that the absence of a "bargained-for compensation relationship" was fatal to a claim of employment.  *Benjamin*, 877 F.3d at 1145.  After assessing the *Glatt* test, which the Court found most appropriately applied to the context of student employment, and the alternative Department of Labor internship test, the court concluded that under both tests cosmetology students were not employees.[32]  *Id.* at 1148.  Among other reasons, the court concluded that the "[s]tudents did not displace regular employees," were "not entitled to a job at the end of their clinical experience," and "understood they would not receive compensation."  *Id*.  These same conclusions follow in the student-athlete context.

Berger II recognized that the absence of what *Benjamin* called a "bargained-for compensation relationship" (*Benjamin*, 877 F.3d at 1145), is fatal to the claims asserted there (and here):  "Although we do not doubt that student-athletes spend a tremendous amount of time playing for their respective schools, they do so—and have done so for over a hundred years under the NCAA—***without any real expectation of earning an income***. Simply put, student-athletic 'play' is not 'work,' at least as the term is used in the FLSA."  *Berger* II, 843 F.3d at 293 (emphasis added).  While student-athletes exert themselves mentally and physically, they do so for their own reasons, and their own benefit.  And their schools—which are in the business of education, scholarship, and service—offer athletics as a part of their *educational* mission, not as an end in itself.  *See Berger* II, 843 F.3d at 293 ("Student

---

[32] Which, if any at all, of the various intern tests apply to student-athletes was discussed in *Berger*, where the Seventh Circuit concluded that the District Court "concluded correctly that our approach 'to determining who is an employee under the FLSA is . . . a flexible one.'" *Berger*, 843 F.3d at 291 (internal citation omitted.)

participation in collegiate athletics is entirely voluntary. Moreover, the long tradition of amateurism in college sports, by definition, shows that student-athletes—like all amateur athletes—participate in their sports for reasons wholly unrelated to immediate compensation.").

Rather than representing an isolated exception to the FLSA, *Berger* II draws on the central tenets of FLSA jurisprudence to conclude that student-athletes are not, as a matter of law, *ipso facto* employees of the schools they represent on the playing field. Applying *Glatt* does not change that conclusion.

## V.
## CONCLUSION.

For the reasons set forth above, the Attended Schools request this Court dismiss the Complaint without leave to amend under Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6).

Dated: March 9, 2020                    Respectfully submitted

<u>s/    Steven B. Katz        .</u>

John E. MacDonald
CONSTANGY, BROOKS, SMITH &
    PROPHETE, LLP
989 Lenox Drive
Suite 206 (2nd Floor)
Lawrenceville, New Jersey 08648
Telephone: (609) 454-0096
Facsimile:  (609) 844-1102

Donald S. Prophete
    (admitted *pro hac vice*)
CONSTANGY, BROOKS, SMITH &
    PROPHETE, LLP
2600 Grand Boulevard, Suite 750
Kansas City, Missouri 64108-4600
Telephone: (816) 472-6400
Facsimile:  (816) 472-6401

-45-

Steven B. Katz
    (admitted *pro hac vice*)
Sarah Kroll-Rosenbaum
    (admitted *pro hac vice*)
Naveen Kabir
    (admitted *pro hac vice*)
Alexandria Gilbert
    (admitted *pro hac vice*)
CONSTANGY, BROOKS, SMITH &
    PROPHETE, LLP
2029 Century Park East, Suite 1100
Los Angeles, California 90067
Telephone: (310) 909-7775
Facsimile:  (424) 465-6630

*Counsel for Defendants.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 9, 2020, the foregoing document was served on counsel by filing via the CM/ECF system, which will send an email notice to registered parties.

<u>s/    Steven B. Katz</u>