## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

RALPH "TREY" JOHNSON,
STEPHANIE KERKELES,
NICHOLAS LABELLA,
CLAUDIA RUIZ,
JACOB WILLEBEEK-LEMAIR,
ALEXA COOKE,
RHESA FOSTER,
LAURA HAMILTON,
ZACHARY HARRIS,
MATTHEW SCHMIDT,
TAMARA SCHOEN,
GINA SNYDER,
ESTEBAN SUAREZ and
LIAM WALSH,
individually and on behalf of all persons
similarly situated,

                           Plaintiffs,

    v.

THE NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION, a/k/a the NCAA, and the
following NCAA Division I Member Schools as
representatives of a Defendant Class of
all private and semi-public NCAA Division I
Member Schools:[1]

CORNELL UNIVERSITY,
DREXEL UNIVERSITY,
FORDHAM UNIVERSITY,
LAFAYETTE COLLEGE,
SACRED HEART UNIVERSITY,
VILLANOVA UNIVERSITY,
UNIVERSITY OF PENNSYLVANIA,
UNIVERSITY OF OREGON,
TULANE UNIVERSITY,
UNIVERSITY OF NOTRE DAME,
UNIVERSITY OF ARIZONA,
PURDUE UNIVERSITY,

**Civil Action No. 19-cv-5230 (JP)**

---

[1]     NCAA Division I Member Schools are sued in their respective incorporated name and/or in the name of their respective Board of Regents, Board of Trustees or governing body.

DUKE UNIVERSITY and
MARIST COLLEGE

                        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' SECOND MOTION FOR
<u>CONDITIONAL CERTIFICATION AND NOTICE</u>**

Paul L. McDonald (PA Bar No. 84856)
**P L MᴄDᴏɴᴀʟᴅ Lᴀᴡ LLC**
1800 JFK Boulevard, Suite 300
Philadelphia, PA   19103
Tel:     (267) 238-3835
Fax:    (267) 238-3801
paul@plmcdonaldlaw.com

AND

**WIGDOR LLP**
Michael J. Willemin (admitted *Pro Hac Vice*)
Renan F. Varghese (Admitted *Pro Hac Vice*)
85 Fifth Avenue
New York, NY   10003
Tel:     (212) 257-6800
Fax:    (212) 257-6845
mwillemin@wigdorlaw.com
rvarghese@wigdorlaw.com

*Counsel for Plaintiffs and
Proposed Counsel for the Members of
the Proposed FLSA Collective,
the Proposed Pennsylvania Class,
the Proposed New York Class,
the Proposed Connecticut Class,
the Proposed North Carolina Class,
the Proposed Oregon Class,
the Proposed Louisiana Class,
the Proposed Arizona Class, and
the Proposed Indiana Class.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iv

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS .......................................................................................3

I.      OVERVIEW ................................................................................................3

II.     THE PLAINTIFFS........................................................................................4

III.    THE NCAA AND THE ATTENDED-SCHOOLS PROMULGATE EXPLICIT
        POLICIES PRECLUDING THE PAYMENT OF WAGES TO STUDENT
        ATHLETES ...................................................................................................8

IV.     THE EVIDENCE OF OTHER SIMILARLY-SITUATED INDIVIDUALS...................10

ARGUMENT .........................................................................................................13

I.      CONDITIONAL CERTIFICATION IS APPROPRIATE .................................13

        A.      The FLSA's Opt-In Requirements..........................................................13

        B.      The Two-Phase Certification Process for FLSA Collective Actions....................15

        C.      Plaintiffs Have Made the Required Showing that They Are Similarly-Situated to
                the Members of the Proposed FLSA Collectives.....................................19

        D.      Courts Regularly Find Named Plaintiffs to be Similarly-Situated to Employees at
                Locations Where They Did Not Physically Work .................................22

II.     COURT-AUTHORIZED NOTICE, WORKPLACE POSTING AND DISCLOSURE OF
        CONTACT INFORMATION IS NECESSARY.............................................25

III.    EXPEDITED DISCLOSURE OF NAMES AND CONTACT INFORMATION ...........27

CONCLUSION.....................................................................................................29

**TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

<u>Alvarez v. BI Inc.</u>,
   No. 16 Civ. 2705, 2018 WL 2288286 (E.D. Pa. May 17, 2018) ............................................. 18

<u>Anyere v. Wells Fargo, Co.</u>,
   No. 9 Civ. 2769, 2010 WL 1542180 (N.D. Ill. Apr. 12, 2010) ................................................. 18

<u>Aquilino v. The Home Depot, Inc.</u>,
   No. 04 Civ. 4100, 2006 WL 2583563 (D.N.J. Sept. 7, 2006) .................................................. 16

<u>Bamgbose v. Delta-T Grp., Inc.</u>,
   684 F. Supp. 2d 660 (E.D. Pa. 2010) ........................................................................ 14, 15, 16

<u>Beauchamp v. Penn Mutual Life Ins. Co.</u>,
   2011 WL 3268161 (E.D. Pa. July 29, 2011) ......................................................................... 23

<u>Bhumithanarn v. 22 Noodle Mkt. Corp.</u>,
   No. 14 Civ. 2625 (RJS), 2015 WL 4240985 (S.D.N.Y. July 13, 2015) .................................. 20

<u>Bland v. Calfrac Well Servs. Corp.</u>,
   No. 2:12 Civ. 01407, 2013 WL 4054594 (W.D. Pa. Aug. 12, 2013) ...................................... 27

<u>Bradford v. Logan's Roadhouse, Inc.</u>,
   F. Supp. 3d __, 2015 WL 5794545 (M.D. Tenn. 2015) ......................................................... 24

<u>Bowser v. Empyrean Servs., LLC</u>,
   324 F.R.D. 346 (W.D. Pa. 2018) ............................................................................... 13, 23, 25

<u>Burkhart-Deal v. Citifinancial, Inc.</u>,
   No. 7 Civ. 1747, 2010 WL 457127 (W.D. Pa. Feb. 4, 2010) ................................................. 18

<u>Camesi v. Univ. of Pittsburgh Med. Ctr.</u>,
   2009 WL 1361265 (W.D. Pa. May 14, 2009) ....................................................................... 19

<u>Camesi v. Univ. of Pittsburgh Med. Ctr.</u>,
   729 F.3d 239 (3d Cir. 2013) ............................................................................................ 13, 25

<u>Chabrier v. Wilmington Fin., Inc.</u>,
   No. 06 Civ. 4176, 2006 WL 3742774 (E.D. Pa. Dec. 13, 2006) ............................................ 16

<u>Charles v. Progressions Behavioral Health Servs., Inc.</u>,
   No. 17 Civ. 2439, 2018 WL 4924169 (E.D. Pa. Oct. 9, 2018) ............................................... 15

iv

Clarke v. Flik Int'l Corp.,
   No. 17 Civ. 1915 (SRC), 2018 WL 3930091 (D.N.J. Aug. 16, 2018)......................................26

Clubhouse Diner, Civ. A.,
   No. 13-4720, 2016 WL 1255713 (E.D. Pa. Mar. 31, 2016) ......................................... 19, 21, 25

Costello v. Kohl's Illinois, Inc.,
   No. 13 Civ. 1359, 2014 WL 4377931 (S.D.N.Y. Sept. 4, 2014)...............................................24

Devries v. Morgan Stanley & Co. LLC., Civ. A.,
   No. 12-81223, 2014 WL 505157 (S.D. Fla. Feb. 7, 2014) ....................................................24

Felix De Asencio v. Tyson Foods, Inc.,
   130 F. Supp. 2d 660 (E.D. Pa. 2001) .................................................................................16

Finefrock v. Five Guys Operations, LLC,
   344 F. Supp. 3d 783 (M.D. Pa. 2018) .................................................................................17

Fiumano v. Metro Diner Mgmt. LLC,
   No. 17 Civ. 465, 2018 WL 1726574 (E.D. Pa. Apr. 10, 2018) ..............................................18

Gallagher v. Charter Foods, Inc.,
   No. 2:20 Civ. 00049 (RJC), 2021 WL 2581153 (W.D. Pa. June 23, 2021) ...........................19

Gallagher v. Lackawanna Cty.,
   No. 3:07 Civ. 0912, 2008 WL 9375549 .............................................................................20

Garcia v. Nunn, Civ. A.,
   No. 13-6316, 2016 WL 1169560 (E.D. Pa. Mar. 25, 2016) ...................................................24

Garcia v. Vertical Screen, Inc.,
   387 F. Supp. 3d 598 (E.D. Pa. 2019) .................................................................................27

Halle v. West Penn Allegheny Health Sys., Inc.,
   842 F.3d 215 (3d Cir. 2016)....................................................................................... 14, 15, 25

Higgins v. Bayada Home Health Care, Inc.,
   No. 3:16 Civ. 2382, 2018 WL 8368874 (M.D. Pa. May 11, 2018) ........................................27

