## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RALPH "TREY" JOHNSON, STEPHANIE KERKELLES, NICHOLAS LABELLS, CLAUDIA RUIZ, JACOB WILLEBEEK-LEMAIR, ALEXA COOKE, RHESA FOSTER, ZACHARY HARRIS, MATTHEW SCHMIDT, TAMARA SCHOEN STATMAN, GINA SNYDER, ESTEBAN SUAREZ and LIAM WALSH, individually and on behalf of all persons similarly situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br>THE NATIONAL COLLEGITATE ATHELTIC ASSOCIATION, CORNELL UNIVERSITY, FORDHAM UNIVERSITY, LAFAYETTE COLLEGE, SACRED HEART UNIVERSITY, VILLANOVA UNIVERSITY, UNIVERSITY OF OREGON, TULANE UNIVERSITY, UNIVERSITY OF NOTRE DAME, UNIVERSITY OF ARIZONA, PURDUE UNIVERSITY, DUKE UNIVERSITY, and MARIST COLLEGE,<br><br>                              Defendants. | Civil Action No. 19-cv-5230 (JP)<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE THIRD AMENDED COMPLAINT PURSUANT TO RULES 12(b)(2) (Lack of Personal Jurisdiction), 12(b)(3) (Improper Venue), 12(b)(6) (Failure to State a Claim), OR TO TRANSFER (28 U.S.C. §§1404(a) and 1406(a))** |

The Defendant, DUKE UNIVERSITY ("Duke or "Duke University"), pursuant to Federal Rules of Civil Procedure Rules 12(b)(2), 12(b)(3), 12(b)(6), and 28 U.S.C. §§ 1404(a) and 1406(a), submits this Memorandum in support of Duke's Motion to Dismiss the Plaintiffs' Third Amended Complaint (ECF No. 134), or, in the alternative, to transfer the Plaintiff ESTABAN SUAREZ ("Suarez")'s claims to the U.S. District Court for the Eastern District of North Carolina.

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................6

II.     FACTUAL BACKGROUND.................................................................................7

III.    LEGAL STANDARD............................................................................................9

IV.     ARGUMENT .......................................................................................................12

   A.    Duke University Is Not Subject to Personal Jurisdiction in Pennsylvania on this
       Claim (Rule 12(b)(2)). .........................................................................................12

     1.    There Is No General Jurisdiction Over Duke University in Pennsylvania. ...12

     2.    There Is No Specific Jurisdiction Over Duke University in Pennsylvania....15

     3.    The Court Should Decline to Exercise Supplemental Jurisdiction Over
         Suarez's State Law Claims. ...........................................................................18

   B.    Suarez's Claim Should Be Dismissed or Transferred for Improper Venue (Rule
       12(b)(3), 28 U.S.C. §§1404(a) and 1406(a)). ....................................................20

   C.    The Third Amended Complaint Fails to State a Claim Against Duke University.
       .............................................................................................................................23

V.      CONCLUSION....................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002) ............................. 18

*American Univ. Sys., Inc. v. American Univ.*, 858 F. Supp. 2d 705 (N.D. Tex. 2012) ................. 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 25, 27, 28

*Balkind v. Tri-Pak Dev. Corp.*, 17 Fed. R. Serv. 2d 77 (E.D. Pa. 1973) ...................................... 24

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 25

*Berger v. NCAA*, 843 F.3d 285 (7th Cir. 2016) ......................................................................... 26

*Borough of West Mifflin v. Lancaster*, 45 F.3d 780 (3d Cir. 1995) ............................................. 21

*Bristol-Meyer Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017) ................. 18, 20

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ......................................................... 15, 18

*Calder v. Jones*, 465 U.S. 783 (1984) ............................................................................. 13, 19, 22

*Corrales Martin v. Clemson Univ.*, 2007 WL 4531028 (E.D. Pa. Dec. 20, 2007) ...................... 17

*Daimler AG v. Baurman*, 571 U.S. 117 (2014) .................................................................... 14, 15

*Fischer v. Fed. Express Corp.*, 42 F.4th 366 (3d Cir. 2022) ............................................ 13, 14, 20

*Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3d Cir, 1985) ................... 16, 17

*Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144 (3d Cir. 2001) ........................................................... 15

*Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528 (2d Cir. 2016) ......................................... 26

*Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915 (2011) ....................................... 14, 15

*Grezak v. Ropes & Gray, LLP*, 809 F. App'x 60 (3d Cir. 2020) ................................................. 13

*Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) ................................................ 15

*Hammons v. Ethicon, Inc.*, 662 Pa. 627, 240 A.3d 537 (2020) ................................................... 20

*Hardnett v. Duquesne Univ.*, 897 F. Supp. 920 (D. Md. 1995) ................................................... 18

*Hershman v. Muhlenberg Coll.*, 2013 WL 5929849 (D. Conn. Nov. 4, 2013) ............................ 18

*In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 735 F. Supp. 2d 277 (W.D. Pa. 2010)

.................................................................................................................................................. 13

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........................................................ 14

*Issacs v. Trustees of Dartmouth College*, 2014 WL 4186536 (E.D. Pa. Aug. 25, 2015) ............. 17

*J.T. v. de Blasio*, 500 F. Supp. 3d 137 (S.D.N.Y. 2020) ............................................................... 24

*John Wayne Enterprises, LLC v. Duke Univ.*, 2014 WL 12577086 (C.D. Cal. 2014) ................. 16

*Johnson v. NCAA*, 108 F.4th 163 (2024) ............................................................................. 10, 23

*K.M. v. Adams*, 2022 WL 4352040 (2d Cir. Aug. 31, 2022) ........................................................ 24

*Kendall v. Trustees of Amherst College*, 2007 WL 172396 (E.D. Pa. Jan. 18, 2007) ................. 17

