# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RALPH "TREY" JOHNSON,**<br>**STEPHANIE KERKELES,**<br>**NICHOLAS LABELLA,**<br>**CLAUDIA RUIZ,**<br>**JACOB WILLEBEEK-LEMAIR,**<br>**ALEXA COOKE,**<br>**RHESA FOSTER,**<br>**ZACHARY HARRIS,**<br>**MATTHEW SCHMIDT,**<br>**TAMARA SCHOEN STATMAN,**<br>**GINA SNYDER,**<br>**ESTEBAN SUAREZ AND**<br>**LIAM WALSH,**<br>**individually and on behalf of all persons**<br>**similarly situated,**<br><br>   **Plaintiffs,**<br><br>**V.**<br><br>**NATIONAL COLLEGIATE ATHLETIC**<br>**ASSOCIATION, a/k/a the NCAA, and the**<br>**following NCAA Division I Member**<br>**Schools as representatives of a Defendant**<br>**Class of all private and semi-public NCAA**<br>**Division i member schools:**<br><br>**CORNELL UNIVERSITY,**<br>**FORDHAM UNIVERSITY,**<br>**LAFAYETTE COLLEGE,**<br>**SACRED HEART UNIVERSITY,**<br>**VILLANOVA UNIVERSITY,**<br>**UNIVERSITY OF OREGON,**<br>**TULANE UNIVERSITY,**<br>**UNIVERSITY OF NOTRE DAME,**<br>**UNIVERSITY OF ARIZONA,**<br>**PURDUE UNIVERSITY,**<br>**DUKE UNIVERSITY, AND**<br>**MARIST COLLEGE,**<br><br>   **Defendants.** | **CASE NO. 2:19-CV-5230 (JP)**<br><br><br>**MEMORANDUM OF LAW**<br>**IN SUPPORT OF DEFENDANT, THE**<br>**ADMINISTRATORS OF THE TULANE**<br>**EDUCATIONAL FUND'S MOTION TO**<br>**DISMISS PURSUANT TO**<br>**RULES 12(B)(2) AND 12(B)(6)** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND AND PROCEDURAL HISTORY .................................................... 3

STANDARD OF REVIEW ............................................................................................. 6

LAW & ARGUMENT ..................................................................................................... 8

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER TULANE ......................... 8

    A.      This Court Lacks Specific Jurisdiction Over Tulane. ................................................. 9

    B.      This Court Lacks General Jurisdiction Over Tulane. ............................................. 12

    C.      Plaintiffs' Joint Employer Allegations Are Insufficient to Confer
        Either General or Specific Personal Jurisdiction ................................................. 16

    D.      Plaintiffs Cannot Maintain A Collective Action Claim Against
        Tulane. ........................................................................................................... 17

II.     ALTERNATIVELY, PLAINTIFFS' CLAIMS SHOULD BE
    DISMISSED PURSUANT TO FEDERAL RULE OF CIVIL
    PROCEDURE 12(B)(6). ..................................................................................... 20

    A.      Plaintiffs' Louisiana Statutory Claim (Count XIII) Must Be
        Dismissed with Prejudice Because It Lacks a Legal Basis. ................................. 20

    B.      The Court Should Dismiss Plaintiffs' Unjust Enrichment Claims
        (Counts III, VI, VIII, X, XII, XIV & XVI) with Prejudice. ................................ 22

CONCLUSION ................................................................................................................. 25

PD.48692349.1

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*E.E.O.C. v. Bass Pro Outdoor World, LLC*,
884 F. Supp. 2d 499 (S.D. Tex. 2012) .......................................................................17

*Bristol-Myers Squibb Co. v. Superior Court of California*,
137 S. Ct. 1773 ...................................................................................................17, 18

*Burger King Corp. v. Rudzewics*,
471 U.S. 464 (1985) ............................................................................................10, 12

*Campanelli v. Image First Unif. Rental Serv., Inc.*,
No. 15–04456, 2016 WL 4729173 (N.D. Cal. Sept. 12, 2016) .............................17

*Chavez v. Dole Food Co., Inc.*,
836 F.3d 205 (3d Cir. 2016).......................................................................................9

*In re Chocolate Confectionary Antitrust Litig.*,
602 F. Supp. 2d 538 (M.D. Pa. 2009) ........................................................................7

*Daimler AG v. Bauman*,
571 U.S. 117 (2014).....................................................................................9, 12, 13

*Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*,
746 F.2d 208 (3d Cir. 1984)................................................................................10, 11

*In re Enter. Rent–A–Car Wage & Hour Emp't Practices Litig.*,
735 F. Supp. 2d 277 (W.D. Pa. 2010)......................................................................16

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*,
566 F.3d 94 (3d Cir. 2009).................................................................................7, 10

*Fischer v. Fed. Express Corp.*,
42 F.4th 366 (3d Cir. 2022) ...............................................................................11, 19

*Flores v. S. Response Servs. Inc.*,
No. 21-04021, 2022 WL 15524680 (W.D. La. Oct. 27, 2022)...........................21, 22, 23, 24

*Gallant v. Trustees of Columbia Univ.*,
111 F. Supp. 2d 638 (E.D. Pa. 2000) .......................................................................14

*Gehling v. St. George's Sch. of Med., Ltd.*,
773 F.2d 539 (3d Cir. 1985)..........................................................................10, 11, 14

*General Elec. Co. v. Deutz AG*,
   270 F.3d 144 (3d Cir. 2001) ................................................................6

*Goodyear Dunlop Tires Ops., S.A.*, 564 U.S. at 915 ..............................9, 13

*Hampton v. McDermott Int'l, Inc.*,
   No. CV 19-0200, 2019 WL 5617025 (W.D. La. Oct. 30, 2019) ........................21

*Heidbrink v. ThinkDirect Mktg. Grp., Inc.*,
   No. 14-1232, 2014 WL 3585698 (M.D. Fla. 2014) ...............................17

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ......................................................................9, 10

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ...........................................................................8

*Isaacs v. Trs. of Dartmouth College*,
   No. 13-5708, 2014 U.S. Dist. LEXIS 118046 (E.D. Pa. Aug. 25, 2014) ..............14

*Johnson v. National Collegiate Athletic Ass'n*,
   108 F.4th 163 (3d Cir. 2024) .........................................................3, 4

*Kendall v. Trs. Of Amherst College*,
   No. 06-4983, 2007 U.S. Dist. LEXIS 4079 (E.D. Pa. Jan. 17, 2007) ...................15

*Kloth v. S. Christian Univ.*,
   230 Fed. App'x 113 (3rd Cir. 2008) .................................................15

*Lehigh Gas Wholesale, LLC v. LAP Petro., LLC*,
   No. 14-5536, 2015 WL 1312213 (E.D. Pa. Mar. 23, 2015) ......................7

*Lionti v. Dipna, Inc.*,
   No. 17-1678, 2017 WL 2779576 (E.D. Pa. June 27, 2017) ......................7

*Maclin v. Reliable Reports of Texas, Inc.*,
   314 F. Supp. 3d 845 (N.D. Ohio 2018) .............................................2

*Martin v. Clemson Univ.*,
   No. 07-536, 2007 U.S. Dist. LEXIS 93703 (E.D. Pa. Dec. 21, 2007) ...................15

*Molock v. Whole Foods Mkt., Inc.*,
   No. 16-2483, 2018 WL 1342470 (D.D.C. Mar. 15, 2018) ......................2

*Montgomery v. Waitr Holdings, Inc.*,
   No. 19-2208, 2019 WL 2233792 (E.D. La. May 23, 2019) .....................24

*Moreau v. Air France*,
   356 F.3d 942 (9th Cir. 2004) .............................................................17

PD.48692349.1

*Nave v. Gulf States Servs. LLC*,
   No. CV 20-546, 2020 WL 4584294 (E.D. La. Aug. 10, 2020) ...............................................23

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
   486 F.3d 312 (3d Cir. 2007) .................................................................................................10

*Omni Capital Int'l v. Rudolph Wolff & Co.*,
   484 U.S. 97 (1987) ...................................................................................................................2

*Patterson by Patterson v. F.B.I.*,
   893 F.2d 595 (3d Cir. 1990) .............................................................................................2, 6, 7