Hoffman v. Sbarro, Inc.,
   982 F. Supp. 249 (S.D.N.Y. 1997) .....................................................................................20

Hoffman-LaRoche, Inc. v. Sperling,
   493 U.S. 165 (1989)..................................................................................................... 14, 15

In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.,
No. 2:07 Civ. 01687 (JFC), 2010 WL 3447783 (W.D. Pa. Aug. 13, 2010) ........................... 20

Jones v. All. Inspection Mgmt., LLC,
No. 13 Civ. 1662, 2014 WL 1653112 (W.D. Pa. Apr. 24, 2014) ..................................... 17, 20

Jordan v. Meridian Bank,
No. 17 Civ. 5251 (JRP), 2019 WL 1255067 (E.D. Pa. Mar. 19, 2019) ............................ 16, 19

Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.,
No. 10 Civ. 948, 2011 WL 6372852 (W.D. Pa. Dec. 20, 2011) ............................................ 17

Lusardi v. Lechner,
855 F.2d 1062 (3d Cir.1988) .................................................................................................... 15

Martin v. Citizens Fin. Grp., Inc.,
No. 10 Civ. 260, 2013 WL 1234081 (E.D. Pa. Mar. 27, 2013) .............................................. 15

McConnell v. En Eng'g, LLC,
2020 WL 6747991 (W.D. Pa. Oct. 8, 2020) ........................................................................... 19

Miller v. Wells Fargo Bank, N.A.,
No. 16 Civ. 5597, 2018 WL 1532959 (E.D. Pa. Mar. 29, 2018) ....................................... 20, 21

Morrow v. Cty. of Montgomery, Pa.,
No. 13 Civ. 1032, 2014 WL 348625 (E.D. Pa. Jan. 31, 2014) ............................................... 20

Mott v. Driveline Retail Merch., Inc.,
23 F. Supp. 3d 483 (E.D. Pa. 2014) ........................................................................................ 23

Pontius v. Delta Fin. Corp.,
No. 04 Civ. 1737, 2005 WL 6103189 (W.D. Pa. July 22, 2005) ........................................... 27

Prise v. Alderwoods Grp., Inc.,
817 F. Supp. 2d 651 (W.D. Pa. 2011) ..................................................................................... 16

Reinig v. RBS Citizens, N.A.,
No. 15 Civ. 1541, 2016 WL 1746848 (W.D. Pa. May 3, 2016) ............................................. 14

Rocha v. Gateway Funding Diversified Mortg. Servs., L.P.,
No. 15 Civ. 482, 2016 WL 3077936 (E.D. Pa. June 1, 2016) ................................................ 25

Rood v. R&R Express, Inc.,
No. 2:17 Civ. 1223 (NR), 2019 WL 5422945 (W.D. Pa. Oct. 23, 2019) ............................... 19

Rosario v. First Student Mgmt. LLC,
    247 F. Supp. 3d 560 (E.D. Pa. 2017) ............................................................ 3, 25

Sabol v. Apollo Grp., Inc.,
    No. 09 Civ. 3439, 2010 WL 1956591 (E.D. Pa. May 12, 2010) ........................... 15

Shaia v. Harvest Mgmt. Sub LLC,
    306 F.R.D. 268 (N.D. Cal. 2015) ....................................................................... 24

Shakib v. Back Bay Rest. Grp., Inc.,
    No. 10 Civ. 4564, 2011 WL 5082106 (D.N.J. Oct. 26, 2011) ............................. 18

Spicer v. Pier Sixty LLC,
    269 F.R.D. 321 (S.D.N.Y. 2010) ...................................................................... 17

Taylor v. Pittsburgh Mercy Health Sys., Inc.,
    No. 09 Civ. 377, 2009 WL 2003354 (W.D. Pa. July 7, 2009) ............................. 21

Titchenell v. Apria Healthcare Inc.,
    No. 11 Civ. 563, 2011 WL 5428559 (E.D. Pa. Nov. 8, 2011) ....................... 19, 24

Vasil v. Dunham's Athleisure Corp. d/b/a Dunham's Sports,
    No. 2:14 Civ. 690, 2015 WL 7871360 (W.D. Pa. Dec. 4, 2015) ......................... 19

Whitehorn v. Wolfgang's Steakhouse, Inc.,
    767 F. Supp. 2d 445 (S.D.N.Y. 2011) ............................................................. 26

Wigton v. Kaplan,
    No. 2:10 Civ. 01768, 2014 WL 4272791 ......................................................... 16

Williams v. Sweet Home Healthcare, LLC,
    325 F.R.D. 113 (E.D. Pa. 2018) ....................................................................... 18

Wright v. Ristorante La Buca Inc.,
    No. 18 Civ. 2207, 2018 WL 5344905 (E.D. Pa. Oct. 26, 2018) .......................... 23

**Other Authorities**

20 U.S.C. § 1232g ................................................................................................ 27

29 U.S.C. § 216(b) ............................................................................ 13, 14, 15, 16

29 U.S.C. § 626(b) ............................................................................................... 14

29 U.S.C. §§ 201 ................................................................................................... 1

Fed. R. Civ. P. ("Rule") 23 ............................................................................ 13, 16

N.Y. Lab. Law §§ 191 ................................................................................................................. 4

Plaintiffs Ralph "Trey" Johnson, Stephanie Kerkeles, Nicholas Labella, Claudia Ruiz, Jacob Willebeek-Lemair, Alexa Cooke, Rhesa Foster, Laura Hamilton, Zachary Harris, Matthew Schmidt, Tamara Schoen, Gina Snyder, Esteban Suarez and Liam Walsh (together, "Plaintiffs"), on behalf of themselves and on behalf of all other similarly-situated persons, by and through undersigned counsel, hereby respectfully submit this memorandum of law in support of their second motion for conditional certification of their claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, court-facilitated notice to similarly-situated persons and expedited disclosure of contact information.

## PRELIMINARY STATEMENT

Plaintiffs seek conditional certification of the 15 collective groups of Student Athletes as follows:

- All Plaintiffs seek conditional certification of a collective of all National Collegiate Athletic Association ("NCAA") Division I ("D1") Student Athletes who worked for the NCAA during the FLSA limitations period[1] (the "NCAA Collective");

- Mr. Willebeek-Lemair seeks conditional certification of a collective of all NCAA D1 Student Athletes who worked for Cornell University during the FLSA limitations period (the "Cornell Sub-Collective");

- Ms. Hamilton seeks conditional certification of a collective of all NCAA D1 Student Athletes who worked for Drexel University during the FLSA limitations period (the "Drexel Sub-Collective");

- Ms. Kerkeles and Mr. Labella seek conditional certification of a collective of all NCAA DI Student Athletes who worked for Fordham University during the FLSA limitations period (the "Fordham Sub-Collective");

- Ms. Cook seeks conditional certification of a collective of all NCAA D1 Student Athletes who worked for Lafayette College during the FLSA limitations period (the "Lafayette Sub-Collective");

---

[1]  The FLSA limitations period runs from April 6, 2017 through the present, and is continue in nature.  Dkt. No. 36 (Order staying the applicable statute of limitations beginning April 6, 2020)

- Ms. Ruiz seeks conditional certification of a collective of all NCAA D1 Student Athletes who worked for Sacred Heart University during the FLSA limitations period (the "Sacred Heart Sub-Collective");

- Mr. Johnson seeks conditional certification of a collective of all NCAA D1 Student Athletes who worked for Villanova University during the FLSA limitations period (the "Villanova Sub-Collective");

- Ms. Hamilton seeks conditional certification of a collective of all NCAA D1 Student Athletes who worked for University of Pennsylvania during the FLSA limitations period (the "UPenn Sub-Collective");

- Ms. Foster seeks conditional certification of a collective of all NCAA D1 Student Athletes who worked for University of Oregon during the FLSA limitations period (the "University of Oregon Sub-Collective");

- Mr. Harris seeks conditional certification of a collective of all NCAA D1 Student Athletes who worked for Tulane University during the FLSA limitations period (the "Tulane Sub-Collective");

- Mr. Schmidt seeks conditional certification of a collective of all NCAA D1 Student Athletes who worked for University of Notre Dame during the FLSA limitations period (the "Notre Dame Sub-Collective");

- Ms. Schoen and Ms. Snyder seek conditional certification of a collective of all NCAA DI Student Athletes who worked for University of Arizona during the FLSA limitations period (the "University of Arizona Sub-Collective");

- Ms. Snyder seeks conditional certification of a collective of all NCAA D1 Student Athletes who worked for Purdue University during the FLSA limitations period (the "Purdue Sub-Collective");

- Mr. Suarez seeks conditional certification of a collective of all NCAA D1 Student Athletes who worked for Duke University during the FLSA limitations period (the "Duke Sub-Collective"); and

- Mr. Walsh seeks conditional certification of a collective of all NCAA D1 Student Athletes who worked for Marist College during the FLSA limitations period (the "Marist Sub-Collective").