*Kloth v. Southern Christian Univ.*, 320 Fed. App'x. 113 (3d Cir. 2008) ...................................... 17

*Kubik v. Letteri*, 532 Pa. 10, 614 A.2d 1110 (1992) .................................................................... 13

*Livers v. National Collegiate Athletic Assoc.*, 2018 WL 2291027 (E.D. Pa. May 17, 2018) ....... 23

*Mendel v. Williams*, 2012 PA Super 171, 53 A.3d 810 (2012) ............................................... 14, 15

*Milliken v. Meyer*, 311 U.S. 457 (1940) ...................................................................................... 14

*Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114 (D.D.C. 2018) ..................................... 19

*Morgan v. Confidential Servs., Inc.*, 60 Pa. D. & C. 4th 139 (Pa. Com. Pls. 2002) .............. 13, 17

*Nassau County Ass'n of Ins. Agents Inc. v. Aetna Life & Cas. Co.*, 497 F.2d 1151 (2d Cir. 1974)

.................................................................................................................................................. 24

*Reagle v. UPMC*, 2012 Pa. Dist. & Cnty. Dec. LEXIS 14878, Civil Action No. GD-11-15953

(Pa. Com. Pls. Alleghany Cnty., July 15, 2012) ...................................................................... 17

*Richards v. Duke Univ.*, 480 F. Supp. 2d 222 (D.D.C. 2007) ...................................................... 16

*Ruffing v. Wipro Ltd.*, 529 F. Supp. 3d 359 (E.D. Pa. 2021) ........................................... 13, 14, 21

*Scherer v. Curators of Univ. of Missouri*, 152 F. Supp. 2d 1278 (D. Kansas 2001) .................. 18

*Segers v. Williams*, 12 F. Supp. 3d 734 (E.D. Pa. 2014) ............................................... 21

*SeYoung Ra v. Gerhard's, Inc.*, 2019 WL 95473 (E.D. Pa. Jan. 3, 2019) .......................... 25, 28

*Sonera Holding, B.V. v. Cukurova Holding, A.S.*, 750 F.3d 221 (2d Cir. 2014) ..................... 15

*Szewczyk v. United Parcel Serv., Inc.*, 2019 WL 5423036 (E.D. Pa. Oct. 22, 2019) ............ 12, 19

*Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792 (S.D.N.Y. 2015) .................................... 16

*Tony & Susan Alamo Found. V. Sec'y of Labor*, 471 U.S. 290 (1985) .............................. 10

*TriState HVAC Equipment, LLP v. Big Belly Solar, Inc.*, 836 F. Supp. 2d 274 (2011) .............. 27

*UN4 Prods., Inc. v. Does 1-15*, 2017 WL 5885779 (E.D. Pa. Nov. 29, 2017) ..................... 23, 24

*Vizant Techs., LLC v. Whitchurch*, 97 F. Supp. 3d 618 (E.D. Pa. 2015) .......................... 13, 19, 22

*Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947) ................................................ 10

*Weirbach v. Cellular Connection, LLC*, 478 F. Supp. 3d 544 (E.D. Pa. 2020) .............. 13, 14, 21

**Statutes**

28 U.S.C. § 1367 ....................................................................................... 21

28 U.S.C. § 1391(b)(1)-(3) ........................................................................ 22

28 U.S.C. § 1406 ....................................................................................... 22

42 Pa. C.S.A. § 5322(b) ............................................................................. 13

42 Pa. Cons. Stat. § 5301 ...................................................................... 13, 14, 15

42 Pa. Cons. Stat. § 5322 ......................................................................... 13

**Rules**

F.R.Civ.P. 21 ............................................................................................ 24

Fed. R. Civ. P. 20(a)(1) ............................................................................. 22

Fed. R. Civ. P. 20(a)(2) ............................................................................. 22

I.    **INTRODUCTION**

Of the thirteen individual plaintiffs suing their universities and the NCAA for alleged violations of the Fair Labor Standards Act ("FLSA") and various state laws, only one, Suarez, alleges that he attended Duke University.  Duke is specifically mentioned in only three paragraphs of the 716-paragraph Third Amended Complaint.  (ECF No. 134 at ¶¶ 33, 50, ¶ 432 n.26.)  These three paragraphs recite that Suarez was a member of Duke's track-and-field team from 2016 to 2020, that Duke's mission statement contains no reference to athletics, and that Duke is the only North Carolina-based university in this lawsuit.

Suarez resides in Los Angeles, California.  He makes no allegation that he has ever been to Pennsylvania, let alone competed in track and field in Pennsylvania.  He makes no allegation that his alleged employment claims against Duke arose in Pennsylvania.  In fact, other than being a Plaintiff in this lawsuit, Suarez alleges no connection with Pennsylvania whatsoever.

Nor does Suarez allege that Duke University has sufficient contacts with Pennsylvania such that Pennsylvania courts may exercise personal jurisdiction over it.  To the contrary, Duke University is a non-profit research and educational institution under North Carolina law and maintains its offices and principal place of business in North Carolina.  Between 2016 and 2020, the time period that Suarez alleges he was a member of the track-and-field team, Duke's track-and-field team competed three times in Pennsylvania; Suarez did not travel with the team or compete in any of those meets.  Duke owns no property in Pennsylvania; Duke does not operate any offices or lease any office space in Pennsylvania; and Duke owns no vehicles licensed in Pennsylvania.  Duke is not registered to do business in Pennsylvania.  Roughly three percent of Duke's 7,027 undergraduate students come from Pennsylvania (182) and roughly 1 percent of its

10,644 professional and graduate students are from Pennsylvania (111). None of Duke's 33 global education programs worldwide are offered in Pennsylvania. Of the more than 51,000 people Duke employs, only a few full-time employees claim a home address in Pennsylvania. Thus, none of Suarez's claims arose in Pennsylvania, Suarez has no contacts with and never competed in Pennsylvania, and Duke's contacts with Pennsylvania are insufficient to establish either general or specific jurisdiction. On this basis alone, Duke University should be dismissed.