*Perkins v. Benguet Consolidated Mining Co.*,
   342 U.S. 437 (1952) ...............................................................................................................13

*Phillips v. Penske Truck Leasing Co., L.P.*,
   No. 22-1889, 2023 WL 2589221 (E.D. Penn. Mar. 21, 2023) ..............................................19

*Pinker v. Roche Holdings Ltd.*,
   292 F.3d 361 (3d Cir. 2002) .....................................................................................................6

*Reassure Am. Life Ins. Co. v. Midwest Res., Ltd.*,
   721 F. Supp. 2d 346 (E.D. Pa. 2010) ......................................................................................8

*Ruffing v. Wipro Ltd.*,
   529 F. Supp. 3d 359 (E.D. Pa. 2021) ........................................................................7, 18, 19

*United States v. Ruiz*,
   536 U.S. 622 (2002) .................................................................................................................2

*Scherer v. Curators of Univ. of Missouri*,
   152 F. Supp. 2d 1278 (D. Kansas 2001) ...............................................................................15

*Stewart v. First Student, Inc.*,
   639 F. Supp. 3d 492 (E.D. Penn. 2022) .................................................................................19

*Taylor v. S. LA Contractors, LLC*,
   No. 6:22-0217, 2022 WL 16570086 (W.D. La. Sept. 30, 2022) ............................................21

*Thomas v. Wallace, Rush, Schmidt, Inc.*,
   No. 16-572, 2019 WL 1781412 (M.D. La. Apr. 22, 2019) .....................................................24

*UHS of Del., Inc. v. United Health Servs.*,
   No. 12-485, 2015 U.S. Dist. LEXIS 15786 (M.D. Pa. 2015) ...........................................7, 16

*Vogt v. Greenmarine Holding, LLC*,
   No. 1–0311, 2002 WL 534542 (N.D. Ga. Feb. 20, 2002) .....................................................17

PD.48692349.1

*Walden v. Fiore*,
571 U.S. 277 (2014) ................................................................................................9

*Wang v. Xin*,
No. 07-8993, 2008 WL 425571 (E.D. La. Feb. 8, 2008) ("Louisiana does not
have a general minimum wage statute.") ..............................................................20

*Westbrook v. Pike Elec., LLC*,
799 F. Supp. 2d 665 (E.D. La. 2011) ...................................................................23

*Zaveri v. Condor Petrol. Corp.*,
27 F. Supp. 3d 695 (W.D. La. 2014) .....................................................................23

**State Cases**

*Breaux v. Hoffpauir*,
674 So.2d 234 (La. 1996) .....................................................................................21

*Carriere v. Bank of La.*,
702 So.2d 648 (La. 1996) .....................................................................................23

*Doan v. Technical Engineering Consultants, Inc.*,
06-166 (La. App. 5 Cir. 9/26/06), 942 So. 2d 1145 .............................................22

*Hammons v. Ethicon, Inc.*,
2018 Pa. Super. LEXIS 681 (Pa. Super. Ct. June 19, 2018) .................................13

*Ismail v. Volvo Grp. N. Am. Inc.*,
2017 Phila. Ct. Com. Pl. LEXIS 366 (Pa. Com. Pl. Oct. 10, 2017) ......................13

*Monroe v. Physicians Behavioral Hosp., LLC.*,
49,248 (La. App. 2 Cir. 8/13/14), 147 So. 3d 787 ...............................................22

*New Orleans Campaign for a Living Wage v. City of New Orleans*,
825 So.2d 1098 (La. 2002) ...................................................................................21

*New Orleans Firefighters Ass'n v. Civil Serv. Com'n of City of New Orleans*,
422 So. 2d 402 (La. 1982) ....................................................................................21

*Opstinick v. Omni Law Mansion Del Rio*,
2015 Pa. Dist. & Cnty. Dec. LEXIS 9754 (Pa. Com. Pl. Oct. 6, 2015) .................13

*Pine Grove Elec. Supply Co., Inc. v. Cat Key Constr., Inc.*,
88 So.3d 1097 (La. App. 5 Cir. 2012) ..................................................................23

*Russo v. OnPath Federal Credit Union*,
23-537 (La. App. 5 Cir. 5/29/24), 388 So. 3d 1274 (La. App. 5 Cir. 2024) ..........24

*Walters v. MedSouth Rec. Mgmt., LLC,*
   38 So.3d 245 (La. 2010) ...................................................................22

**Federal Statutes**

29 U.S.C. § 216(b) ..........................................................................1, 4, 25

Fed. R. Civ. P. 4(k)(2) ...........................................................................7

Fed. R. Civ. P. 4(k)(1)(A) .....................................................................19

Fed. R. Civ. P. 23 ...........................................................................1, 25

**State Statutes**

La. Civ. Code art. 2298 ..........................................................................22

La. Civ. Code art. 3494 ..........................................................................22

La. Civ. Code art. 3495 ..........................................................................22

La. Stat. Ann. § 23:631, *et seq.* .......................................................1, 20, 22

PD.48692349.1

**NOW INTO COURT**, through undersigned counsel comes The Administrators of the Tulane Educational Fund ("Tulane" or "Defendant"), who respectfully submits this Motion to Dismiss all claims asserted against it pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).[1]

## INTRODUCTION

In their Third Amended Complaint (the "TAC"), Plaintiffs allege, through named Plaintiff Zachary Harris, that Tulane and the NCAA violated the Fair Labor Standards Act (the "FLSA") by jointly failing to pay Tulane's Division I athletes at least minimum wage for all hours they spent playing intercollegiate sports, which Plaintiffs claim constitutes compensable "work."[2] Plaintiffs, again through Harris, also assert alleged violations of Louisiana's "Labor and Worker's Compensation Laws," La. Stat. Ann. § 23:631, *et seq.*, more commonly known as the Louisiana Wage Payment Act (the "LWPA"),[3] and claims for unjust enrichment under Louisiana law.[4] Harris purports to bring those claims on behalf of himself as well as "All individuals, in all NCAA sports and of both genders, who were identified on any NCAA Squad List maintained by [Tulane]," seeking to certify his federal claims as an FLSA collective action and his state law claims as a class action pursuant to Federal Rule of Civil Procedure 23.[5] In addition to the fact that Plaintiffs have failed to state any viable cause of action against Tulane, because the Court lacks personal jurisdiction over this University, Plaintiffs' claims must be dismissed for failure to establish this mandatory jurisdictional prerequisite.

---

[1] Tulane was improperly named as "Tulane University." Tulane appears herein solely for the purpose of supporting the instant motion, and expressly reserves all rights, motions, arguments, defenses, and objections.

[2] *See* Third Amended Complaint; ECF No. 134, at 103–05, ¶¶ 329–38.

[3] *See* Third Amended Complaint; ECF No. 134, at 10, ¶ 9; *id.* 172–73, ¶¶ 675–82 (purporting to allege violations of "Louisiana's Labor and Worker's Compensation Laws").

[4] *See* Third Amended Complaint; ECF No. 134, at 173–74, ¶¶ 683–88 (unjust enrichment claims).

[5] *See* Third Amended Complaint; ECF No. 134, at 139, ¶498 (the "Proposed Louisiana Class" definition); *id.* at 139–145, ¶¶ 499–528 (Rule 23 class allegations); *id.* at 103, ¶328, (the "Proposed FLSA Collective" definition); *id.* at 103–05, ¶¶ 329–38.