The aforementioned Collective and Sub-Collectives, together, the "FLSA Collectives."

Plaintiffs have alleged that they and all other NCAA D1 Student Athletes have been subjected to identical wage violations (*i.e.*, a failure to pay any wages, which is a violation of the

minimum wage requirements of the FLSA) perpetrated by the NCAA over a period of many years.  Moreover, each individual Plaintiff has alleged that the school for which he or she worked as a D1 Student Athlete has perpetrated identical wage violations (*i.e.*, a failure to pay any wages, which is a violation of the minimum wage requirements of the FLSA) against any and all other individuals who worked for such schools as NCAA D1 Student Athletes.  The 14 named Plaintiffs' allegations corroborate each other's claims, and, more importantly, *neither the NCAA nor the DI member school Defendants dispute that they promulgate and carry out a common policy and practice prohibiting the payment of wages, much less the minimum wage, to Student Athletes*.  Further, Defendants do not, and, indeed, cannot, deny the fact that these policies and practices were applied to all Student Athletes across: (i) the NCAA collectively; and (ii) each named-D1 member school individually.  Thus all members of the proposed FLSA Collectives and, without question, similarly situated.

For the reasons set forth herein, Plaintiffs can meet the "modest factual showing" necessary to send a notice to the putative FLSA Collectives to effectuate the broad remedial measures of the law.  Allowing Plaintiffs to do so at this stage would be the only way to provide potential members of the FLSA Collectives an opportunity to address their daily loss of wages that have been unlawfully denied to them by Defendants and are otherwise diminishing each day that they are not made aware of this lawsuit and do not join this action.

## STATEMENT OF FACTS

### I.   OVERVIEW

On November 6, 2019, Plaintiffs commenced this action individually and on behalf of a class and collective of all other current and former similarly-situated Student Athlete employees of Defendants, and similar positions, seeking to recover, *inter alia*, unpaid minimum wages

pursuant to the FLSA and Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq*.

("PMWA").  Dkt. No. 1, Complaint, at ¶¶ 6; 300-315.  On December 12, 2019, Plaintiffs filed an

Amended Complaint adding additional plaintiffs and claims under the New York Labor Law,

N.Y. Lab. Law §§ 191, *et seq*. ("NYLL") and the Connecticut Minimum Wage Act, C.G.S.A.

§§ 31-58, *et seq*. ("CMWA").  Dkt. No. 2, Amended Complaint, at ¶¶ 297-364.

The original and Amended Complaints were brought against the NCAA, as well as

schools that were both attended (the "Attended Schools") and not attended (the "Non-Attended

Schools) by a named Plaintiff.  On March 9, 2020, the Attended Schools filed a motion to

dismiss.  Dkt. No. 25.  On August 25, 2021, the motion to dismiss filed by the Attended Schools

was denied.  Dkt. No. 56.  On March 9, 2020, the NCAA and the Non-Attended Schools filed a

motion to dismiss.  Dkt. No. 26.  On September 22, 2021, the motion was granted as to the Non-

Attended Schools, but *denied* as to the NCAA.  Dkt. No. 65.  Accordingly, the remaining

Defendants are the NCAA, as well as 14 schools that were attended by one or more of the named

Plaintiffs.  A Second Amended Complaint, the operative pleading, was filed on September 23,

2021. Dtk. No. 67.[2]

## II.     <u>THE PLAINTIFFS</u>

Defendant NCAA, and the other named Defendants, all of which are NCAA member

schools, have employed Plaintiffs and other similarly-situated employees that they seek to

represent (the "Proposed Collective") as Student Athletes (herein, referred to collectively as

"Student Athletes").  <u>See</u> ¶¶ 40-239.  Each Student Athlete, irrespective of the school she attends

or the particular sport she plays, performs the same basic tasks and has the same responsibilities.

Specifically, the primary duties and responsibilities of all Student Athletes are to train and

---

[2]     Except where otherwise noted, Paragraph citations ("¶ __") refer to the Second Amended
Complaint ("SAC"), Dkt. No. 67.

practice in their respective sports and compete in competitions on behalf of their D1 member school.  See Ex. A,[3] Declaration of Trey Johnson at ¶¶ 12-14, 17; see also Ex. B, Declaration of Stephanie Kerkeles at ¶¶ 12-15, 18; Ex. C, Declaration of Nicholas Labella, at ¶¶ 12-13, 16; Ex. D, Declaration of Claudia Ruiz at ¶¶ 12, 15; Ex. E, Declaration of Jacob Willebeek-LeMair at ¶¶ 12-13, 16; Ex. F, Declaration of Alexa Cooke at ¶¶ 12-13, 16; Ex. G, Declaration of Rhesa Foster at ¶¶ 12-13, 16; Ex. H, Declaration of Laura Hamilton at ¶¶ 12-13, 16; Ex. I, Declaration of Tamara Schoen at ¶¶ 12-13, 16; Ex. J, Declaration of Gina Snyder at ¶¶ 12-13, 16; and Ex. K, Declaration of Esteban Suarez at ¶¶ 12-13, 16.  Moreover, no Student Athletes of any of the Defendants receives any compensation for her work.

Mr. Johnson worked for the NCAA and Villanova University as a Student Athlete on Villanova's NCAA D1 Football Team from June 2013 to November 18, 2017.  Ex. A at ¶¶ 2. Mr. Johnson was not paid for his work for the NCAA and Villanova University.  Id. at ¶¶ 5-6. Accordingly, Mr. Johnson seeks to represent the NCAA Collective, as well as the Villanova Sub-Collective.  Id. at ¶¶ 1, 4, 7, 18.

Ms. Kerkeles worked for the NCAA and Fordham University as a Student Athlete on Fordham University's NCAA D1 Swimming and Diving Team from 2016 to 2020. Ex. B, at ¶¶ 2.  Ms. Kerkeles was not paid for her work for the NCAA and Fordham University.  Id. at ¶¶ 5-6.  Accordingly, Ms. Kerkeles seeks to represent the NCAA Collective, as well as the Fordham Sub-Collective.  Id. at ¶¶ 1, 4, 7, 19.

Mr. Labella worked for the NCAA and Fordham University as a Student Athlete on Fordham University's NCAA D1 Baseball Team from 2018 to 2010. Ex. C at ¶¶ 2.  Mr. Labella was not paid for his work for the NCAA and Fordham University.  Id. at ¶¶ 5-6.  Accordingly,

---

[3]     Exhibits attached to the Declaration of Michael J. Willemin ("Willemin Decl.") will be referred to herein as "Ex. __."

Mr. Labella seeks to represent the NCAA Collective, as well as the Fordham Sub-Collective.  Id. at ¶¶ 1, 4, 7, 17.

Ms. Ruiz worked for the NCAA and Sacred Heart University as a Student Athlete on Sacred Heart University's NCAA D1 Tennis Team from 2014 to 2018.  Ex. D at ¶¶ 2.  Ms. Ruiz was not paid for her work for the NCAA and Sacred Heart University.  Id. at ¶¶ 5-6. Accordingly, Ms. Ruiz seeks to represent the NCAA Collective, as well as the Sacred Heart Sub-Collective.  Id. at ¶¶ 1, 4, 7, 17.

Mr. Willebeek-Lemair worked for the NCAA and Cornell University as a Student Athlete on Cornell University's NCAA D1 Soccer Team from 2017 to 2018.  Ex. E at ¶ 2.  Mr. Willebeek-Lemair was not paid for his work for the NCAA and Cornell University.  Id. at ¶¶ 5-6.  Accordingly, Mr. Willebeek-Lemair seeks to represent the NCAA Collective, as well as the Cornell Sub-Collective.  Id. at ¶¶ 1, 4, 7, 17.

Ms. Cooke worked for the NCAA and Lafayette College as a Student Athlete on Lafayette College's NCAA D1 Tennis Team from 2017 to 2021.  Ex. F at ¶¶ 2.  Ms. Cooke was not paid for her work for the NCAA and Lafayette College.  Id. at ¶¶ 5-6.  Accordingly, Ms. Cooke seeks to represent the NCAA Collective, as well as the Lafayette Sub-Collective.  Id. at ¶¶ 1, 4, 7, 17.

Ms. Foster worked for the NCAA and the University of Oregon as a Student Athlete on the University of Oregon's NCAA D1 Track and Field Team from 2016 to 2021.  Ex. G at ¶¶ 2. Ms. Foster was not paid for her work for the NCAA and the University of Oregon.  Id. at ¶¶ 5-6. Accordingly, Ms. Foster seeks to represent the NCAA Collective, as well as the University of Oregon Sub-Collective.  Id. at ¶¶ 1, 4, 7, 17.