Suarez's claims are also fatally deficient on their substance. Suarez makes no specific allegations about his claimed employment relationship with Duke University. Moreover, under both analytical approaches posited by the Third Circuit in this case, because Suarez is a non-scholarship, "walk-on" athlete, he is a person who, "without promise or expectation of compensation, but solely for his personal purpose or pleasure, work[s] in activities carried on by other persons either for their pleasure or profit." *Johnson v. NCAA*, 108 F.4th 163, 177 (2024) (quoting *Walling v. Portland Terminal Co*., 330 U.S. 148, 152 (1947)). Under the "economic reality" framework posed by the Third Circuit, and in particular, whether a claimant participated in athletics "in return for 'express' or 'implied' compensation or 'in-kind benefits,'" Suarez has no claim. 108 F.4th at 180 (quoting *Tony & Susan Alamo Found. V. Sec'y of Labor*, 471 U.S. 290, 301 (1985)). Rather, Suarez is one of those "college athletes who 'play' their sports for predominantly recreational or noncommercial reasons." *Id.* at 182. And because Suarez cannot state a claim as an employee under the FLSA, his claims under North Carolina law for breach of the Wage and Hour Act and for unjust enrichment fail as well.

## II.    FACTUAL BACKGROUND

The Third Amended Complaint alleges that Suarez resides in Los Angeles and from 2016 to 2020 he was a "Student Athlete on Duke University's track-and-field team." (ECF No. 134 ¶

33.)  These are the sole allegations that are individualized to Suarez.[1]  Suarez does not allege when, where, how, or in what form his claimed employment agreement came to be—whether it was in writing, a verbal agreement, or based on some other understanding.  He makes no allegations as to the particulars of this agreement, how long the agreement was to last, or whether it existed year-round or only during athletic seasons.  No other plaintiff claims that he or she was "employed" by Duke University or makes claims under North Carolina law against Duke.

Duke University is a non-profit research and educational institution organized under the laws of North Carolina, where it maintains its offices and principal place of business.  (ECF No. 196, Ex. A at ¶ 2.)  All of Duke's executives and corporate officers are located in Durham, North Carolina.  *Id.* Duke's home campus is also in Durham, where it serves 7,027 undergraduate students, and 10,644 graduate and professional students on the 8,500 acres of land that Duke controls in the vicinity of its campus.  Duke has over 51,000 employees including more than 3,300 faculty, the overwhelming majority of which are located in Durham.  *Id.*

Duke University's contact with Pennsylvania is minimal.  Duke is not incorporated in Pennsylvania, nor is it registered to do business in Pennsylvania.  (ECF No. 196, Ex. A at ¶¶ 10, 11.)  Duke has no agent for service of process in Pennsylvania, (*id.* at ¶ 13), owns no real property in Pennsylvania, (*id.* at ¶ 9), does not lease any office space in Pennsylvania, *id.*, and owns no vehicles licensed in Pennsylvania, (*id.* at ¶ 7.)  While Duke has 33 global education programs, none are located in Pennsylvania.  (*Id.* at ¶ 14.)  Duke maintains no bank accounts in Pennsylvania.

---

[1] While Suarez is mentioned by name in various allegations concerning whether a North Carolina class is appropriate, ¶¶ 432-66, and whether class treatment under federal law is appropriate, ¶¶ 647-60, these allegations are duplicative of the allegations for every other plaintiff in this matter, with the only changes being the substitution of "Suarez" and "North Carolina" for the identical claims of the other plaintiffs.

(*Id.* at ¶ 12.)  Out of Duke's more than 51,000 employees, only 34 who receive compensation list Pennsylvania as an address for purposes of payroll information.  (*Id.* at ¶ 2.)

Duke does admit students from Pennsylvania (as well as from all 50 states and worldwide. Out of the roughly 17,700 students that attend Duke in the 2024-25 academic year, 293 (1.6%) are from Pennsylvania.[2]  (ECF No. 196, Ex. A at ¶ 4.)  The only formal office that Duke maintains for undergraduate admissions is in Durham, North Carolina.  The largest percentage of students matriculating at Duke University are from North Carolina (12%).

Duke athletic teams do, from time to time, compete in Pennsylvania, largely because the University of Pittsburgh is a Member of the Atlantic Coast Conference.  Between 2016 and 2020, the Duke University track-and-field team competed three times in Pennsylvania at the Penn Relays.  (ECF No. 196, Ex. A at ¶ 19.)  Suarez made none of those trips as a member of the Team. (*Id.* at ¶¶ 19-20.)  In fact, there is no record that Suarez ever competed on a Duke athletic team in Pennsylvania, and the Complaint makes no allegations to the contrary.  (*Id.* at ¶ 21.)  At all times relevant to the Third Amended Complaint, Suarez was a "walk-on" member of the track-and-field team and was not on an athletic scholarship.  (*Id.* at ¶¶ 16, 18.)