A court may exercise either general or specific personal jurisdiction over a defendant. Under general personal jurisdiction, a court may exercise jurisdiction over an entity that is effectively "at home" in the forum state, regardless of whether the entity's conduct within the state gives rise to the cause of action asserted. Comparatively, under specific jurisdiction, a court may exercise personal jurisdiction over an entity, but only if the entity's contact(s) with the state give rise to the plaintiff's specific cause of action. In this case, Tulane's alleged contacts with the state (*e.g.*, advertising, recruiting, playing, and providing the NCAA with funds for broadcasting contracts) are not so significant and systemic as to confer the Court with general jurisdiction over Tulane, nor do any of these alleged contacts give rise to Harris' alleged claims in this case. Indeed, neither ***Harris nor any other Plaintiff ever played football or any other sport for Tulane in Pennsylvania***.[6]

Because this Court lacks personal jurisdiction over Tulane, Tulane now moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2).[7] Moreover, because Harris has failed to state a viable claim for relief under Louisiana law, and in fact purports to assert a cause

---

[6] *See* Declaration of Charvi Greer, attached hereto as **Exhibit 1** (Greer Declaration), at ¶¶ 5-8. *See also* 2018 Football Roster, Zachary Harris – Bio, available at https://tulanegreenwave.com/sports/football/roster/zachary-harris/6035 (last visited Feb. 17, 2025). "[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). Unlike a Rule 12(b)(6) motion, a Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings"; thus, often consideration of such a motion involves assessments of affidavits or other similar evidence submitted by the parties. *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603 (3d Cir. 1990). Tulane submits **Exhibit 1** (Greer Declaration) for purposes of its Rule 12(b)(2) Motion only.

[7] Whether the Court has personal jurisdiction over Tulane with respect to Plaintiffs' FLSA claims must be analyzed pursuant to the Fifth Amendment of the U.S. Constitution, while Plaintiffs' state law-based claims must be analyzed pursuant to the Fourteenth Amendment. *See, e.g.*, *Omni Capital Int'l v. Rudolph Wolff & Co.*, 484 U.S. 97, 102–03 (1987). However, courts have held that because these analyses are functionally identical, they may be undertaken simultaneously. *See, e.g.*, *Molock v. Whole Foods Mkt., Inc.*, No. 16-2483, 2018 WL 1342470 (D.D.C. Mar. 15, 2018); *Maclin v. Reliable Reports of Texas, Inc.*, 314 F. Supp. 3d 845, 850 (N.D. Ohio 2018). This memorandum adopts that framework where appropriate.

2

of action that does not exist under Louisiana law, Tulane also moves for the dismissal of those claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[8]

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Ralph "Trey" Johnson originally filed suit on November 6, 2019 against the NCAA and a host of Universities,[9] later filing the First Amended Complaint (the "FAC") on December 12, 2019, adding Stephanie Kerkeles, Nicholas Labella, Claudia Ruiz, Jacob Willebeek-Lemair, and Alexa Cooke as Named Plaintiffs and various additional University Defendants.[10] On March 9, 2020, the Named Defendants moved to dismiss Plaintiffs' claims, noting that every other court to have considered the issue had concluded student athletes lacked any "employment relationship" with the universities for which they played sports.[11] On August 25, 2021, the Court granted the motion as to the non-attended school Defendants, but otherwise denied the motion.[12]

Thereafter, the U.S. Court of Appeals for the Third Circuit granted interlocutory review of the Court's August 25, 2021 ruling. While the interlocutory appeal was underway, on September 23, 2021, Plaintiffs filed the Second Amended Complaint (the "SAC").[13] The SAC added eight new Plaintiffs, including Plaintiff Harris, naming Tulane as a defendant for the first time.[14] Meanwhile, on July 11, 2024, the Third Circuit issued its interlocutory ruling, "vacat[ing] the District Court's [August 25, 2021] order, remand[ing] for further proceedings in compliance with this opinion, and direct[ing] the District Court to grant leave to amend." *Johnson v. National*

---

[8] Tulane files this Rule 12(b)(6) motion as a supplement to the Motion to Dismiss the Third Amended Complaint filed by the National Collegiate Athletic Association, a/k/a the NCAA, in which Tulane has joined, and which Tulane fully incorporates by reference as if fully restated herein.

[9] *See* Original Complaint; ECF No. 1.

[10] *See* First Amended Complaint; ECF No. 2.

[11] *See* Memorandum in Support of Motion to Dismiss the FAC; ECF No. 25-1.

[12] *See* Order and Reasons on Motion to Dismiss the FAC; ECF No. 55.

[13] *See* Second Amended Complaint; ECF No. 67.

[14] *See Id.*, at 6–7, ¶¶ 25–32.

PD.48692349.1

*Collegiate Athletic Ass'n*, 108 F.4th 163, 182 (3d Cir. 2024).  Accordingly, Plaintiffs filed the active, Third Amended Complaint (the "TAC") on November 4, 2024.[15]

Plaintiffs' TAC suffers from the *same* limitations as Plaintiffs' first three bites at the apple. Once again, "[r]ather than describing their own, individual circumstances, Plaintiffs' [TAC] describes the alleged experiences of student-athletes generally" and "is interspersed with anecdotes about *non-party* student-athletes and *their* schools, but it says little about the individual Plaintiffs and their universities." *Johnson*, 108 F. 4th at 185.  Indeed, Harris' "alleged experiences are even less particularized [than lead Plaintiff, Ralph Johnson]: [his] name[] appear[s] almost solely in paragraphs reciting jurisdictional requisites, class definition, and FLSA collective allegations." *Johnson*, 108 F. 4th at 186. *See also Id.* at 191 n.11 (cautioning that, to satisfy the majority's test, Plaintiffs "would have to offer pleadings as to their own *personal* experiences and circumstances").

According to the TAC, "Harris is an individual residing in New Orleans, Louisiana," who "worked for Defendants as a Student Athlete on Tulane University's NCAA Football Team from 2014 to 2018."[16] The TAC provides *no* additional allegations as to Harris' individual experience at Tulane. The TAC's allegations related to Tulane are even more paltry—Plaintiffs do not even individually identify Tulane in its list of the "Parties." Instead, Plaintiffs merely allege the "NCAA and NCAA D1 member schools" generally "jointly operate the billion dollar Big Business of

---

[15] *See* Third Amended Complaint; ECF No. 134.

[16] *See* Third Amended Complaint; ECF No. 134, at 14, ¶ 29. "Harris's written consent to be a Plaintiff in this action pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit B [ECF No. 134-2, at 5]." *Id.* On his consent form, Harris lists his address as "9 Muirsield Place, New Orleans, LA 70131." *See* ECF No. 134-2, at 5.

NCAA sports" and "jointly employed Plaintiffs."[17] The only allegations specific to Tulane are that

Tulane maintains its principal office at "6823 St[.] Charles Avenue, New Orleans, LA 70118."[18]

Plaintiffs also couch their jurisdictional arguments in similarly generalized terms, alleging:

- The Named Universities "compete against those located in this District in the recruitment of Student Athletes residing in this District, and in NCAA contests held in this District."19

- "The NCAA has entered into multi-year, multi-billion dollar agreements with ESPN, CBS and Turner Sports to broadcast NCAA contests," and "has distributed . . . shares of these broadcasting fees to NCAA D1 member schools."[20]

- The Named Universities "receive shares of fees from multi-year, multi-million dollar agreements entered into jointly as part of an NCAA conference, or individually, with television and radio networks."[21]

- The Named Universities "aim to increase applications from prospective students from this District through promotion of their NCAA sports programs, and through advertisements during broadcasts of NCAA contests into this District."[22]

- Some "post-season and championship segments," not including any Football championship games, have been held in "this [D]istrict."[23]

- The Named Universities "engage in other commercial conduct in this District, including: (i) application pitches to prospective students in this District; (ii) collection of application fees, tuition and room and board from residents of this District; (iii) fundraising appeals to, and collections from, alumni and donors in this District; and (iv) in-store and internet sales of collegiate- and NCAA-licensed products in this District."[24]

---

[17] Third Amended Complaint; ECF No. 134, at 15, ¶ 35. Indeed, including the case caption, "Tulane" appears only *three* times in Plaintiffs' 180-page TAC, *See* Third Amended Complaint; ECF No. 134. at 1 (case caption); 14, ¶ 29 (alleging Plaintiff Harris was a member of "Tulane University's NCAA Football Team from 2014 to 2018); 139, ¶498, n.30 (stating Tulane is the "Louisiana-based Defendant"), the allegations of which "are made based upon" *inter alia*, "NCAA and *Villanova* policies," which Plaintiffs merely allege "are representative of all NCAA D1 member schools." Third Amended Complaint; ECF No. 134, at 10, ¶ 10 (emphasis added).