Ms. Hamilton worked for the NCAA and Drexel University as a Student Athlete on Drexel University's NCAA D1 Soccer Team from 2016 to 2017.  Ex. H at ¶¶ 2.  Ms. Hamilton also worked for the NCAA and the University of Pennsylvania as a Student Athlete on the University of Pennsylvania's NCAA D1 Soccer Team from 2017 to 2020.  Id.  Ms. Hamilton was not paid for her work for the NCCA, Drexel or the University of Pennsylvania.  Id. at ¶¶ 5-6.  Accordingly, Ms. Hamilton seeks to represent the NCAA Collective, the Drexel Sub-Collective and the UPenn Sub-Collective.  Id. at ¶¶ 1, 4, 7, 17.

Ms. Schoen worked for the NCAA and the University of Arizona as a Student Athlete on the University of Arizona's NCAA D1 Softball Team from 2015 to 2019.  Ex. I at ¶ 2.  Ms. Schoen was not paid for her work for the NCAA and the University of Arizona.  Id. at ¶¶ 5-6.  Accordingly, Ms. Schoen seeks to represent the NCAA Collective, as well as the University of Arizona Sub-Collective.  Id. at ¶¶ 1, 4, 7, 17.

Ms. Snyder is worked for the NCAA and Purdue University as a Student Athlete on Purdue University's NCAA D1 Softball Team from 2014 to 2017.  Ex. J at ¶¶ 2.  Ms. Snyder also worked for the NCAA and the University of Arizona as a Student Athlete on the University of Arizona's NCAA D1 Softball Team from 2017 to 2019.  Id.  Ms. Snyder was not paid for her work for the NCCA, Purdue University or the University of Arizona.  Id., at ¶¶ 5-6.  Accordingly, Ms. Snyder seeks to represent the NCAA Collective, the Purdue Sub-Collective and the University of Arizona Sub-Collective.  Id. at ¶¶ 1, 4, 7, 17.

Mr. Suarez worked for the NCAA and Duke University as a Student Athlete on Duke University's NCAA D1 Track and Field Team from 2016 to 2020.  Ex. K at ¶¶ 2.  Mr. Suarez was not paid for his work for the NCAA and the Duke University.  Id. at ¶¶ 5-6.  Accordingly,

Mr. Suarez seeks to represent the NCAA Collective, as well as the Duke Sub-Collective.  Id. at ¶¶ 1, 4, 7, 17.

### III.     THE NCAA AND THE ATTENDED-SCHOOLS PROMULGATE EXPLICIT POLICIES PRECLUDING THE PAYMENT OF WAGES TO STUDENT ATHLETES

The NCAA is the group of all colleges and universities that participate in competitive athletics.  SAC at ¶¶ 177-187.  According to the NCAA bylaws, D1 member schools – including the Attended-Schools – are prohibited from offering a salary, gratuity or compensation, or division or split of surplus (e.g., bonuses, game receipts), to Student Athletes.  See Ex. L at NCAA D1 Bylaw Articles 12, 16 and 17.  Instead, the NCAA and the D1 member schools jointly determine what benefits to Student Athletes are permissible (e.g., participation awards of limited value not for resale; complimentary tickets not for resale; snacks and nutritional supplements; and entertainment) and which are non-permissible (e.g., loans; automobiles or use of one; and transportation). Id. at Article 16, 19.

Student Athletes also do **not** have any options to bargain for such wages with any such school.  Id. at Article 12.1.2.  Indeed, the NCAA, National Association of Intercollegiate Athletics ("NAIA"), and National Junior College Athletic Association ("NJCAA"), the three associations of colleges and universities that regulate intercollegiate Varsity sports, have mutually agreed **not** to offer wages for participation in intercollegiate Varsity sports, and they have adopted bylaws prohibiting schools from offering wages and Student Athletes from accepting wages.  Id.; see also Ex. M at NAIA Bylaw VII(A); Ex. N at NJCAA Bylaw V.4.A. To enforce their mutual agreements and bylaws prohibiting schools from offering wages and Student Athletes from accepting wages, all schools in each of the NCAA, NAIA and NJCAA, including the Attended Schools, have adopted bylaws prescribing sanctions for infractions,

including, but not limited to, suspension or termination of the Student Athlete's eligibility; reduction of the letters of intent that the school is permitted to accept from high school recruits and/or athletic scholarships that the school is permitted to offer; suspension of coaching staff; and/or school team disqualification from regular season competition and/or post-season and championship segments.  See Ex. L at NCAA D1 Bylaws 19.1, 19.9.5, 19.9.7 and 19.9.8; Ex. M at NAIA Bylaws VI.B and VI.C; Ex. N at NJCAA Bylaws I.3.A.1, V.3.D, V.4.B.5 and V.4.E.

In the NCAA, "[c]ash payment or other benefits provided by a coach, administrator or representative of the institution's athletics interests" are considered a Severe Breach of Conduct (Level I Violation) subject to the highest penalties, including, for the Student Athlete, suspension or termination of eligibility, and for the member school, competition penalties (*e.g.*, postseason bans), financial penalties, scholarship reductions, head coach restrictions and recruiting restrictions.  See Ex. L at NCAA D1 Bylaws 19.1.1(f), 19.9.5 and 19.9.7.  The only circumstance under which a Student Athlete is permitted to receive payment based upon athletic performance and retain NCAA eligibility is through the U.S. Olympic Committee's ("USOC") Operation Gold program.  See id. at NCAA D1 Bylaw 12.1.2.1.5.1.  Also, if injury or illness prevents a Student Athlete from playing NCAA sports, she is "expected to assist the athletics department in other operational activities (*i.e.* coaching and/or support staff duties" without pay.  See Ex. O.

Here, it is undisputed that the NCAA's bylaws, including bylaws prohibiting Student Athletes from receiving pay, apply to all athletes in NCAA D1 sports on an equal basis, and that all athletes are similarly situated.  See Ex. A at ¶¶ 4, 6, 7, 12-14, 18; Ex. B at ¶¶ 4, 6, 7, 12-14, 18; Ex. C at ¶¶ 4, 6, 7, 12-14, 18; Ex. D at ¶¶ 4, 6, 7, 12-14, 18; Ex. E at ¶¶ 4, 6, 7, 12-14, 18; Ex. F at ¶¶ 4, 6, 7, 12-14, 18; Ex. G at ¶¶ 4, 6, 7, 12-14, 18; Ex. H at ¶¶ 4, 6, 7, 12-14, 18; Ex. I at ¶¶ 4, 6, 7, 12-14, 18; Ex. J at ¶¶ 4, 6, 7, 12-14, 18; Ex. K at ¶¶ 4, 6, 7, 12-14, 18.  Similarly, each

Attended School has promulgated rules, applicable to all Student Athletes working for such schools, prohibiting Student Athletes from receiving pay.  See Ex. L at NCAA D1 Bylaw 12.1.2.  Accordingly, each Student Athlete at any given school is similarly situated to all other Student Athletes at such school.

## IV.    THE EXISTENCE OF OTHER SIMILARLY-SITUATED INDIVIDUALS

According to the NCAA, there are approximately 176,000 Student Athletes who participate in NCAA D1 sports each year.  See https://www.ncsasports.org/recruiting/how-to-get-recruited/college-divisions (last visited, October 7, 2021).  None of these Student Athletes are paid wages, much less the minimum wages provided for under the FLSA.  Basic math dictates that there are well over 200,000 members of the NCAA Collective.

At Cornell University, there are approximately 1,270 Student Athletes who participate in NCAA D1 sports each year.  None of these Student Athletes are paid wages, much less the minimum wages provided for under the FLSA.  Basic math dictates that there are well over 3,150 members of the Cornell Collective.

At Drexel University, there are approximately 450 Student Athletes who participate in NCAA D1 sports each year.  None of these Student Athletes are paid wages, much less the minimum wages provided for under the FLSA.  Basic math dictates that there are well over 900 members of the Drexel Collective.

At Fordham University, there are approximately 700 Student Athletes who participate in NCAA D1 sports each year.  None of these Student Athletes are paid wages, much less the minimum wages provided for under the FLSA.  Basic math dictates that there are well over 1,700 members of the Fordham Collective.

At Lafayette College University, there are approximately 640 Student Athletes who participate in NCAA D1 sports each year.  None of these Student Athletes are paid wages, much less the minimum wages provided for under the FLSA.  Basic math dictates that there are well over 1,275 members of the Lafayette Collective.

At Sacred Heart University, there are approximately 940 Student Athletes who participate in NCAA D1 sports each year.  None of these Student Athletes are paid wages, much less the minimum wages provided for under the FLSA.  Basic math dictates that there are well over 2,350 members of the Sacred Heart Collective.

At Villanova University, there are approximately 600 Student Athletes who participate in NCAA D1 sports each year.  None of these Student Athletes are paid wages, much less the minimum wages provided for under the FLSA.  Basic math dictates that there are well over 1,200 members of the Villanova Collective.