III.    **LEGAL STANDARD**

In an action brought under the FLSA, this Court's jurisdiction rests upon whether Pennsylvania may exercise jurisdiction over a defendant under Pennsylvania's long-arm statute and Due Process.  *Szewczyk v. United Parcel Serv., Inc.*, 2019 WL 5423036, at *8 (E.D. Pa. Oct. 22, 2019).  If the Court lacks personal jurisdiction over a defendant on an FLSA claim, the FLSA claim must be dismissed and there is no basis for exercising pendant or supplemental jurisdiction

---

[2] Roughly the same percentage of Duke students were from Pennsylvania in 2021, at the time the Second Amended Complaint was filed.  (ECF No. 196, Ex. A at ¶ 4.)

over state-law claims. *See, e.g.*, *Grezak v. Ropes & Gray, LLP*, 809 F. App'x 60, 63 n.6 (3d Cir. 2020). Each plaintiff in a collective FLSA action "must be assessed individually." *Vizant Techs., LLC v. Whitchurch*, 97 F. Supp. 3d 618, 628 (E.D. Pa. 2015) (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)). Pennsylvania courts have consistently interpreted this requirement to mean that, in the context of FLSA collective actions, they cannot exercise specific personal jurisdiction over defendants to resolve claims of their employees where the employees were "not employed and thus not harmed by [the] defendant[s] in Pennsylvania." *Ruffing v. Wipro Ltd.*, 529 F. Supp. 3d 359, 368 (E.D. Pa. 2021); *see also Weirbach v. Cellular Connection, LLC*, 478 F. Supp. 3d 544, 550 (E.D. Pa. 2020) ("[T]his Court cannot exercise personal jurisdiction over the out-of-state plaintiffs' claims."). Only when a court can exercise general jurisdiction over an employer may a nationwide collective action take place. *See Fischer v. Fed. Express Corp.*, 42 F.4th 366, 388 (3d Cir. 2022), *cert. denied*, 143 S. Ct. 1001, 215 L. Ed. 2d 137 (2023); *see also In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 735 F. Supp. 2d 277, 309 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012).

Under Pennsylvania law, jurisdiction is appropriate over out-of-state defendants in two circumstances: (1) where the defendant's general activity within the state forms a basis for general personal jurisdiction under 42 Pa. Cons. Stat. § 5301; or (2) where the specific acts of the defendant which gave rise to the cause of action form a basis for specific jurisdiction under 42 Pa. Cons. Stat. § 5322. *See Kubik v. Letteri*, 532 Pa. 10, 16, 614 A.2d 1110, 1113 (1992); *Morgan v. Confidential Servs., Inc.*, 60 Pa. D. & C. 4th 139, 148 (Pa. Com. Pls. 2002). Because Pennsylvania's long-arm statute permits a Pennsylvania court to exercise jurisdiction to the full extent allowable under the 14th Amendment's due process clause, *see* 42 Pa. C.S.A. § 5322(b), the inquiry "collapses into whether the Court can exercise personal jurisdiction under the 14th Amendment." *Weirbach*, 478

F. Supp. 3d at 550; *see also Fischer*, 42 F.4th at 387 ("[T]he opt-in plaintiffs in FLSA collective actions must satisfy the personal jurisdiction requirements of the Fourteenth Amendment to join the suit."); *Ruffing*, 529 F. Supp. 3d at 364 (noting "court must determine the extent to which the Due Process Clause of the Fourteenth Amendment would allow Pennsylvania courts to exercise personal jurisdiction in this action").

The benchmark for personal jurisdiction was set forth by the U.S. Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), in which it was held that a court may exercise jurisdiction over a person or an organization if that person or entity has sufficient "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This principle "presaged the development of two categories of personal jurisdiction": general and specific. *Daimler AG v. Baurman*, 571 U.S. 117, 126 (2014).

The paradigm forum for a corporation is "one in which the corporation is fairly regarded as at home." *Mendel v. Williams*, 2012 PA Super 171, 53 A.3d 810, 817 (2012) (citing *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and alterations omitted)); *see also* 42 Pa. C.S. § 5301. Accordingly, general jurisdiction is appropriate when a corporation's "affiliations with the forum State are so continuous and systematic as to render them essentially at home there." *Mendel*, 53 A.3d at 817 (internal quotation marks and alterations omitted). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137. For a corporation, general jurisdiction is in the place "in which the corporation is fairly regarded as at home," equivalent to the domicile of an individual. *Id.* Aside from the "exceptional case," a corporation "is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the

company's formal place of incorporation or its principal place of business." *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014).

In the absence of general jurisdiction, a court may nevertheless exercise specific jurisdiction if the defendant's contacts with the forum state are the basis of the underlying suit. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). "Specific jurisdiction is established when a nonresident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001).

## IV.    <u>ARGUMENT</u>

### A.    *Duke University Is Not Subject to Personal Jurisdiction in Pennsylvania on this Claim (Rule 12(b)(2)).*

#### 1.    <u>There Is No General Jurisdiction Over Duke University in Pennsylvania.</u>

General jurisdiction over a corporation exists only where "the corporation is fairly regarded as at home." *Mendel*, 53 A.3d at 817 (citing *Goodyear Dunlop Tires Ops., S.A.*, 564 U.S. at 919 (internal quotation marks and alterations omitted)); *see also* 42 Pa. C.S. § 5301. Accordingly, general jurisdiction over a corporation is appropriate only where it is incorporated, where it has its principal place of business, or where its "affiliations with the forum State are so continuous and systematic as to render [it] essentially at home there." *Mendel*, 53 A.3d at 817 (internal quotation marks and alterations omitted).

Plaintiffs do not allege that Duke is "at home" in Pennsylvania, and do not aver any facts that would support such a conclusion. Nor could they. Duke both exists under North Carolina law and maintains its principal place of business in North Carolina. The "paradigm forum" for general jurisdiction over Duke is thus North Carolina—not Pennsylvania. *Sonera Holding, B.V. v. Cukurova Holding, A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) (citing *Daimler AG*, 571 U.S. at 760)

("The paradigm forum for general jurisdiction over an individual is the individual's domicile, his home. For a corporation, it is an equivalent place, with the place of incorporation and the principal place of business being the paradigm bases."). Moreover, Duke's contacts with Pennsylvania are not so "continuous and systematic" as to render it "at home" in Pennsylvania. Again, less than 2% of Duke's total student population identifies Pennsylvania as their state of residence; less than one one-hundredth of a percent of Duke's employees reside within Pennsylvania; and Duke's athletic teams only periodically compete in Pennsylvania (as well as in at least a dozen other states). Indeed, when faced with the same jurisdictional question, courts in other states have consistently ruled that Duke is not "at home" outside of North Carolina and is not subject to general jurisdiction elsewhere. *See, e.g.*, *Richards v. Duke Univ.*, 480 F. Supp. 2d 222 (D.D.C. 2007) (District of Columbia); *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792 (S.D.N.Y. 2015), *aff'd* 660 Fed. Appx. 43 (2d Cir. 2016) (New York); *John Wayne Enterprises, LLC v. Duke Univ.*, 2014 WL 12577086 (C.D. Cal. 2014) (California).