[18] Specifically, the TAC alleges "NCAA D1 member schools maintain principal offices as identified in Exhibit C." Third Amended Complaint; ECF No. 134, at 15, ¶ 35. With respect to Tulane, Plaintiffs identify only "6823 St[.] Charles Avenue, New Orleans, LA 70118" as Tulane's principal place of business. Exhibit C to the Third Amended Complaint; ECF No. 134-3, at 2.

[19] Third Amended Complaint; ECF No. 134, at 11, ¶ 16.

[20] Third Amended Complaint; ECF No. 134, at 11, ¶ 17.

[21] Third Amended Complaint; ECF No. 134, at 11, ¶ 18.

[22] Third Amended Complaint; ECF No. 134, at 12, ¶ 19.

[23] Third Amended Complaint; ECF No. 134, at 12, ¶ 20.

[24] Third Amended Complaint; ECF No. 134, at 12, ¶ 21.

5

At base, the TAC lumps each of the attended schools together as though they were identical entities through a flimsy assertion of "joint employment." But establishing personal jurisdiction and due process require far more than such basic generalizations. Plaintiffs' lack of particularity is with good reason: *no* Plaintiff, including Harris, ever played sports for Tulane in Pennsylvania;[25] Tulane is not registered to do business in Pennsylvania; owns no real estate in Pennsylvania; and has no campuses in Pennsylvania.[26] It can hardly be said that Tulane is at home in Pennsylvania, and not even Plaintiffs contend they performed any "work" in this forum on Tulane's behalf.[27]

## STANDARD OF REVIEW[28]

When considering a motion to dismiss a complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), a court assumes the truth of all factual allegations in the plaintiff's complaint and draws all inferences in favor of that party. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). However, "A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether *in personam* jurisdiction actually lies." *Patterson v. FBI*, 893 F.2d 595, 603–604 (3d Cir. 1990) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir.1984)). Accordingly, should a defendant challenge a court's exercise of personal jurisdiction through a motion to dismiss for lack of personal jurisdiction supported by affidavits and other evidence, the plaintiff bears the burden of establishing personal jurisdiction. *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir.

---

[25] *See* **Exhibit 1** (Greer Declaration), at ¶¶ 6-8.

[26] *See* Declaration of James Wandling, attached hereto as **Exhibit 2** (Wandling Declaration), at ¶¶ 3-6. Tulane submits **Exhibit 2** (Wandling Declaration) for purposes of its Rule 12(b)(2) Motion only.

[27] Specifically, Plaintiffs allege that "[t]he location of the work of NCAA D1 athletes is therefore dictated by the NCAA and the institution the athlete attends, **and takes place on the property of the member schools**." Third Amended Complaint; ECF No. 134, at 50, ¶ 147 (emphasis added). Having never played sports for Tulane in Pennsylvania, no work was performed in the forum.

[28] So as to not overburden the Court with duplicative filings and restated legal standards, Tulane incorporates the legal standard related to motions filed pursuant to Federal Rule of Civil Procedure 12(b)(6) as stated in the Motion to Dismiss the Third Amended Complaint filed by the NCAA, in which Tulane has joined.

PD.48692349.1

2001); *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). *See also In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009) (explaining that, once the plaintiff's "allegations are contradicted by an opposing affidavit . . . [he or she] must present similar evidence in support of personal jurisdiction"). Thus, "at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction." *Patterson*, 893 F.2d at 603–04. Instead, to bear his burden, "[t]he plaintiff must respond to the defendant's motion with 'actual proofs'; 'affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry.'" *Lionti v. Dipna, Inc.*, No. 17-1678, 2017 WL 2779576 at *1–2 (E.D. Pa. June 27, 2017) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66, n.9 (3d Cir. 1984)). *See also Lehigh Gas Wholesale, LLC v. LAP Petro., LLC*, No. 14-5536, 2015 WL 1312213 at *2 (E.D. Pa. Mar. 23, 2015) ("Plaintiff carries the burden to prove personal jurisdiction using 'affidavits or other competent evidence.'" (quoting *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009))).

Federal courts may assert personal jurisdiction over a nonresident defendant only to the extent authorized by the law of the forum. *See* Fed. R. Civ. P. 4(k)(2). Thus, "service in an action under the FLSA and thus personal jurisdiction . . . can extend no further than the permissible limits of personal jurisdiction of the state where th[e] court sits." *Ruffing v. Wipro Ltd.*, 529 F. Supp. 3d 359, 364 (E.D. Pa. 2021). "The Pennsylvania [L]ong-arm Statute grants jurisdiction coextensive with that permitted by the Due Process Clause of the Fourteenth Amendment, which in turn requires that nonresident defendants 'have certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *UHS of Del., Inc. v. United Health Servs.*, No. 12-485, 2015 U.S. Dist. LEXIS 15786,

PD.48692349.1

*1, *10 (M.D. Pa. 2015) (citing 42. Pa. Cons. Stat. § 5322(b); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be general or specific. General jurisdiction exists when a foreign party maintains "continuous and systematic" contacts with a state such that the entity can be considered "at home" in the foreign jurisdiction and may be sued in that state on any claim, whereas specific jurisdiction exists only when a plaintiff's suit is related to or arises out of a defendant's contacts with the state. *Reassure Am. Life Ins. Co. v. Midwest Res., Ltd.*, 721 F. Supp. 2d 346, 353 (E.D. Pa. 2010) (internal citations omitted).

## LAW & ARGUMENT

Tulane's alleged contacts with the forum are not significant and systemic enough to confer general jurisdiction, and none of Tulane's alleged contacts with the forum give rise to Plaintiffs' claims. Accordingly, this Court lacks personal jurisdiction, general or specific, over Tulane in this matter. The claims against Tulane should be dismissed in their entirety for this reason alone. Plaintiffs' claims fail and should be dismissed for the additional reason that Plaintiffs, and Harris in particular, have not plausibly alleged facts sufficient to state a viable claim for relief under the FLSA or Louisiana law. As a result, Plaintiffs' claims against Tulane should be dismissed for this additional, independent reason.

## I.    THIS COURT LACKS PERSONAL JURISDICTION OVER TULANE

The U.S. Supreme Court set the benchmark for personal jurisdiction in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) wherein it held that a court may exercise jurisdiction over a person or an organization only if that person or entity has sufficient "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This

principle "presaged the development of two categories of personal jurisdiction": general and specific. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014).

General jurisdiction does not require that a lawsuit be related to a defendant's contacts with the forum state and permits a court to hear "any and all claims against" an entity. *Goodyear Dunlop Tires Ops., S.A.*, 564 U.S. 915 at 919 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 317 (1945)). However, to assert general jurisdiction, a defendant's contacts with the forum state must be "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984). Furthermore, "only a limited set of affiliations with a forum will render a defendant amendable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 137. It is "incredibly difficult to establish general jurisdiction [over a corporation] in a forum *other* than the place of incorporation or principal place of business." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016) (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (emphasis added in *Chavez*)).[29] On the other hand, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Ops., S.A.*, 564 U.S. at 919 (internal quotation marks and citation omitted). Thus, unless an entity's contact with the forum is that which gives rise to the plaintiff's claim, specific personal jurisdiction will not lie. *Id.*

### A.    This Court Lacks Specific Jurisdiction Over Tulane.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore,* 571 U.S. 277, 284–85 (2014) (citation omitted). A court may only assert specific

---

[29] *See also* 4 Charles Alan & Wright R. Miller, Federal Practice and Procedure § 1067.5 (3d ed. 2014) ("[T]he threshold contacts required for a constitutional assertion of general jurisdiction over a nonresident defendant are very substantial, indeed.").

jurisdiction if the plaintiff's allegations satisfy a three-part test. First, the defendant must have "purposefully directed [its] activities" at the forum state. *Burger King Corp. v. Rudzewics*, 471 U.S. 464, 472 (1985). Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. *Helicopteros Nacionaltes de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Finally, courts may consider additional factors to ensure that the exercise of jurisdiction otherwise "comport[s] with fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quotation marks omitted). The first two prongs of the test "determine whether a defendant has the requisite minimum contacts in the forum State." *D'Jamoos*, 566 F.3d at 102.