At the University of Pennsylvania, there are approximately 1,050 Student Athletes who participate in NCAA D1 sports each year.  None of these Student Athletes are paid wages, much less the minimum wages provided for under the FLSA.  Basic math dictates that there are well over 2,100 members of the UPenn Collective.

At the University of Oregon, there are approximately 560 Student Athletes who participate in NCAA D1 sports each year.  None of these Student Athletes are paid wages, much less the minimum wages provided for under the FLSA.  Basic math dictates that there are well over 1,400 members of the University of Oregon Collective.

At Tulane University, there are approximately 430 Student Athletes who participate in NCAA D1 sports each year.  None of these Student Athletes are paid wages, much less the

minimum wages provided for under the FLSA.  Basic math dictates that there are over 1,500 members of the Tulane Collective.

At the University of Notre Dame, there are approximately 580 Student Athletes who participate in NCAA D1 sports each year.  None of these Student Athletes are paid wages, much less the minimum wages provided for under the FLSA.  Basic math dictates that there are well over 850 members of the Notre Dame Collective.

At the University of Arizona, there are approximately 500 Student Athletes who participate in NCAA D1 sports each year.  None of these Student Athletes are paid wages, much less the minimum wages provided for under the FLSA.  Basic math dictates that there are well over 1000 members of the University of Arizona Collective.

At Purdue University, there are approximately 610 Student Athletes who participate in NCAA D1 sports each year.  None of these Student Athletes are paid wages, much less the minimum wages provided for under the FLSA.  Basic math dictates that there are well over 910 members of the Purdue Collective.

At Duke University, there are approximately 800 Student Athletes who participate in NCAA D1 sports each year.  None of these Student Athletes are paid wages, much less the minimum wages provided for under the FLSA.  Basic math dictates that there are well over 1,400 members of the Duke Collective.

At Marist College, there are approximately 720 Student Athletes who participate in NCAA D1 sports each year.  None of these Student Athletes are paid wages, much less the minimum wages provided for under the FLSA.  Basic math dictates that there are well over 1,800 members of the Marist Collective.

Plaintiffs themselves are aware of hundreds of other similarly-situated Student Athletes who too were, and continue to be, subjected to the policies and practices discussed above that resulted in Defendants failing to pay them the minimum wages they earned.  Ex. A at ¶ 4; Ex. B at ¶ 4; Ex. C at ¶ 4; Ex. D at ¶ 4; . Ex. E at ¶ 4; Ex. F at ¶ 4; Ex. G at ¶ 4; Ex. H at ¶ 4; Ex. I at ¶ 4; Ex. K at ¶ 4.  Simply put, Defendants subjected all Student Athletes to the same uniform policies and practices which violated the law.

## ARGUMENT

## I.     CONDITIONAL CERTIFICATION IS APPROPRIATE

### A.     The FLSA's Opt-In Requirements

The FLSA states, in relevant part that:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  ***No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.***

29 U.S.C. § 216(b) (emphasis added).  That is, in a collective action under Section § 216(b), unlike in a class action pursuant to Fed. R. Civ. P. ("Rule") 23, an employee is not a member of the collective until the employee affirmatively opts-into the collective action.  Id.; see also Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 242-43 (3d Cir. 2013) ("In order to become parties to a collective action under Section 16(b), employees must affirmatively opt-in by filing written consents with the court.");  Rosario v. First Student Mgmt. LLC, 247 F. Supp. 3d 560, 565 (E.D. Pa. 2017) ("Once the collective action is conditionally certified, the parties conduct discovery and employees wishing to join the collective action must opt in.") (citation omitted); Bowser v. Empyrean Servs., LLC, 324 F.R.D. 346, 350 (W.D. Pa. 2018) ("[S]imilarly

situated employees must opt-in for a collective action to proceed.) (citing <u>Halle v. West Penn</u> <u>Allegheny Health Sys., Inc.</u>, 842 F.3d 215, 224 (3d Cir. 2016).

In this case, the statute of limitations on the FLSA claims of the members of the Putative FLSA Collectives will begin to run when Defendants file an opposition to this motion.  <u>See</u> Dkt. No. 36.  Thus, it is critical that similarly-situated employees be afforded notice and an opportunity to opt-in at this time, as their claims will be reduced and/or extinguished by the passage of time.  <u>Bamgbose v. Delta-T Grp., Inc.</u>, 684 F. Supp. 2d 660, 667 (E.D. Pa. 2010) ("The first stage [of the FLSA certification analysis], sometimes referred to as the 'notice stage,' is conducted early in the litigation[.]"); <u>Reinig v. RBS Citizens, N.A.</u>, No. 15 Civ. 1541, 2016 WL 1746848, at *2 (W.D. Pa. May 3, 2016) ("Courts within the Third Circuit employ a two-stage process for FLSA collective actions in which conditional certification for notice purposes is decided early in the case and, after fact discovery is complete, final certification is determined.").

The Supreme Court affirmed the importance of potential opt-in plaintiffs receiving timely notice of their potential claims.  <u>See Hoffman-LaRoche, Inc. v. Sperling</u>, 493 U.S. 165, 170 (1989) (a collective actions authorized by Section 216(b) "allows . . . plaintiffs the advantage of lower individual costs to vindicate their rights by the pooling of resources.").[4]  The Court observed that a collective action authorized by Section 216(b) "allows . . . plaintiffs the advantage of lower individual costs to vindicate their rights by the pooling of resources." <u>Id.</u> The Court went on to point out that, "[t]hese benefits, however, depend on employees receiving

---

[4]      While <u>Hoffman-La Roche</u> involved a collective action under the Age Discrimination in Employment Act ("ADEA"), the analysis applies to FLSA collective actions with equal force because the ADEA specifically adopted the collective action enforcement provisions of the FLSA.  <u>See</u> 29 U.S.C. § 626(b).

accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  Id.

Indeed, it is not uncommon for courts to approve expedited notice.  See Halle v. W. Penn Allegheny Health Sys. Inc., 842 F.3d 215, 224 (3d Cir. 2016) ("A district court's early intervention in the preparation and distribution of notice to potential participants serves legitimate purposes, including avoidance of a multiplicity of duplicative suits and establishing cut-off dates to expedite disposition of the action"); see also Sabol v. Apollo Grp., Inc., No. 09 Civ. 3439, 2010 WL 1956591, at *2 (E.D. Pa. May 12, 2010) (the court's intervention "should begin early, at the point of the initial notice, rather than at some later time in order to realize the legitimate goal of avoiding a multiplicity of duplicative suits").

B.      **The Two-Phase Certification Process for FLSA Collective Actions**

The Third Circuit has approved a two-step process for district courts to utilize in determining whether to proceed collectively under Section 216(b).  See, e.g., Lusardi v. Lechner, 855 F.2d 1062, 1065-67 (3d Cir.1988) (describing the two-step process in detail).  *First*, at an early stage, the Court must make an initial determination limited strictly to whether the named plaintiffs are "similarly-situated" to the potential members of the proposed FLSA Collectives. Bamgbose, 684 F. Supp. 2d at 667.  "Courts typically require a '**modest factual showing**' that the putative class members are similarly situated, particularly when the parties have engaged in some discovery."  Id.  at 667-68 (emphasis added); Charles v. Progressions Behavioral Health Servs., Inc., No. 17 Civ. 2439, 2018 WL 4924169, at *4 (E.D. Pa. Oct. 9, 2018) ("As other district courts in this Circuit have explained, in the first step, the [p]laintiff must make a modest factual showing that the similarly situated requirement is satisfied.") (internal quotation marks and citations omitted); Martin v. Citizens Fin. Grp., Inc., No. 10 Civ. 260, 2013 WL 1234081, at

*2 (E.D. Pa. Mar. 27, 2013) ("First, plaintiffs must obtain 'conditional certification' of their proposed class by making a preliminary showing that the named plaintiffs are similarly situated to potential class members, under a modest factual showing standard.") (internal quotation marks and citation omitted).  Then, the Court should facilitate notice of the action to the members of the FLSA Collectives.  For this reason, the initial phase is called the "notice stage."[5]  Bamgbose, 684 F. Supp. 2d at 667 (The first stage, sometimes referred to as the 'notice stage[.]'").