Colleges and universities, such as Duke, are not "exceptional cases" to the precepts for general jurisdiction. To the contrary, courts have consistently held that colleges and universities are not "at home" in states outside of their places of incorporation and where their campuses and offices are located. In *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3d Cir, 1985), for example, the Third Circuit held that colleges and universities are not subject to jurisdiction based on their students' original state of residence before attending college, for to hold otherwise "would subject them to suit on non-forum related claims in every state where a member of the student body resides." *Id*. at 542. Thus, "the fact that residents of the state apply and are accepted for admission . . . is of no moment." *Id.* And, that a university "may be said to derive some percentage of its revenues from Pennsylvania residents in return for services . . . does not

13

subject it to *in personam* jurisdiction." *Id.* at 543. *Gehling*'s conclusion has been reflected in a number of similar rulings from the Eastern District of Pennsylvania. For example, in *Issacs v. Trustees of Dartmouth College*, 2014 WL 4186536 (E.D. Pa. Aug. 25, 2015), the court held:

> Like all national universities, Dartmouth College maintains some contacts with the state including securities held by a bank headquartered in Pennsylvania, the recruiting of athletes and faculty living in the state, access to its website from within the state, and the admission and enrollment of students coming from the state. These *de minimis* contacts, which any national university may have with the state of Pennsylvania, are inadequate to establish general personal jurisdiction in this district.

*Id*. at \*12; *accord Gallant v. Trustees of Columbia Univ.*, 111 F. Supp. 2d 638, 640-42 (E.D. Pa. 2000) (holding no general jurisdiction existed over Columbia University, even though it had more jurisdictional contacts than those at issue in *Gehling*); *Corrales Martin v. Clemson Univ.*, 2007 WL 4531028, at \* 3, 6 (E.D. Pa. Dec. 20, 2007); *Kloth v. Southern Christian Univ.*, 320 Fed. App'x. 113 (3d Cir. 2008).

Relying on *Gehling* and *Gallant*, this Court held that Amherst College was not subject to personal jurisdiction in Pennsylvania, and Amherst's contacts with Pennsylvania were more extensive than are Duke's here. *See Kendall v. Trustees of Amherst College*, 2007 WL 172396, at \*3-5 (E.D. Pa. Jan. 18, 2007) (Padova, J.) (applying rule of *Gehling* and *Gallant*, holding that plaintiff had failed to establish personal jurisdiction over Amherst College where evidence suggested that Amherst maintained a bank account in Philadelphia to accept tuition payments and disburse funds; sent Amherst personnel to Pennsylvania high schools to recruit prospective students; and directed the plaintiff to make her tuition payment to a Pennsylvania address). Pennsylvania state courts have reached similar conclusions. *See, e.g.*, *Morgan*, 60 Pa. D. & C. 4th at 148; *Reagle v. UPMC*, 2012 Pa. Dist. & Cnty. Dec. LEXIS 14878, at \*3-5, Civil Action No. GD-11-15953 (Pa. Com. Pls. Alleghany Cnty., July 15, 2012).

Other courts across the country have agreed.  *See, e.g.*, *American Univ. Sys., Inc. v. American Univ.*, 858 F. Supp. 2d 705 (N.D. Tex. 2012) ("In similar cases involving the issue of personal jurisdiction over an out-of-state educational institution, courts have unanimously determined that the institution is not subject to general personal jurisdiction where its only contacts with the forum state are its involvement in activities that are typical of a nationally prominent university."); *Scherer v. Curators of Univ. of Missouri*, 152 F. Supp. 2d 1278, 1282 (D. Kansas 2001) ("[P]laintiff has directed the court to no case in which a university from a nonforum state has been held subject to the general jurisdiction of a forum state and, in fact, every case which the court has uncovered holds directly to the contrary"); *Hardnett v. Duquesne Univ.*, 897 F. Supp. 920, 923 (D. Md. 1995) ("Hardnett cites to no case in which a university from a nonforum state has been held subject to the general jurisdiction of a forum state . . . ."); *Hershman v. Muhlenberg Coll.*, 2013 WL 5929849, at*2 (D. Conn. Nov. 4, 2013).

### 2.    There Is No Specific Jurisdiction Over Duke University in Pennsylvania.

In the absence of general jurisdiction, a court may nevertheless exercise specific jurisdiction if the defendant's contacts with the forum state are the basis of the underlying suit. *Burger King Corp.*, 471 U.S. at 472-73.  But "[s]pecific jurisdiction is very different," for "[i]n order for a state court to exercise specific jurisdiction, 'the *suit*' must 'arise out of or relate to the defendant's contacts with the *forum*.'"  *Bristol-Meyer Squibb Co. v. Superior Court of California*, 582 U.S. 255, 262 (2017) (emphases in original).  In other words, Duke must have "purposefully availed itself of the privilege of conducting activities" in Pennsylvania such that it could reasonably anticipate being sued here.  *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

For purposes of this type of collective action under the FLSA, "it is well-established that when a single named plaintiff seeks to bring a claim on behalf of a class or collective, that named

plaintiff must establish that the court has personal jurisdiction over the defendant with respect to his or her claim." *Szewczyk*, 2019 WL 5423036, at *8 (collecting cases); *see also Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 124-25 (D.D.C. 2018).