In determining whether the defendant's alleged conduct gives rise to the plaintiff's claim, the court "must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations. The causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 486 F.3d 312, 323 (3d Cir. 2007). "[I]t is the defendant's and not the plaintiff's contacts with the forum that must be evaluated." *Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 214 (3d Cir. 1984). The "unilateral activity of those who claim some relationship with a nonresident defendant" is insufficient. *Hanson*, 357 U.S. at 253. Importantly, contacts with a state's citizens that take place outside of the state are not purposeful contacts with the state itself. *See Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542–43 (3d Cir. 1985).

The U.S. Supreme Court recently clarified the bounds of specific personal jurisdiction in *Bristol-Myers Squibb Co. v. Superior Court of California*, a case in which a group of plaintiffs, mostly out-of-state residents, filed a mass tort suit in a California state court against the defendant pharmaceutical company claiming injuries allegedly caused by one of the defendant's drugs. 582

U.S. 255, 258 (2017). The nonresident plaintiffs, however, did not allege that they received the drug from a California source, did not allege they were injured in California, and they likewise did not allege that they received any treatment for their injuries in California. *Id.*

In rejecting the out-of-state plaintiffs' assertion of personal jurisdiction, the *Bristol-Myers* Court reaffirmed that, for a court to have specific personal jurisdiction over a defendant with respect to a plaintiff's claims, those claims must "arise out of or relate to the defendant's contacts with the forum." *Id.* at 262 (modifications and citations omitted). Because the out-of-state plaintiffs' alleged injuries did not arise out of or relate to Bristol-Myers' *specific contacts* with California, the California state courts lacked specific personal jurisdiction over the company with respect to those claims. *Id.* at 264. The Court also explained that "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 265. "In other words, even if a state court might have personal jurisdiction over similar claims, other potential plaintiffs must still demonstrate personal jurisdiction over the defendant with respect to their own claims." *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 372 (3d Cir. 2022).

In this case, Harris, a Louisiana domiciliary, alleges Tulane, a Louisiana-based entity with its principal place of business located in Louisiana, failed to compensate him for playing football for Tulane. Plaintiffs allege Tulane's contacts with the forum include advertising, recruiting, playing, and broadcasting games as well as accepting donations from Tulane alumni located within the Commonwealth. But Harris does not allege Tulane's activities within the State were the "cause" of his alleged damages (i.e., playing football without compensation). Harris, a New Orleans native, was ***not*** recruited in Pennsylvania and ***never even played football for Tulane in***

*Pennsylvania*.[30]  Indeed, as the TAC alleges, "[t]he location of the work of NCAA D1 athletes . . . takes place on the property of the member schools."[31] Thus, ***by Harris' own admission***, he never performed any work for Tulane in Pennsylvania. As the U.S. Supreme Court's ruling in *Bristol-Meyers* makes clear, just because a non-party may have played sports for Tulane in Pennsylvania "does not allow the State to assert specific jurisdiction over [Harris'] claims." 582 U.S. at 265.

Because "the litigation [did not] result[] from alleged injuries that arise out of or relate to" Tulane's activities within Pennsylvania, Tulane respectfully avers that this Court lacks specific jurisdiction over Tulane. *Burger King*, 471 U.S. at 472.

## B.    This Court Lacks General Jurisdiction Over Tulane.

In 2014 the U.S. Supreme Court issued a landmark decision on general personal jurisdiction in *Daimler AG v. Bauman*. 571 U.S. at 137.  In *Daimler*, the plaintiff asserted claims under both federal and state law in a California federal district court. The Supreme Court held that, except in very narrow circumstances, the Due Process Clause of the Fourteenth Amendment precludes a district court from exercising general personal jurisdiction over a foreign corporation for both federal and state law claims where, as here, the underlying events occurred entirely outside of the forum state.

---

[30] In 2014-2018, the years Harris allegedly played football for Tulane, Tulane did not play any games in Pennsylvania during the 2014, 2016, 2017, and 2018 seasons. *See* Tulane Football, 2014 Football Schedule, *available at*: https://tulanegreenwave.com/sports/football/schedule/2014 (last visited March 17, 2025); Tulane Football, 2016 Football Schedule, *available at*: https://tulanegreenwave.com/sports/football/schedule/2016 (last visited March 17, 2025); Tulane Football, 2017 Football Schedule, *available at*: https://tulanegreenwave.com/sports/football/schedule/2017 (last visited March 17, 2025); Tulane Football, 2018 Football Schedule, available at: https://tulanegreenwave.com/sports/football/schedule/2018 (last visited March 17, 2025). Tulane Football played a single game in Philadelphia, Pennsylvania against Temple on October 10, 2015. See Tulane Football, 2015 Football Schedule, available at: https://tulanegreenwave.com/sports/football/schedule/2015 (last visited March 17, 2025). *See also* **Exhibit 1** (Greer Declaration), at ¶¶ 5. Critically, however, Harris did not play against Temple in 2015. Instead, during the 2015 season, Harris "[p]layed in three games with one start *before missing the remainder of the season* and earning a redshirt." *See* 2018 Football Roster, Zachery Harris – Bio, *available at*: https://tulanegreenwave.com/sports/football/roster/zachery-harris/6035 (last accessed March 17, 2025).  The three games he played in during the 2015 season were against Georgia Tech (9/6), Duke (9/3) and Maine (9/19). *See also* **Exhibit 1** (Greer Declaration), at ¶¶ 8.
[31] Third Amended Complaint; ECF No. 134, at 50, ¶ 147.

12

Specifically, the Court reiterated its 2011 holding in *Goodyear Dunlop Tires Operations, S.A. v. Brown* that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose [general] jurisdiction there." *Id.* at 137; *see also Goodyear*, 564 U.S. 915 at 929. The Court noted that a defendant is only subject to a court's general personal jurisdiction in those states in which it is "at home," which, for a corporation, is the state of incorporation or its principal place of business, unless there are exceptional circumstances, inapplicable to the instant matter, where the corporation's operations are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 & n.19.[32]

Applying *Daimler*, Pennsylvania courts have likewise determined there is "an extremely high bar for a plaintiff who claims personal jurisdiction exists in a state that is neither the place of the corporate defendant's place of incorporation, nor its principal place of business." *Ismail v. Volvo Grp. N. Am. Inc.*, 2017 Phila. Ct. Com. Pl. LEXIS 366, at *8 (Pa. Com. Pl. Oct. 10, 2017) (citing *Daimler*, 571 U.S. at 137-38). *See also Opstinick v. Omni Law Mansion Del Rio*, 2015 Pa. Dist. & Cnty. Dec. LEXIS 9754, at *2 (Pa. Com. Pl. Oct. 6, 2015) (declining to find general jurisdiction over defendant Delaware corporation with a principal place of business in Texas, over lawsuit arising from incident that occurred in Texas); *Hammons v. Ethicon, Inc.*, 2018 Pa. Super. LEXIS 681, at *22 (Pa. Super. Ct. June 19, 2018) (finding that general jurisdiction did not exist over defendant which was neither incorporated in nor held its principal place of business in Pennsylvania). The U.S. Court of Appeals for the Third Circuit's holding in *Gehling v. St. George's School of Medicine, Ltd.* is particularly instructive. 773 F.2d 539 (3d Cir. 1985). In that

---

[32] The sole example of an "exceptional case" cited by the Court was *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952). In *Perkins*, the U.S. Supreme Court considered a case filed in an Ohio state court against a Filipino-based company. At the time the plaintiff filed suit, however, the company had temporarily ceased operations in the Philippines, and the head of the company was instead directing all of the company's activities from Ohio. Although the conduct involved in the lawsuit did not relate to the company's activities in Ohio, the Court found that Ohio could nevertheless be considered the company's "surrogate for the place of incorporation or head office." *See Daimler*, 571 U.S. at 130 n.8. The Court's holding in *Perkins* is plainly inapplicable here.

case, the plaintiffs brought a wrongful death action "after their son, a [Pennsylvania resident] student at St. George's, died after running in a school-sponsored road race in Grenada." *Id.* at 540.