It is well-established that the burden for demonstrating that potential plaintiffs are "similarly-situated" is very low at the notice stage.  See Jordan v. Meridian Bank, No. 17 Civ. 5251 (JRP), 2019 WL 1255067, at *3 (E.D. Pa. Mar. 19, 2019) ("The Third Circuit has instructed district courts to apply 'a 'fairly lenient standard' ... for conditional certification' at the first step."); Prise v. Alderwoods Grp., Inc., 817 F. Supp. 2d 651, 670 (W.D. Pa. 2011) ("At the first tier [of the FLSA certification analysis], the plaintiff has a **fairly low burden** of proving the similarly-situated requirement.") (emphasis added); Felix De Asencio v. Tyson Foods, Inc., 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (same).  At this first step, the court uses a "relatively lenient evidentiary standard and generally examine the pleadings and affidavits of the parties to make this determination."  Chabrier v. Wilmington Fin., Inc., No. 06 Civ. 4176, 2006 WL 3742774, at *2 (E.D. Pa. Dec. 13, 2006) (citing Aquilino v. The Home Depot, Inc., No. 04 Civ. 4100, 2006 WL 2583563, at *1 (D.N.J. Sept. 7, 2006)).  "The leniency of this requirement is

---

[5]     The "notice stage" is often referred to as "conditional certification," borrowing the term from Rule 23.  This term is somewhat of a misnomer in FLSA actions as, unlike Rule 23, Section 216(b) does not have any "certification" provision, and FLSA plaintiffs are not required to establish any of the Rule 23 categories to proceed collectively.  See Wigton v. Kaplan, No. 2:10 Civ. 01768, 2014 WL 4272791, at *7, n. 8 (W.D. Pa. Aug. 29, 2014) ("Although the Court here is only preliminarily and conditionally certifying a Rule 23 class for the limited purpose of providing notice, which is the only remedy this Court has the authority to grant in this case, it is a Rule 23 class nonetheless, certified after a rigorous analysis of the applicable Rule 23 factors that FLSA collective action classes simply are not required to meet.").

consistent with the broad remedial purpose of the FLSA."  Spicer v. Pier Sixty LLC, 269 F.R.D.
321, 336 (S.D.N.Y. 2010).

If plaintiffs satisfy their *de minimus* burden of showing that "similarly-situated"
employees exist, the court should conditionally certify the class and order that appropriate notice
be given to putative class members to afford them the opportunity to opt-in to the action.  Jones
v. All. Inspection Mgmt., LLC, No. 13 Civ. 1662, 2014 WL 1653112, at *1 (W.D. Pa. Apr. 24,
2014) ("First, the plaintiff must show that proposed class members are similarly situated. If the
plaintiff satisfies this burden, the court will conditionally certify the class, which allows for
notice to proposed class members and discovery.").

**Second**, typically after a substantial period of discovery has been completed, the
defendants may move for "decertification," where the district court will be asked to conduct a
somewhat more stringent analysis of whether the plaintiffs who have opted-in are in fact
"similarly-situated" to the named plaintiffs.  See Kuznyetsov v. W. Penn Allegheny Health Sys.,
Inc., No. 10 Civ. 948, 2011 WL 6372852, at *3 (W.D. Pa. Dec. 20, 2011).  The action may be
"decertified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be
dismissed without prejudice.  See Finefrock v. Five Guys Operations, LLC, 344 F. Supp. 3d 783,
788 (M.D. Pa. 2018) ("At this point, the collective action can be de-certified if the record shows
that the plaintiffs are not similarly situated, and the opt-in plaintiffs' claims may be dismissed
without prejudice.").  The burden of demonstrating that the class members are similarly-situated
to plaintiffs in the second stage of certification is stricter, but "similarly situated [still] does not
mean identically situated." Kuznyetsov, 2011 WL 6372852 at *3 (internal quotation marks and
citation omitted).

Although Defendants may argue that conditional certification is inappropriate because Plaintiffs are exempt or otherwise not "employees" under the FLSA, their argument is misplaced at this stage.  To begin, it was rejected by this Court in the context of a motion to dismiss.  More to the point, the law is clear that the underlying merits of Plaintiffs' claims (*i.e.*, whether they are "employees" under the FLSA") should not be litigated at the conditional certification stage, and that such arguments should be reserved for summary judgment and/or at trial.  See, e.g., Williams v. Sweet Home Healthcare, LLC, 325 F.R.D. 113, 131 (E.D. Pa. 2018) ("[T]he conditional certification stage is not the appropriate time to decide the merits of this claim."); Alvarez v. BI Inc., No. 16 Civ. 2705, 2018 WL 2288286, at *9 (E.D. Pa. May 17, 2018) ("While Defendant's partial summary judgment motion is addressed below, I reiterate that it would be inappropriate to render a decision on the merits at the conditional certification stage."); Fiumano v. Metro Diner Mgmt. LLC, No. 17 Civ. 465, 2018 WL 1726574, at *4 (E.D. Pa. Apr. 10, 2018) ("[I]inquiries into the merits of [plaintiff]'s claims are inappropriate at the conditional certification stage, and such contentions instead may be raised at summary judgment.").

Indeed, as Your Honor recently held:

> However, other courts in this Circuit have concluded that "arguments concerning actual payment of overtime hours or the existence of a written policy to do so *go to the merits of a case, and are thus inapplicable at this stage of the litigation.*" Shakib v. Back Bay Rest. Grp., Inc., Civ. A. No. 10-4564, 2011 WL 5082106, at *3 (D.N.J. Oct. 26, 2011) (citing Anyere v. Wells Fargo, Co., Civ. A. No. 09-2769, 2010 WL 1542180, at *3 (N.D. Ill. Apr. 12, 2010) ); see also Burkhart-Deal v. Citifinancial, Inc., Civ. A. No. 07-1747, 2010 WL 457127, at *3 (W.D. Pa. Feb. 4, 2010) ("The fact that Defendant has a written policy requiring overtime pay, however, does not itself defeat conditional certification. *These arguments, moreover, skirt the merits of Plaintiff's claims. It is inappropriate, at this stage in the litigation, for me to consider those merits.*" (citations omitted) ) . . . Thus, because *Defendants' argument invites us "to evaluate* the credibility of [the Declarants] or *the merits of their claims, it is*

> ***more properly considered at the second stage of the certification inquiry or on a motion for summary judgment.***" <u>Viscomi v. Clubhouse Diner</u>, Civ. A. No. 13-4720, 2016 WL 1255713, at *5 (E.D. Pa. Mar. 31, 2016) (citing <u>Titchenell</u>, 2011 WL 5428559, at *6).

<u>Jordan</u>, 2019 WL 1255067 at *11 (emphasis added).

Even more recently, the Honorable Robert J. Colville explained as follows:

> In opposition to the motion, defendants raise numerous arguments, the majority of which relate to the merits of the FLSA claims, including the ultimate question of whether the AMs were properly classified as exempt or not . . . In *Fitch v. Giant Eagle*, in reviewing the Report and Recommendation of Chief Magistrate Judge Eddy, we explained that such individualized inquiries are more appropriate for the second phase of FLSA cases[:]
>
> > "We 'must adhere to the two-tiered process outlined by the Third Circuit in *Camesi [v. Univ. of Pittsburgh Med. Ctr.*, 2009 WL 1361265 *3 (W.D. Pa. May 14, 2009)], and at [step one], ***the Court cannot address and adjudicate either [a defendant's] defenses or the merits of Plaintiffs' FLSA claims.***' *McConnell v. En Eng'g, LLC*, 2020 WL 6747991, at *3 (W.D. Pa. Oct. 8, 2020); *see also Rood* 2019 WL 5422945, at *3 (***rejecting arguments that plaintiffs were exempt*** and that litigating the claims as a collective would require 'many fact-specific mini-trials' because '[b]oth arguments 'obscure the scope of the instant inquiry' by asking the Court to prematurely 'engage in a merits-based analysis.''').

<u>Gallagher v. Charter Foods, Inc.</u>, No. 2:20 Civ. 00049 (RJC), 2021 WL 2581153, at *3-4 (W.D. Pa. June 23, 2021) (citing <u>Fitch</u>, 2:18 Civ. 01534 (RJC) (CRE), (W.D. Pa. Feb 23, 2021).

**C.    Plaintiffs Have Made the Required Showing that They Are Similarly-Situated to the Members of the Proposed FLSA Collectives**

As stated above, to meet the minimal burden required for conditional certification, Plaintiffs must make a "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law."  See <u>Vasil v. Dunham's Athleisure Corp. d/b/a Dunham's Sports</u>, No. 2:14 Civ. 690, 2015 WL 7871360, at *3

(W.D. Pa. Dec. 4, 2015) ("The court may send this notice after plaintiffs make a "modest factual showing" that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" (citing Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997))).  This burden may be satisfied by a plaintiff producing "some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees."  Jones, 2014 WL 1653112 at *1; Morrow v. Cty. of Montgomery, Pa., No. 13 Civ. 1032, 2014 WL 348625, at *3 (E.D. Pa. Jan. 31, 2014) (same).  Thus, the proper inquiry is whether Plaintiffs and potential opt-in plaintiffs are similarly-situated with respect to the allegations that the law has been violated, and not whether Plaintiffs' job responsibilities are identical in every respect, or whether they worked at the same location.  See In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig., No. 2:07 Civ. 01687 (JFC), 2010 WL 3447783, at *24 (W.D. Pa. Aug. 13, 2010) ("Plaintiffs need not show that they were identically situated to other potential plaintiffs, but only that they were similarly situated").