The fact that the Third Amended Complaint styles itself as a collective action under the FLSA "does not relieve plaintiffs of their obligation to establish personal jurisdiction over defendant in compliance with constitutional due process principles." *Szewczyk*, 2019 WL 5423036, *8. As another court in this district noted, "[t]o the contrary, a court's exercise of jurisdiction"—even in an FLSA collective action case—"must still comport with Pennsylvania's long-arm statute and due process." *Id.* And Suarez's status as a putative class plaintiff under federal and North Carolina law does not relieve him of the obligation to "establish that the court has personal jurisdiction over the defendant with respect to his or her claim." *Id.* (citing cases). Indeed, because Suarez's claims arise under the FLSA, his claim "must be assessed individually." *Vizant Techs., LLC*, 97 F. Supp. 3d at 628 (quoting *Calder*, 465 U.S. at 790).

Suarez fails to allege that his claims arise out of or otherwise relate to Duke's contacts with Pennsylvania. This is unsurprising given that Suarez never competed in Pennsylvania as a member of Duke's track-and-field team. Duke competed in three track meets in Pennsylvania over the four years that Suarez alleges he was a member of the track-and-field team, but Suarez did not participate in any of them, nor is there any allegation that he was required to (or did) travel to these meets. There is also no allegation that Duke ever recruited Suarez for its track-and-field team, much less in Pennsylvania. Even indulging in Suarez's claim that he had some type of "employment" relationship with Duke, he fails to allege that this agreement arose in Pennsylvania, or that any part of this alleged agreement was to be performed in Pennsylvania. Put simply, Suarez points to no conduct by Duke arising in or connected with Pennsylvania that led to or is related to

his claim for unpaid wages under the FLSA.

In analyzing specific jurisdiction tests and case law, courts and commentators have distilled the factors into a three-part test:

(1) Did the plaintiff's cause of action arise out of or relate to the out-of-state defendant's forum-related contacts?

(2) Did the defendant purportedly direct its activities, particularly as they relate to the plaintiff's cause of action, toward the forum state or did the defendant purposefully avail itself of the privilege of conducting activities therein?

(3) [W]ould the exercise of personal jurisdiction over the nonresident defendant in the forum state satisfy the requirement that it be reasonable and fair?

*Hammons v. Ethicon, Inc.*, 662 Pa. 627, 660, 240 A.3d 537, 557 (2020) (quoting 4 Charles Alan Wright, Arthur R. Miller & Adam Steinman, *Federal Practice and Procedure Civil* §1069 (4th ed. 2015 & Supp. 2020)).  In this case, the answer to all three question is clearly "no."  In substance, this matter is no different than the claims at issue in *Bristol-Meyer Squibb Co.*, in which the Supreme Court found no personal jurisdiction existed where the "relevant plaintiffs are not California residents and do not claim to have suffered harm in that State," and "the conduct giving rise to the nonresidents' claims occurred elsewhere."  582 U.S. at 265.  Similarly, in *Fischer v. Federal Express Corp.*, 509 F. Supp. 3d 275 (E.D. Pa. 2020), the court noted that the out-of-state plaintiffs in an FLSA collective action did not claim to have suffered any harm in Pennsylvania and, because any "alleged FLSA violations occurred outside of Pennsylvania," found they could "not form the requisite connection between activities within the state and the case at hand" necessary for personal jurisdiction.

Here, all of the evidence and the pleadings show that Duke engaged in no conduct in Pennsylvania from which Suarez's cause of action arose, such that specific jurisdiction can exist. As such, the exercise of specific jurisdiction would offend due process. *See Ruffing*, 529 F. Supp.

3d at 364 (noting "court must determine the extent to which the Due Process Clause of the Fourteenth Amendment would allow Pennsylvania courts to exercise personal jurisdiction in this action"); *Weirbach*, 478 F. Supp. 3d at 550 (same).  Duke could not reasonably expect to "be haled into court" in Pennsylvania in this matter for, even crediting Suarez's theory that he was an "employee" as a "walk-on" student athlete, no part of this "employment" was created by, existed in, or was to be performed in Pennsylvania.

Moreover, Pennsylvania has no significant interest in adjudicating a dispute over whether a student who resides in California was an "employee" while a "walk-on" athlete at Duke University in North Carolina.  More fundamentally, there was no impediment to Suarez in bringing this claim in the federal courts of North Carolina, where his alleged employment was established, where he performed any alleged services for Duke, and where all of the witnesses and records are located.  And because this is a claim under federal law and North Carolina law, Pennsylvania has no significant interest in the resolution of these issues.

3.    The Court Should Decline to Exercise Supplemental Jurisdiction Over Suarez's State Law Claims.

In the event the Court dismisses Suarez's FLSA claim, it should decline to exercise supplemental jurisdiction over his state law claims.  Under 28 U.S.C. § 1367, "a district court has discretion to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it had original jurisdiction."  *Segers v. Williams*, 12 F. Supp. 3d 734, 741 (E.D. Pa. 2014).  Indeed, "[w]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  *Id.* (citing *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).  But there is still no jurisdiction over Duke for Suarez's state law claims, all of which

are grounded in North Carolina law.  And because there is no jurisdiction over this North Carolina university in Pennsylvania, there is no jurisdictional reason, nor compelling policy reason to adjudicate such North Carolina claims here.  The Court should therefore decline to exercise supplemental jurisdiction over, and then dismiss, Suarez's state law claims.