In arguing that the court there had general personal jurisdiction over the out of state defendant, the plaintiffs pointed to the fact that: (1) the university placed advertisements in publications circulated throughout Pennsylvania; (2) six percent of the university's students matriculated from Pennsylvania; (3) the university accepted hundreds of thousands of dollars in tuition from Pennsylvania residents; (4) specifically advertised its medical school with the express purpose of gaining exposure in Pennsylvania; and (5) the university had established a joint international program with a Pennsylvania based college. *Id.* at 541–42.

The Third Circuit rejected the plaintiff's argument, holding that the university "lacked the continuous and substantial business relationship with Pennsylvania to support personal jurisdiction over it." *Id.* at 543. As the Third Circuit explained, "[a]dvanced educational institutions typically draw their student body from numerous states, and [plaintiffs'] theory would subject them to suit on non-forum related claims in every state where a member of the student body resides." *Id.* at 542. Indeed, *de minimis* contacts that any national university may have with Pennsylvania, such as the recruiting of athletes living in the state, granting access to its website from Pennsylvania, and admitting and enrolling students from Pennsylvania, "are inadequate to establish general personal jurisdiction." *Isaacs v. Trs. of Dartmouth College*, No. 13-5708, 2014 U.S. Dist. LEXIS 118046, at *30 (E.D. Pa. Aug. 25, 2014) (finding it lacked personal jurisdiction over Dartmouth College). Several other Pennsylvania courts are in accord. *See, e.g.*, *Isaacs*, 2014 U.S. Dist. LEXIS 118046 (finding it lacked personal jurisdiction over Dartmouth College); *Gallant v. Trustees of Columbia Univ.*, 111 F. Supp. 2d 638, 641 (E.D. Pa. 2000) ("While the plaintiff here has presented more contacts than those considered by the Third Circuit in *Gehling*, none of these additional

contacts demonstrate that Columbia has purposefully directed its activities to, or availed itself of, Pennsylvania. Rather these contacts are the result of Columbia's general participation in the *type of interstate activity in which any nationally prominent educational institution would engage.*" (emphasis added)); *Kloth v. S. Christian Univ.,* 230 Fed. App'x 113, 117 (3rd Cir. 2008) (holding that university located in Alabama was not subject to general jurisdiction despite its "maintenance of a Web site that posts information about the school and is accessible to potential students in foreign jurisdictions); *Martin v. Clemson Univ.,* No. 07-536, 2007 U.S. Dist. LEXIS 93703, at *16 (E.D. Pa. Dec. 21, 2007) ("[Plaintiff] has alleged and submitted evidence indicating Clemson's 1) enrollment and recruitment of students from Pennsylvania, including student-athletes; 2) participation in athletic, education, and professional events in Pennsylvania; 3) solicitation of donations from Pennsylvania residents; and 4) recruitment of faculty from Pennsylvania as part of national searches. Under *Gehling,* these activities do not indicate that Clemson has purposefully availed itself of Pennsylvania laws and protections.") *Kendall v. Trs. Of Amherst College,* No. 06-4983, 2007 U.S. Dist. LEXIS 4079, at *16 (E.D. Pa. Jan. 17, 2007) (holding that Amherst College is not subject to general jurisdiction in Pennsylvania despite the fact that it "recruits students from Pennsylvania and obtains payment of tuition from those students; those tuition payments are paid into a bank account in Pennsylvania. In addition, [Amherst] solicits donations from alumni in Pennsylvania through correspondence originating in Massachusetts and through Pennsylvania resident 'associate agents.'"); *see also Scherer v. Curators of Univ. of Missouri*, 152 F. Supp. 2d 1278, 1282 (D. Kansas 2001) ("[P]laintiff has directed the court to no case in which a university from a nonforum state has been held subject to the general jurisdiction of a forum state and, in fact, every case which the court has uncovered holds directly to the contrary.").

In this case, the types of general contacts Plaintiffs allege Tulane has with the forum are the exact types of contacts Pennsylvania courts have ***repeatedly*** held fall far short of establishing general jurisdiction within Pennsylvania. Because Tulane's alleged "contacts [with Pennsylvania] are the result of [Tulane's] general participation in the type of interstate activity in which any nationally prominent educational institution would engage," this Court lacks general personal jurisdiction over Tulane in this case.

Tulane's contacts with Pennsylvania do not give rise to the "exceptional case" making it subject to general jurisdiction in a state in which it is not incorporated, does not have a campus, owns no real estate, and in no way represents the University's home.[33] Finding general jurisdiction under such circumstances is untenable and fails to comport with the "'traditional notions of fair play and substantial justice.'" *UHS of Del., Inc. v. United Health Servs.*, No. 12-485, 2015 U.S. Dist. LEXIS 15786, *1, *10 (M.D. Pa. 2015) (citing 42. Pa. Cons. Stat. § 5322(b); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### C.    Plaintiffs' Joint Employer Allegations Are Insufficient to Confer Either General or Specific Personal Jurisdiction

In opposition to Tulane's motion, Plaintiffs might attempt to argue that because the Court has personal jurisdiction over the NCAA, and Plaintiffs allege Tulane and the NCAA were their joint employers, the NCAA's contacts with the forum should be attributed to Tulane. This theory of jurisdiction is not to persuade the Court. As the Third Circuit has previously held, "single employer" or "joint employer" theories "and similar concepts are relevant for determining liability, but are not for determining whether a court may exercise personal jurisdiction over a party." *In re Enter. Rent–A–Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 328 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012). *See also Moreau v. Air France*, 356 F.3d 942, 944 (9th

---

[33] *See* **Exhibit 2** (Wandling Declaration), at ¶¶ 3-6.

Cir. 2004) (stating joint employment does not determine personal jurisdiction); *Campanelli v. Image First Unif. Rental Serv., Inc.*, No. 15–04456, 2016 WL 4729173, at *7 (N.D. Cal. Sept. 12, 2016) ("[B]asing personal jurisdiction on joint employer status . . . appears to be the minority view. . . . Even if [defendant] were liable under a 'joint employer' theory, this does not establish that a separate, non-resident corporate entity without minimum contacts can be hailed into a California court."); *Heidbrink v. ThinkDirect Mktg. Grp., Inc.*, No. 14-1232, 2014 WL 3585698 at *4 (M.D. Fla. 2014) ("A joint employer theory is relevant to establish liability against a defendant under the FLSA; it is not relevant to establish specific jurisdiction."); *Vogt v. Greenmarine Holding, LLC*, No. 1–0311, 2002 WL 534542, at *3 (N.D. Ga. Feb. 20, 2002) ("Plaintiffs argue that the proper test for personal jurisdiction is whether OMC and Defendants constitute a 'single employer' so as to be liable under [a statute]. The court finds, however, that it is improper to conflate an issue of subject matter jurisdiction with personal jurisdiction. Liability and jurisdiction are two separate inquiries."). That's because, "The integrated enterprise theory . . . is a liability standard . . . not a jurisdictional standard." *E.E.O.C. v. Bass Pro Outdoor World, LLC*, 884 F. Supp. 2d 499, 525–26 (S.D. Tex. 2012). Thus, even assuming the NCAA and Tulane may be considered joint employers under the FLSA—a finding that binding precedent precludes—such a finding cannot form the basis for asserting personal jurisdiction over Tulane.

### D.    Plaintiffs Cannot Maintain A Collective Action Claim Against Tulane.

In *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, the U.S. Supreme Court held that the Due Process Clause of the Fourteenth Amendment prohibited California from exercising specific personal jurisdiction over the defendants with respect to the nonresident plaintiffs' claims, inasmuch as there was no connection between the forum and the claims at issue. *Id.* at 1783–84. The Supreme Court made clear, however, that its decision only concerned "the due process limits on the exercise of specific jurisdiction by a State," thus leaving

"open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* Additionally, the Court did not "confront the question whether its opinion . . . would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Id.* at 1789 n.4 (Sotomayor, J., dissenting).