Issuance of notice is frequently based largely on employee declarations, and very often when there is only a single declaration.  See, e.g., Miller v. Wells Fargo Bank, N.A., No. 16 Civ. 5597, 2018 WL 1532959, at *5 (E.D. Pa. Mar. 29, 2018) (finding that plaintiffs' declarations "ma[d]e a modest factual showing to warrant conditional certification[.]"); Gallagher v. Lackawanna Cty., No. 3:07 Civ. 0912, 2008 WL 9375549, at *8 n. 7 (M.D. Pa. May 30, 2008) ("[D]istrict courts routinely grant conditional certification motions that are supported by employee affidavits."); Bhumithanarn v. 22 Noodle Mkt. Corp., No. 14 Civ. 2625 (RJS), 2015 WL 4240985 (S.D.N.Y. July 13, 2015) (conditional certification based on one plaintiff's affidavit).

In the instant case, the relevant analysis is straightforward.  With respect to the NCAA, there is *no dispute* that *all* Student Athlete employed by the NCAA (as a joint-employer) are denied wages, including the minimum wage provided for under the FLSA.  Indeed, the NCAA's Bylaws condition membership in the NCAA on agreement not to pay Student Athletes any wages.  Ex. L at NCAA D1 Bylaw Articles 12, 16 and 17.  As such, the NCAA does not, and cannot, dispute the fact that all Student Athlete are subject to a common policy that operates to deny them the minimum wage required by the FLSA.  To the contrary, they have *admitted* to the existence of this common policy that is applied to all Student Athlete Employees.  Ex. P at ¶ 28, 30, 44.  In addition, Plaintiffs have submitted eleven declarations in support of the claim that they and hundreds of other similarly situated Student Athletes were denied the minimum wage by the NCAA.  See Exs. A-L.  See Viscomi, 2016 WL 1255713 at *4 ("Courts routinely certify conditional collective actions based on the plaintiff's affidavit declaring they have personal knowledge that other coworkers were subjected to similar employer practices.") (internal quotation marks and citations omitted); Taylor v. Pittsburgh Mercy Health Sys., Inc., No. 09 Civ. 377, 2009 WL 2003354, at *2 (W.D. Pa. July 7, 2009) (finding plaintiffs' declarations were sufficient to conditionally certify class based on unwritten policy that meal-break time was deducted from employees paychecks even if employees worked during meal breaks); Miller, 2018 WL 1532959 at *5 (finding that "declarations are permissible to support the conditional certification of collective actions") (citation omitted).

As such, the proposed NCAA Collective should be conditionally certified and notice should be sent to all NCAA D1 Student Athletes who worked for the NCAA from April 6, 2017 to the present.

Likewise, each individual Defendant D1 Attended School admits to promulgating policies that prohibit the payment of wages to its Student Athletes.  Ex. L at NCAA D1 Bylaw Articles 12, 16 and 17.  As such, Cornell University, Drexel University, Fordham University, Lafayette College, Sacred Heart University, Villanova University, the University of Pennsylvania, the University of Oregon, Tulane University, the University of Notre Dame, the University of Arizona, Purdue University, Duke University and Marist College, do not, and cannot, dispute the fact that all Student Athlete employed by them (*i.e.*, for each individual school, any D1 Student Athlete who attended such school) were subjected and are subject to a common policy that operates to deny them the minimum wage required by the FLSA.  In addition, Plaintiffs have submitted eleven declarations in support of the claim that they and hundreds of other similarly situated Student Athletes were denied the minimum wage by each of these Attended Schools.  See Exs. A-L.

Accordingly, the proposed Cornell Sub-Collective, Drexel Sub-Collective, Fordham Sub-Collective, Lafayette Sub-Collective, Sacred Heart Sub-Collective, Villanova Sub-Collective, UPenn Sub-Collective, the University of Oregon Sub-Collective, Tulane Sub-Collective, Notre Dame Sub-Collective, the University of Arizona Sub-Collective, Purdue Sub-Collective, Duke Sub-Collective and Marist Sub-Collective should be conditionally certified and notice should be sent to all Student Athletes who worked for such schools from April 6, 2017 to the present.

### D.   Courts Regularly Find Named Plaintiffs to be Similarly-Situated to Employees at Locations Where They Did Not Physically Work

As the Court is aware, the NCAA is a Defendant in this case.  As such, it is appropriate for the NCAA Collective – which is to be conditionally certified only as to the NCAA and not any individual school – to include all Student Athletes who worked for the NCAA, rather than only those who attended the same workplaces (*i.e.*, schools) as the named Plaintiffs.  As such,

any argument by the NCAA that Plaintiffs cannot seek conditional certification of the NCAA

Collective ***against the NCAA*** on behalf of all Student Athletes regardless of work site (*i.e.*,

school), would be a red herring.  Put another way, Plaintiffs understand that the Non-Attended

Schools have been dismissed from the case and they do not seek to conditionally certify a

collective against the Non-Attended Schools.  That said, it is *axiomatic* that similarly situated

employees jointly employed by the ***NCAA*** can be a part of a collective ***against the NCAA*** even

if they worked for the Non-Attended Schools.

Indeed, Courts in the Third Circuit regularly find named plaintiffs to be similarly-situated

to employees at locations where they did not even work, based on evidence that, like Plaintiffs

here, they all were subject to the same unlawful policy or plan.  See Bowser, 324 F.R.D. at 352-

53 (W.D. Pa. 2018) ("That potential opt-in plaintiffs held different jobs, in different departments,

at different locations does not preclude conditional certification because all were subject to the

same allegedly unlawful policy.") (citing Beauchamp v. Penn Mutual Life Ins. Co., 2011 WL

3268161, at *5 (E.D. Pa. July 29, 2011)); Mott v. Driveline Retail Merch., Inc., 23 F. Supp. 3d

483, 487 (E.D. Pa. 2014) ("Plaintiffs need only make a modest factual showing of that the

members of the proposed class were collectively victims of a uniform Driveline policy, plan, or

scheme. Plaintiffs have met this burden with evidence of Driveline's nationwide policy against

compensation for morning drive time."); Wright v. Ristorante La Buca Inc., No. 18 Civ. 2207,

2018 WL 5344905, at *1-2 (E.D. Pa. Oct. 26, 2018) (granting plaintiff's motion for conditional

certification and finding that plaintiff met his burden of showing that other tipped workers were

similarly-situated where plaintiff "adduced evidence [that defendant] had the same tip credit

policies and procedures for tipped employees.").

This observation has not been lost on the Court, as Your Honor recently held:

'Given the FLSA's broad remedial purpose,' Plaintiffs need not adduce evidence from employees located in every state in which Gateway operates to satisfy their burden of proof for certification of a nationwide collective action. Bradford v. Logan's Roadhouse, Inc., ___ F. Supp. 3d ____, 2015 WL 5794545, at *10 (M.D. Tenn. 2015) (conditionally certifying a FLSA nationwide collective action in all states in which the defendant operates even though the plaintiffs did not present evidence from employees who worked in every state). Consequently, while the evidence of record is not compelling as to the geographic breadth of Defendant's alleged violations of the FLSA, we conclude that it satisfies Plaintiffs' burden, at this 'lenient first step of conditional certification,' to make a ''modest factual showing' that there are similarly situated persons who may desire to opt into the litigation' who worked in Gateway's offices nationwide. Garcia v. Nunn, Civ. A. No. 13-6316, 2016 WL 1169560, at *3-4 (E.D. Pa. Mar. 25, 2016) (conditionally certifying nationwide FLSA collective based on Plaintiff's declaration describing conditions in five states). See also Shaia v. Harvest Mgmt. Sub LLC, 306 F.R.D. 268, 272-74, 276 (N.D. Cal. 2015) (conditionally certifying nationwide FLSA collective action based on the declarations of two of defendant's Executive Chefs employed in California and job descriptions prepared by the employer showing that the employer classified all of its Executive Chefs as non-exempt (except those employed in California after 2014), that all of the Executive Chefs had the same job responsibilities and were expected to work 50 hours per week, and that the employer did not pay the Executive Chefs overtime (except for those employed in California after 2014)); Costello v. Kohl's Illinois, Inc., Civ. A. No. 13-1359, 2014 WL 4377931, at *5-7 (S.D.N.Y. Sept. 4, 2014) (conditionally certifying nationwide FLSA collective action based on documents from defendant showing that it expected its exempt employees to perform some non-exempt work, together with the deposition testimony of four plaintiffs located in different states who, while classified as exempt, had engaged primarily in non-exempt work and had observed similarly classified employees also engaged primarily in non-exempt work); Devries v. Morgan Stanley & Co. LLC., Civ. A. No. 12-81223, 2014 WL 505157, at *2, *4-6 (S.D. Fla. Feb. 7, 2014) (conditionally certifying nationwide FLSA collective action based on evidence that employer had uniform nationwide policy with respect to its employees' job duties and deposition testimony of employees located in four states that they were not paid for overtime hours they worked); Titchenell, 2011 WL 5428559, at *1, *4-6 (conditionally certifying a nationwide FLSA collective action

> based on plaintiff's deposition testimony that her boss was aware
> that she was continuing to work after she clocked out; her
> performance evaluations in which her boss stated that she worked
> unapproved overtime; plaintiff's testimony that she had observed
> other employees working after they had clocked out; and affidavits
> from two employees who worked for the defendant in two other
> states who also described working after they clocked out).