**B.**    ***Suarez's Claim Should Be Dismissed or Transferred for Improper Venue (Rule 12(b)(3), 28 U.S.C. §§1404(a) and 1406(a)).***

For the same reasons that there is no personal jurisdiction over Duke University in this Court, venue here is also improper.  Again, Suarez's claim must be assessed individually.  *See Vizant Techs., LLC*, 97 F. Supp. 3d at 628 (quoting *Calder*, 465 U.S. at 790).  Because Duke does not reside in this district, no part of the events or omissions giving rise to Suarez's claims occurred within this district (or within Pennsylvania generally), and Duke is not subject to personal jurisdiction here, Suarez's claim fails to meet any of the jurisdictional requirements of 28 U.S.C. § 1391.  *See* 28 U.S.C. § 1391(b)(1)-(3).  Venue is therefore improper, and the Third Amended Complaint should be dismissed as a result or, alternatively, transferred to North Carolina, where it should have been filed in the first place.  *See* 28 U.S.C. § 1406 (if venue is improper, a district court "shall dismiss, or if it be in the interest of justice, transfer" the case to "any district or division in which it could have been brought").

Plaintiffs' counsel attempts to avoid the lack of proper venue, first, by improperly joining Suarez with the other Plaintiffs, and second, by improperly joining Duke with the other Defendants, all in violation of Rule 20 of the Federal Rules of Civil Procedure.  Rule 20(a)(1) provides that plaintiffs may join in one action if: (A) "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and (B) "any question of law or fact common to all plaintiffs will arise in the action."  Similarly, Rule 20(a)(2) provides that defendants may be joined in one

action if (A) "any right to relief is asserted *against* them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and (B) "any question of law or fact common to all defendants will arise in the action." As noted by this Court,

> A claim arises from the same transaction or occurrence if a logical relationship exists among the claims asserted. This logical relationship depends on the factual background surrounding the claims. … But in instances where the claims against the defendants involve different facts, joinder is inappropriate. For example, two plaintiffs who alleged that prison officials violated their rights in the same manner and at the same prison could not join in one action because the background facts supporting each claim were different for each plaintiff.

*UN4 Prods., Inc. v. Does 1-15*, 2017 WL 5885779, at *2 (E.D. Pa. Nov. 29, 2017) (holding joinder was inappropriate).

Here, Suarez is the only Plaintiff to have attended Duke University, and Suarez does not claim to have attended any other Defendant university (nor could he). This Court has already held that, on the facts alleged, (i) Plaintiffs lack standing to sue Defendant universities they did not personally attend for alleged violations of the FLSA, and (ii) Defendant universities that Plaintiffs did not personally attend are not Plaintiffs' joint employers. *See Johnson v. Nat'l Collegiate Athletic Ass'n*, 561 F. Supp. 3d 490, 506 (E.D. Pa. 2021) ("[W]e further conclude that the Complaint does not plausibly allege that the [Non-Attending School Defendants ("NASD")] are joint employers of Plaintiffs and, accordingly, that Plaintiffs lack standing to sue the NASD for violations of the FLSA.") (citing *Livers v. National Collegiate Athletic Association*, 2018 WL 2291027 (E.D. Pa. May 17, 2018)). Suarez therefore cannot assert any right to relief jointly or severally with the other Plaintiffs (none of whom attended Duke), and any right to relief may not *be* asserted against Duke jointly and severally. In addition, any alleged right to relief does not arise out of the same transaction or occurrence, or series of transactions or occurrences. Indeed,

no "logical relationship" can exist among Plaintiffs' claims, given that "the background facts supporting each claim [a]re different for each plaintiff." *UN4 Prods., Inc.*, 2017 WL 5885779, at *2. Suarez was thus mis-joined with the other Plaintiffs, and Duke was mis-joined with the other Defendants. *See, e.g.*, *Balkind v. Tri-Pak Dev. Corp.*, 17 Fed. R. Serv. 2d 77 (E.D. Pa. 1973) (finding joinder improper where all of the transactions at issue related to purchases of single-family dwellings by husband and wife, negotiated and consummated by defendants' agents, but involved separate agreements, dates, terms, and purchase prices).

While misjoinder of parties is not typically grounds for dismissing an action, F.R.Civ.P. 21, courts have opted to dismiss entire actions, where the misjoinder is "such a gross abuse of procedure that dismissal under F.R.Civ.P. 41(b) for failure to comply with the federal rules is warranted." *Nassau County Ass'n of Ins. Agents Inc. v. Aetna Life & Cas. Co*., 497 F.2d 1151 (2d Cir. 1974). Here, there is no logical relationship between the various cases asserted against the different Defendant universities. On the contrary, the Third Amended Complaint—like the first and second versions of the Complaint—is a morass of disparate facts involving different universities (with their own unique policies and procedures governing their athletic teams), and different athletic teams at different time periods, with no allegation of concerted action between the Defendants. "[S]everance and dismissal is [thus] the appropriate remedy." *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 148 (S.D.N.Y. 2020), *aff'd in part, appeal dismissed in part sub nom. K.M. v. Adams*, 2022 WL 4352040 (2d Cir. Aug. 31, 2022) (dismissing complaint with prejudice against defendants over which the court had no personal jurisdiction, venue did not lie, and permissive joinder was "grossly inappropriate" based on a lack of logical connection between the alleged facts). The Court could alternatively "drop" Duke from the present action. *See* F.R.Civ. P 21. But the ultimate effect would be the same in that, for the reasons stated above, Suarez's case would

then have to be dismissed for improper venue. The Court should therefore dismiss the Third Amended Complaint against Duke or transfer to North Carolina.

**C.** ***The Third Amended Complaint Fails to State a Claim Against Duke University.***

The NCAA has explained at length why the Third Amended Complaint in its entirety fails to state a claim and, under the principles of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), fails to allege any plausible causes of action within the scope of the standards set by the Third Circuit in this matter. Duke will not repeat these arguments but does adopt them by reference and incorporate them as a basis on which Suarez's claims should be dismissed.