This district, as well as the Third Circuit, has definitively concluded that ***every*** opt-in plaintiff ***must*** individually establish personal jurisdiction over the defendant to bring their claims. For example, in *Weirbach v. Cellular Connection, LLC*, Judge Wolson concluded that *Bristol-Myers* applied equally to collective action claims arising under the FLSA. 478 F. Supp. 3d 544, 551–52 (E.D. Pa. 2020). Four months later, Judge Gallagher in *Fischer v. Federal Express Corp.*, held that *Bristol-Myers* was applicable to FLSA collective actions, dismissing those claims asserted by out-of-state class members with no relation to the forum. 509 F. Supp. 3d 275, 286–89 (E.D. Pa. 2020). Similarly, in *Ruffing v. Wipro Limited*, Judge Bartle agreed with Judges Wolson and Gallagher, holding that there was "no reason why the due process analysis in *Bristol-Myers Squibb* for personal jurisdiction should not apply to the FLSA," and noting that the same due process concerns presented in *Bristol-Myers* were also present in cases arising under the FLSA. 529 F. Supp. 3d 359, 368 (E.D. Pa. 2021). As the *Ruffing* court explained,

> [T]he FLSA does not include any provision for nationwide service of process unlike, for example, the Clayton Act. As the district [for the Eastern District of Pennsylvania] noted in *Weirbach v. Cellular Connection, LLC*, "Congress did not intend to subject employers to nationwide collection actions wherever they had employees" as it had provided under other statutes. In light of the due process limitations on personal jurisdiction set forth in *Daimler* and subsequently in *Bristol-Myers Squibb*, we agree with *Weirbach* that due process prohibits the exercise of specific personal jurisdiction over defendant to resolve claims of its employees who suffered harm outside of Pennsylvania.

*Id.* (citing *Weirbach*, 478 F. Supp. 3d at 551–52).

PD.48692349.1

In 2022, following the rulings in *Ruffing*, *Fischer*, and *Weirbach*, the Third Circuit definitively held that "where the basis of personal jurisdiction in an FLSA collective action in federal court is specific personal jurisdiction established by serving process according to FRCP 4(k)(1)(A), ***every*** plaintiff who seeks to opt in to the suit must demonstrate his or her claim arises out of or relates to the defendant's minimum contacts with the forum state." *Fischer v. Fed. Express Corp.*, 42 F. 4th 366, 370–71 (3d Cir. 2022) (emphasis added). As the Third Circuit explained, "the statutory text of the FLSA collective action device, particularly as compared to . . . [the] rule at issue in *Bristol-Myers*, the FLSA's legislative history, and the weight of caselaw, demonstrate that FLSA suits should be treated as ordinary *in personam* suits for purposes of personal jurisdiction." *Id.*

This Court has since applied the Third Circuit's holding in *Fischer* on multiple occasions. *See, e.g.*, *Phillips v. Penske Truck Leasing Co., L.P.*, No. 22-1889, 2023 WL 2589221, at *1 (E.D. Penn. Mar. 21, 2023) ([I]n mid-2022, the Third Circuit held that opt-in plaintiffs in FLSA collective actions must satisfy the personal jurisdiction requirements of the Fourteenth Amendment to join the suit."); *Stewart v. First Student, Inc.*, 639 F. Supp. 3d 492, 498 (E.D. Penn. 2022) ("FLSA opt-in plaintiffs must now satisfy personal jurisdiction requirements as if each were bringing their own claim."). The outcome here commands the same result. In this case, *not one single plaintiff* can satisfy these constitutionally established requirements for establishing personal jurisdiction. Being that Plaintiffs cannot bring their claims against Tulane in their own right, Plaintiffs certainly cannot bring them on behalf of a collective class.

This Court lacks personal jurisdiction over Tulane, and Plaintiffs' *ipse dixit* assertion of joint employment, even accepting this unsupported legal conclusion as true, does not result in a different outcome. No Plaintiff, including the *only* Plaintiff who attended Tulane, even alleges that

Tulane's contact with Pennsylvania give rises to their claims. By Plaintiffs' own definition, *no* Plaintiff performed *any* work for Tulane in Pennsylvania. Accordingly, each of the claims Plaintiffs bring against Tulane—both under the FLSA and Louisiana law—must be dismissed in their entirety.[34]

## II. ALTERNATIVELY, PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6).

In the alternative, should this Court conclude that it has personal jurisdiction over Tulane, which it should not, Tulane respectfully submits that Plaintiffs have failed to state any viable claim for relief against this University.[35] In addition to their FLSA claims, Plaintiffs, again through Harris, allege violations of Louisiana law based on the ***exact same*** factual predicates giving rise to their FLSA claims. Specifically, Plaintiffs allege Tulane violated the LWPA (referring to this statutory scheme as the "LLWCL") and that Tulane was unjustly enriched for its supposed failure to pay Plaintiffs generally and Harris in particular at least minimum wage for the time he spent playing sports. Both claims fail as a matter of law and should be dismissed, *with prejudice*.

### A. Plaintiffs' Louisiana Statutory Claim (Count XIII) Must Be Dismissed with Prejudice Because It Lacks a Legal Basis.

Harris's claim under "the Minimum Wage provisions of the LLWCL" fails for the simple reason that Louisiana does not have a minimum-wage law. *See Wang v. Xin*, No. 07-8993, 2008 WL 425571, at *3 (E.D. La. Feb. 8, 2008) ("Louisiana does not have a general minimum wage statute."); *Taylor v. S. LA Contractors, LLC*, No. 6:22-0217, 2022 WL 16570086, at *5 (W.D. La. Sept. 30, 2022) (noting that Louisiana's separate wage-payment law "does not establish a

---

[34] Tulane specifically maintains and does not waive any argument, motion, or defense as to the timeliness of Harris' claims for purportedly unpaid "wages" under the FLSA.

[35] With respect to Plaintiffs' FLSA claims, Tulane fully incorporates the Rule 12(b)(6) Motion filed by the NCAA herein by reference as if fully restated and moves under Rule 12(b)(6) for the dismissal of Plaintiffs' claims arising under Louisiana law as a supplement to that Motion.

minimum wage or overtime protection"), *report and recommendation adopted*, No. 22-0217, 2022 WL 16558732 (W.D. La. Oct. 31, 2022). Accordingly, there is nothing under Louisiana law for Plaintiffs to "enforce." In fact, Louisiana law "*prohibits* local governmental subdivisions from establishing a minimum wage rate which a private employer would be required to pay employees." *New Orleans Campaign for a Living Wage v. City of New Orleans*, 825 So.2d 1098, 1100 (La. 2002) (citing La. Stat. § 23:642) (emphasis added). Instead, Louisiana has chosen to rely exclusively on federal minimum-wage laws—*i.e.*, the FLSA—to guarantee a statewide minimum wage. *See, e.g.*, *New Orleans Firefighters Ass'n v. Civil Serv. Com'n of City of New Orleans*, 422 So. 2d 402, 412 (La. 1982); *see also id.* (explaining that "there is no difference in principle between our statutes and the federal minimum wage and working condition laws"); *cf. Breaux v. Hoffpauir*, 674 So.2d 234, 237 (La. 1996) (calculating the minimum amount of benefits due under Louisiana workers' compensation law "using the federal minimum wage" under the FLSA). Because Count XIII claims to enforce "Minimum Wage provisions in the LLWCL,"[36] and those provisions do not exist, Count XIII should be dismissed, with prejudice, as further amendment would be futile.

To the extent Plaintiffs' position is simply that Louisiana law gives Plaintiffs another vehicle to enforce the minimum-wage guarantees of the FLSA, Louisiana courts disagree. "[W]here the FLSA applies, the [Louisiana Wage Payment Act ("LWPA")] cannot be used to pursue a claim of legal entitlement to wages." *Flores v. S. Response Servs. Inc.*, No. 21-04021, 2022 WL 15524680, at *3 (W.D. La. Oct. 27, 2022); *see also Hampton v. McDermott Int'l, Inc.*, No. CV 19-0200, 2019 WL 5617025, at *4 (W.D. La. Oct. 30, 2019). Instead, "[w]hen a plaintiff presents claims … under both statutes, the FLSA claim preempts state law for employees engaged

---

[36] Third Amended Complaint; ECF No. 134, ¶ 676.

in interstate commerce," and claims under Louisiana state law must be dismissed "with prejudice." *Flores*, 2022 WL 15524680, at \*3, \*5.