Rocha v. Gateway Funding Diversified Mortg. Servs., L.P., No. 15 Civ. 482, 2016 WL 3077936,

at *8 (E.D. Pa. June 1, 2016).  Accordingly, it would not only be appropriate to conditionally

certify the nationwide NCAA Collective, but it would also be in keeping with normal practice.

## II.    COURT-AUTHORIZED NOTICE, WORKPLACE POSTING AND DISCLOSURE OF CONTACT INFORMATION IS NECESSARY

Plaintiffs respectfully request an order: (i) requiring Defendants to disclose contact

information for members of the putative FLSA Collectives; (ii) authorizing notice of this action

to be sent to all potential opt-in plaintiffs as expeditiously as possible; and (iii) requiring that

Defendants post the notice in a conspicuous location such that all D1 Student Athletes currently

employed by the NCAA and/or the Attended Defendant Schools have ready access to pertinent

information related to this suit.  As previously noted, once Defendants file an opposition to this

motion, and until the absent members of the FLSA Collective opt-in to this action, the statute of

limitations is running against them on a daily basis.  See Camesi, 729 F.3d at 242-43 ("In order

to become parties to a collective action under Section 16(b), employees must affirmatively opt-in

by filing written consents with the court.");  Rosario, 247 F. Supp. 3d at 565 ("Once the

collective action is conditionally certified, the parties conduct discovery and employees wishing

to join the collective action must opt in.") (citation omitted); Bowser, 324 F.R.D. at 350

("[S]imilarly situated employees must opt-in for a collective action to proceed.) (citing Halle,

842 F.3d at 224); Viscomi, 2016 WL 1255713 at *6 ("The statute of limitations continues to run

for potential members until they affirmatively opt in.").

Equally important, similarly-situated employees will remain unaware of the availability of this cost-effective means of enforcing their rights until they receive notice of this action. The primary benefit of collective actions under the FLSA – namely, the pooling of resources to lower individual costs – could play a decisive role in whether a similarly-situated employee chooses to enforce his or her rights under the FLSA.

Plaintiffs have proposed Notice of Lawsuit and Consent Forms with respect to each of the proposed FLSA Collectives that, collectively, will advise all potential opt-in plaintiffs of their right to join this collective action that is consistent with prior notices routinely approved by courts in the Third Circuit. See Ex. Q (proposed Notice of Lawsuit and Consent Form for regular mail and email). Plaintiffs also request that the Notice of Lawsuit and Consent to Join Form be sent to the FLSA Collective via text message. See Ex. R (proposed Text Message Notices). Plaintiff also request that a workplace posting be placed in a conspicuous locations at all D1 member schools, see Ex. S (proposed Workplace Notices), and that a postcard reminder notice of the putative FLSA Collective members' rights be sent approximately half way through the notice period. See Ex. T (proposed Postcard Reminder Notices). Plaintiffs specifically request that the Notice of Lawsuit and Consent to Join Form be emailed to the members of the putative FLSA Collectives through the DocuSign online application, which, in Plaintiffs' counsel's experience, is a reliable and easy-to-use service that enables email recipients to fill in and sign documents and forms electronically. See Willemin Decl. at ¶ 2.

"[C]ourts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." Clarke v. Flik Int'l Corp., No. 17 Civ. 1915 (SRC), 2018 WL 3930091, at *9 (D.N.J. Aug. 16, 2018) (quoting Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011)).

Further, courts in the Third Circuit in recent years moved towards approval of reminder notices in light of the remedial purpose of the FLSA.  See Garcia v. Vertical Screen, Inc., 387 F. Supp. 3d 598, 608 (E.D. Pa. 2019) ("Courts in this Circuit regularly permit follow-up notices and posting of the notice at work sites of the defendant."); Higgins v. Bayada Home Health Care, Inc., No. 3:16 Civ. 2382, 2018 WL 8368874, at *2 (M.D. Pa. May 11, 2018) (authorizing plaintiff "to send a reminder notice twenty (20) days before the end of the [FLSA] opt-in period.").

## III.    EXPEDITED DISCLOSURE OF NAMES AND CONTACT INFORMATION

To provide all potential opt-in plaintiffs with notice of the pendency of this action, Plaintiffs require the names and contact information for those individuals.  Plaintiffs respectfully request that the Court direct Defendants to produce the names, social security numbers (for purposes of obtaining up-to-date addresses if necessary only), last known addresses, all known telephone numbers (both home and mobile), all known e-mail addresses, employment positions/titles and dates of employment for all current and former D1 Student Athletes who worked for the NCAA and/or the Attended Defendant Schools from April 6, 2017 to the present in a computer-readable list.[6]  See Bland v. Calfrac Well Servs. Corp., No. 2:12 Civ. 01407, 2013 WL 4054594, at *3 (W.D. Pa. Aug. 12, 2013) (granting plaintiffs' motion to compel defendants to produce readily accessible email addresses and approving dissemination via email); Pontius v. Delta Fin. Corp., No. 04 Civ. 1737, 2005 WL 6103189, at *2 (W.D. Pa. July 22, 2005) (granting plaintiff's motion to compel defendant to provide, in electronic form, the names and address of

---

[6]      To the extent that the Court believes that the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA"), a/k/a the Buckley Amendment, prohibits that Defendants from disclosing this information to Plaintiffs, Plaintiffs respectfully request that Defendants be ordered to send the Court-authorized notice to all members of the FLSA collective promptly.

"all current and former loan officers/Mortgage Analysts employed by Defendant within the potentially applicable three-year statutory period.").

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request an order granting Plaintiffs'

requested relief in its entirety, and for such other and further relief deemed just and proper.

Dated: October 13, 2021
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____

    Michael J. Willemin
    (Admitted *Pro Hac Vice*)
    Renan F. Varghese
    (Admitted *Pro Hac Vice*)
    85 Fifth Avenue
    New York, NY 10003
    Telephone:  (212) 257-6800
    Facsimile:   (212) 257-6845
    mwillemin@wigdorlaw.com
    rvarghese@wigdorlaw.com

AND

s/   Paul L. McDonald
_____

Paul L. McDonald
P L MCDONALD LAW LLC
1800 JFK Boulevard, Suite 300
Philadelphia, PA 19103
Telephone:   (267) 238-3835
Facsimile:    (267) 238-3801
Email: paul@plmcdonaldlaw.com

*Counsel for Plaintiffs and Proposed Counsel*
*for the Members of*
*the Proposed FLSA Collective,*
*the Proposed Pennsylvania Class,*
*the Proposed New York Class,*
*the Proposed Connecticut Class,*
*the Proposed North Carolina Class,*
*the Proposed Oregon Class,*
*the Proposed Louisiana Class,*
*the Proposed Arizona Class, and*
*the Proposed Indiana Class.*

## <u>ORAL ARGUMENT REQUESTED</u>

Pursuant to Local Rule 7.1(f), Plaintiffs request oral argument on Plaintiffs' Motion for

Conditional Certification Pursuant to the Fair Labor Standards Act and for Other Relief as

Requested Herein.

Dated: October 13, 2021
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____

    Michael J. Willemin
    (Admitted *Pro Hac Vice*)
    Renan F. Varghese
    (Admitted *Pro Hac Vice*)
    85 Fifth Avenue
    New York, NY 10003
    Telephone:  (212) 257-6800
    Facsimile:   (212) 257-6845
    mwillemin@wigdorlaw.com
    rvarghese@wigdorlaw.com

AND

s/   Paul L. McDonald
Paul L. McDonald
P L McDONALD LAW LLC
1800 JFK Boulevard, Suite 300
Philadelphia, PA 19103
Telephone:   (267) 238-3835
Facsimile:    (267) 238-3801
Email: paul@plmcdonaldlaw.com

*Counsel for Plaintiffs and Proposed Counsel*
*for the Members of*
*the Proposed FLSA Collective,*
*the Proposed Pennsylvania Class,*
*the Proposed New York Class,*
*the Proposed Connecticut Class,*
*the Proposed North Carolina Class,*
*the Proposed Oregon Class,*
*the Proposed Louisiana Class,*
*the Proposed Arizona Class, and*
*the Proposed Indiana Class.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 13, 2021, the foregoing document was served upon

counsel by filing via the CM/ECF system, which will send an email notice to registered parties.

Dated: October 13, 2021
        New York, New York

_____
Michael J. Willemin