But there are additional grounds unique to Duke which also warrant dismissal of Suarez's FLSA claim. In order to sustain a claim under the FLSA, Suarez would need to allege: (1) he was employed by Duke; (2) his "work involved some kind of interstate activity"; and (3) "the approximate number of hours worked for which [he] did not receive [minimum] wages." *SeYoung Ra v. Gerhard's, Inc.*, 2019 WL 95473, at *4 (E.D. Pa. Jan. 3, 2019) (internal citation omitted).

With respect to the first factor, in its opinion on appeal, the Third Circuit posited a four-part test to determine whether a college athlete may "fall within the meaning of 'employee' as defined in 29 U.S.C. §203(e)(1)": (1) whether the plaintiff "perform[s] services for another party," (2) "necessarily and primarily for the other party's benefit," (3) under that party's "control or right of control," and (4) does so "in return for 'express' or 'implied' compensation or 'in-kind' benefits." 108 F.4th 163 at 180. The court emphasized that "the touchstone remains whether the cumulative circumstances of the relationship between the athlete and college or NCAA reveal an economic reality that is that of an employee-employer." *Id.*

In formulating this test, the majority noted two additional principles: first, "an employment relationship is not created when the tangible and intangible benefits provided to a worker are

greater than a worker's contribution to the employer's operation." *Id.* at 179 (quoting *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528 (2d Cir. 2016)).   Second, "merely playing sports, even at the college level, cannot always be considered commercial *work* integral to the employer's business." *Id.* at 177 (emphasis in original).   As such, the majority believed that there is a "need for an economic realities framework that distinguishes college athletes who 'play' their sports for predominantly recreational or noncommercial reasons from those whose play crosses the legal line into work protected by the FLSA." *Id.* at 182.[3]

Suarez's claim here must fail under any reasonable "economic reality" test, as well as part four of the majority's four-part framework.   The Third Amended Complaint reveals that Suarez was a member of the track-and-field team at Duke.   It does not allege that he was on scholarship, nor could it, given that he was a "walk-on" member of the team.   (ECF No. 196, Ex. A at ¶¶ 16, 19.)   There is no allegation in the Third Amended Complaint that Suarez was required to compete on the track-and-field team, that his participation on the team was a condition of his status as a student, or that the track and field team operates for commercial purposes.   Nor does the Third Amended Complaint contain sufficient plausible allegations that Suarez voluntarily joined the track-and-field team "in return for 'express' or 'implied' compensation or 'in-kind' benefits."   To the contrary, a student who seeks to try out for and is permitted to join an athletic team is not, as a matter of law, performing "work" within the meaning of the FLSA.   Rather, it is "work" within the context of "college athletes who 'play' their sports for predominantly recreational or

---

[3] In so noting, the majority quoted Judge Hamilton's concurrence in *Berger v. NCAA*, which drew a line between "revenue" and "non-revenue" sports, suggesting the former could involve employment, while the latter could not: "I am less confident, however, that our reasoning should extend to students who receive athletic scholarships to participate in so-called revenue sports like Division I men's basketball and FBS football." *Id.* (quoting 843 F.3d 285, 294 (Hamilton, J., concurring)).

noncommercial reasons." 108 F.4th 163 at 182. Suarez, as one such college athlete, thus has not (and cannot) establish that he is an "employee" within the meaning of the FLSA under the tests posited by the Third Circuit in this case.

The Third Amended Complaint contains no facts specific to Suarez that can plausibly establish the contrary. To be sure, the Third Amended Complaint contains numerous generic allegations which are said to apply to all of the Plaintiffs. Most, however, are simply generalized assertions. It is axiomatic that factual allegations "that are 'merely consistent with' a defendant's liability" or that permit no more than "the mere possibility of misconduct" are insufficient. *Iqbal*, 556 U.S. at 679. Rather, as noted by a court in this district, "the plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *TriState HVAC Equipment, LLP v. Big Belly Solar, Inc.*, 836 F. Supp. 2d 274, 280 (2011) (quoting *Iqbal*, 556 U.S. at 678).

Indeed, the few allegations specific to Duke University do nothing to support the "economic reality" test. For example, the Third Amended Complaint references the fact that Duke University's "mission statement" is "over 200 words." (ECF No. 135 at ¶ 50.) After quoting from pieces of the mission statement, however, the Third Amended Complaint complains that the mission statement "never mentions athletics or the responsibility of students to generate revenue for the school." *Id.* While this may be true, it is irrelevant to the question of whether Suarez was a Duke employee under the FLSA, as is Plaintiffs' allegation that Duke lists its Sports Clubs under its Student-Run Group Directory, while its NCAA sports are not listed as "student run." Suarez thus fails to plausibly allege that he was employed by Duke.

Even if Suarez had plausibly alleged that he was employed by Duke (he has not), he notably fails to allege *any* facts supporting the second and third elements of his FLSA claim—*i.e.*, that he

24

was "involved in some kind of interstate activity," and the "approximate number of hours" of his allegedly uncompensated "work." *SeYoung Ra*, 2019 WL 95473, at *4. Dismissal of Suarez's FLSA claim is thus warranted on this independent basis. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 ("plausible" claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Put simply, the Third Amended Complaint fails to allege sufficient facts in support of Suarez's FLSA claim. As such, his claims must be dismissed.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant Duke University respectfully requests that the Court grants its motion to dismiss or to transfer.

This is the 24th day of March, 2025.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ *Kevin J. Mangan*
Kevin J. Mangan (PA I.D. No. 56507)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Email: Kevin.Mangan@wbd-us.com

James P. Cooney III (*pro hac vice*)
301 South College Street, Suite 3500
Charlotte, North Carolina 28202-6037
Telephone: 704-331-4980
Email: Jim.Cooney@wbd-us.com

*Counsel for Defendant Duke University*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing filing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

This 24th day of March, 2025.

*/s/ Kevin J. Mangan*
Kevin J. Mangan (PA I.D. No. 56507)

*Counsel for Defendant Duke University*