In sum, Plaintiffs' Louisiana claims lack a legal basis and should be dismissed *with prejudice*.[37]

### B.    The Court Should Dismiss Plaintiffs' Unjust Enrichment Claims (Counts III, VI, VIII, X, XII, XIV & XVI) with Prejudice.

Plaintiffs' unjust enrichment claims should also be dismissed with prejudice because Plaintiffs asserted FLSA claims preclude any claim for unjust enrichment as a matter of law. Unjust enrichment is an equitable remedy that exists *only* when an adequate remedy at law—including a statutory remedy—is unavailable. *See, e.g.*, *Walters v. MedSouth Rec. Mgmt., LLC*, 38 So.3d 245, 246 (La. 2010) (citing La. Civ. Code art. 2298).

The Louisiana Civil Code provides: "A person who has been enriched without cause at the expense of another person is bound to compensate that person." La. Civ. Code art. 2298. The same article also emphasizes, however, that the remedy is subsidiary "and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." *Id.* Accordingly, a plaintiff must show the following to support a claim for unjust enrichment: (1) an enrichment to the defendant; (2) an impoverishment to the plaintiff; (3) a connection between the two; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) **the unavailability of any other remedy at law**. *Carriere v. Bank of La.*, 702 So.2d 648, 658 (La. 1996).

---

[37] Tulane specifically maintains and does not waive any argument, motion, or defense as to the timeliness of Harris' claims for purportedly unpaid "wages" under the Louisiana Wage Payment Act, La. R.S. 23:631, *et seq*. A three-year prescriptive period applies to unpaid wages claims. *See* La. Civ. Code art. 3494; *see also Monroe v. Physicians Behavioral Hosp., LLC.*, 49,248 (La. App. 2 Cir. 8/13/14), 147 So. 3d 787, 792-94; *Doan v. Technical Engineering Consultants, Inc.*, 06-166 (La. App. 5 Cir. 9/26/06), 942 So. 2d 1145, 1146. This prescriptive period commences to run from the day payment is exigible. La. Civ. Code art. 3495. Payment is exigible at the time the wages are earned and payment is due. *See Monroe*, 147 So. 3d at 795.

"On the fifth element, it is the existence of another cause of action – rather than its likelihood of success or failure – that defines the availability of the remedy." *Flores*, 2022 WL 15524680, at \*4. Thus, "whether [a] plaintiff succeeds or not with respect to his other claims is immaterial. The mere fact that there are alternative remedies available precludes a claim for unjust enrichment." *Westbrook v. Pike Elec., LLC*, 799 F. Supp. 2d 665, 672 (E.D. La. 2011) (citing *Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 243, 244 (La. 2010) (concluding that, because plaintiff there had pleaded a delictual action, plaintiff was "precluded from seeking to recover under unjust enrichment"). *See also Pine Grove Elec. Supply Co., Inc. v. Cat Key Constr., Inc.*, 88 So.3d 1097, 1101 (La. App. 5 Cir. 2012) ("The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff a right to recover under the theory of unjust enrichment."); *Nave v. Gulf States Servs. LLC*, No. CV 20-546, 2020 WL 4584294, at \*2 (E.D. La. Aug. 10, 2020) (noting that "whether plaintiff succeeds or not with respect to his other claims [at law] is immaterial" to whether the equitable remedy of unjust enrichment claim is precluded); *Zaveri v. Condor Petrol. Corp.*, 27 F. Supp. 3d 695, 702 (W.D. La. 2014) ("It is not the success or failure of other causes of action, but rather the *existence* of other causes of action, that determine whether unjust enrichment can be applied." (quoting *Garber v. Badon & Ranier*, 981 So. 2d 92, 100 (La. Ct. App. 2008)) (emphasis added)); *see also Flores*, 2022 WL 15524680, at \*4 ("Here plaintiffs have other remedies available [under the FLSA], as raised in their complaint, for all the wrongs allegedly committed by defendants. Accordingly, the claim for unjust enrichment will be dismissed."); *id.* at \*5 (dismissing the unjust-enrichment claims with prejudice). Put simply, it is not necessary for Tulane to first establish that Plaintiffs' remedies under the FLSA are "adequate" under the law for the FLSA to preclude Plaintiffs' unjust enrichment claims. Instead, it is the *sheer existence* of such remedies in the FLSA that preclude

23

Plaintiffs' unjust enrichment claims as a matter of law. *Flores v. S. Response Servs. Inc.*, No. 21-04021, 2022 WL 15524680, at *4 (W.D. La. Oct. 27, 2022) ("Here plaintiffs have other remedies available, as raised in their complaint, for all the wrongs allegedly committed by defendants. Accordingly, the claim for unjust enrichment will be dismissed."). *See also Montgomery v. Waitr Holdings, Inc.*, No. 19-2208, 2019 WL 2233792, at *2 (E.D. La. May 23, 2019) ("Plaintiffs' claim that Waitr did not adequately compensate them given the costs associated with their vehicles is cognizable under the FLSA. Because the law provides another remedy, Plaintiffs cannot, as a matter of law, plead a plausible claim for unjust enrichment."); *Thomas v. Wallace, Rush, Schmidt, Inc.*, No. 16-572, 2019 WL 1781412, at *4 (M.D. La. Apr. 22, 2019) (dismissing unjust enrichment claim because the FLSA provided plaintiff another remedy); *Russo v. OnPath Federal Credit Union*, 23-537 (La. App. 5 Cir. 5/29/24), 388 So. 3d 1274 (La. App. 5 Cir. 2024) (concluding that, because "[o]ther adequate legal remedies are available in this case, and therefore the trial court was correct to deny plaintiffs' claims for unjust enrichment").

The TAC makes clear that Plaintiffs' unjust enrichment claims seek to recover for the same purported injury as their FLSA claims—Defendants' alleged failure to pay minimum wages at the rate the FLSA establishes. Like the generalized jurisdictional arguments, each "count" of unjust enrichment Plaintiffs assert recites a substantively interchangeable claim arising exclusively from the supposed benefit "[t]he NCAA and the [relevant state]-based Defendant[s] received . . . from the uncompensated labors of [the relevant] Plaintiffs,"[38] by allegedly inducing Plaintiffs "to perform work while failing to properly compensate them for all hours worked as required by law."[39] Of course, the relevant "law" that allegedly "required" Tulane and its co-Defendants to "compensate" Plaintiffs for their participation in Division I athletics *is the FLSA*. As such, it is

---

[38] Third Amended Complaint; ECF No. 134, at ¶¶ 608, 628, 642, 656, 670, 684, 698 & 712.
[39] Third Amended Complaint; ECF No. 134, at ¶¶ 610, 631, 644, 658, 672, 686, 700 & 714.

PD.48692349.1

inescapable that Plaintiffs' Louisiana unjust-enrichment claims seek recovery for the same alleged injury as their claims arising under the FLSA. This inescapable duplicity is fatal to their claims.

In sum, because Plaintiffs have an adequate remedy at law, their unjust enrichment claims, including the Rule 23 class claims premised upon such an alleged violation, should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Tulane respectfully requests that the Court grant its motion to dismiss all claims as to Tulane asserted in Plaintiffs' Third Amended Complaint pursuant to Rule 12(b)(2) and 12(b)(6).

DATED: March 24, 2025

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:    */s/ Rebecca Sha*

REBECCA SHA (#35317) (*pro hac vice*)
STEPHANIE M. POUCHER (#37263) (*pro hac vice*)
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
Email: rebecca.sha@phelps.com
        stephanie.poucher@phelps.com

**AND**

**BUCHANAN INGERSOLL & ROONEY PC**

BY:    */s/ John L. Lamb*

JOHN L. LAMB, ESQ. (PA I.D. 324291)
JOSEPH J. CENTENO, ESQ. (PA I.D. 70902)
Two Liberty Place
50 South 16th Street, Suite 3200
Philadelphia, PA 19102-2555
Telephone:  (215) 665-8700
Email: John.lamb@bipc.com
            Joseph.centeno@bipc.com

**ATTORNEYS FOR DEFENDANT, THE
ADMINISTRATORS OF THE TULANE
EDUCATIONAL FUND**

26