## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

RALPH "TREY" JOHNSON,
STEPHANIE KERKELES,
NICHOLAS LABELLA,
CLAUDIA RUIZ,
JACOB WILLEBEEK-LEMAIR,
ALEXA COOKE,
RHESA FOSTER,
ZACHARY HARRIS,
MATTHEW SCHMIDT,
TAMARA SCHOEN STATMAN,
GINA SNYDER,
ESTEBAN SUAREZ and
LIAM WALSH,
individually and on behalf of all persons
similarly situated,

          Plaintiffs,

v.

THE NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION, a/k/a the NCAA, and the
following NCAA Division I Member Schools
as representatives of a Defendant Class of
all private and semi-public NCAA Division I
Member Schools:

CORNELL UNIVERSITY,
FORDHAM UNIVERSITY,
LAFAYETTE COLLEGE,
SACRED HEART UNIVERSITY,
VILLANOVA UNIVERSITY,
UNIVERSITY OF OREGON,
TULANE UNIVERSITY,
UNIVERSITY OF NOTRE DAME,
UNIVERSITY OF ARIZONA,
PURDUE UNIVERSITY,
DUKE UNIVERSITY and
MARIST COLLEGE.

Civil Action No. 19-cv-5230 (JP)

1

Defendants.

**MEMORANDUM OF LAW IN SUPPORT FOR DEFENDANTS PURDUE UNIVERSITY AND UNIVERSITY OF OREGON'S JOINT MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)**

Trenten D. Klingerman
William P. Kealey
Kirstie E. Klutzke
STUART & BRANIGIN LLP
300 Main Street,
Lafayette, IN 47901
(765) 465-1561
Email: wpk@stuartlaw.com
          tdk@stuartlaw.com
*Attorneys for Defendants*
*Purdue University and*
*University of Oregon*

# TABLE OF CONTENTS

I.     Introduction ........................................................................................ 1

II.    Summary of Claims ........................................................................... 2

III.   Argument ............................................................................................ 3

   A. Plaintiffs' claims against Purdue University and University of
      Oregon must be dismissed for lack of subject-matter jurisdiction
      pursuant to Rule 12(b)(1). ............................................................... 3

      1. Purdue University is an instrumentality of the State of Indiana
         and is entitled to Eleventh Amendment immunity. ........................... 5

      2. University of Oregon is an instrumentality of the State of Oregon
         and is entitled to Eleventh Amendment immunity. .......................... 10

   B. Purdue University and University of Oregon's immunity as to claims
      under the Fair Labor and Standards Act has not been waived or
      abrogated. ........................................................................................ 15

   C. The Rule 23 class action claims are improperly brought and must be
      dismissed. ........................................................................................ 17

      1. FLSA collective actions under 29 U.S.C. § 216(b) cannot be brought
         in the same lawsuit as a Rule 23 class action. .................................. 17

      2. The Rule 23 class action claims must be dismissed because
         University of Oregon and Purdue University are primary
         defendants under 28 U.S.C. § 1332(d)(5)(A). ................................... 19

IV.    Conclusion ......................................................................................... 20

# TABLE OF AUTHORITIES

## Constitutional Provisions

USCS Const. Amend. 11 ....................................................................................... 3

## Federal Cases

*Alden v. Me.*, 527 U.S. 706 (1999) ....................................................................... 16

*Bowers v. NCAA*, 475 F.3d 524 (3d Cir. 2007) ................................................... 4

*College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666
    (1999) ........................................................................................... 15, 16, 17

*Edelman v. Jordan*, 415 U.S. 651 (1974) ............................................................ 17

*Edelman v. Jordan*, 451 U.S. 651 (1974) .............................................................. 3

*Ex parte Young*, 209 U.S. 123 (1908) ................................................................. 16

*Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.3d 655 (3d Cir. 1989) . 4, 5

*Harvey v. Blockbuster, Inc.*, 384 F. Sipp. 2d 749 (D.N.J. 2005). ....................... 20

*Hedges v. Musco*, 204 F.3d 109 (3d Cir. 2000) ................................................... 18

*Kashani v. Purdue Univ.*, 813 F.2d 843 (7th Cir. 1987) ................................... 7, 8

*Maliandi v. Montclair State Univ.*, 845 F.3d 77 (3rd Cir. 2016) ..................... 4, 15

*Marie O. v. Edgar*, 131 F.3d 610 (7th Cir. 1997) ............................................... 16

*Markowitz v. Northeast Land Co.*, 906 F.2d 100 (3d Cir. 1990) ........................ 18

*Nunez v. Ind. Dep't of Child Servs.*, 817 F.3d 1042 (7th Cir. 2016) .................. 17

*Quillin v. State of Oregon*, 127 F.3d 1136 (9th Cir. 1997) ................................ 17

*Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425 (1997) ................................... 3

*Rounds v. Oregon State Bd. Of Higher Educ.*, 166 F.3d 1032 (9th Cir. 1999) ......... 12

*Vodenichar v. Halcón Energy Props.*, 733 F.3d 497 (3rd Cir. 2013) .......................... 20

*Warner v. Orleans Home Builders, Inc.* ....................................................... 19

## State Cases

*Chang v. Purdue Univ.*, 985 N.E.2d 35 (Ind. Ct. App. 2013) ...................................... 8

*Lowe v. N. Ind. Commuter Transp. Dist.*, 177 N.E.3d 796 (Ind. 2021) ....................... 7

*Montgomery v. Bd. Of Trs.*, 849 N.E.2d 1120 (Ind. 2006) ............................................ 7

*Russell v. Trs. of Purdue Univ.*, 201 Ind. 367 (Ind. 1929) ................................... 6, 7, 8

*Russell v. Trustees of Purdue University*, 201 Ind. 367 (Ind. 1929) ............................ 6

## Federal Statutes

28 U.S.C. § 1367 ...................................................................................................... 18

29 U.S.C. § 216(b) ............................................................................................... 2, 19

29 U.S.C. §§ 201 *et seq* ........................................................................................... 2

## Indiana Statutes

Ind. Code § 16-39-11-4.5 ......................................................................................... 8

Ind. Code § 21-18-16-6 .......................................................................................... 10

Ind. Code § 21-18-9 .................................................................................................. 9

Ind. Code § 21-23-3-2 .............................................................................................. 9

Ind. Code § 21-23-3-7 .............................................................................................. 9

Ind. Code § 21-23-3-8 .............................................................................................. 9

Ind. Code § 21-23-4-2 ............................................................................................ 10

Ind. Code § 21-27-7-5 ............................................................................................ 10

Ind. Code § 21-30-2-7 .............................................................................................. 6

Ind. Code § 21-36-3-3 ................................................................................. 8

Ind. Code § 21-38-2-1 ................................................................................. 9

Ind. Code § 21-7-13-32 ............................................................................... 8

Ind. Code § 21-7-15-2 ................................................................................. 6

Ind. Code § 2-2.2-1-19 ................................................................................ 8

Ind. Code § 22-6-6-7 ................................................................................... 8

Ind. Code § 34-13-3 *et seq.* ........................................................................ 8

Ind. Code § 4-10-11-2.1 ............................................................................... 9

Ind. Code § 4-12-1 *et seq.* ........................................................................ 10

Ind. Code § 4-12-1-2 ................................................................................... 8

Ind. Code § 4-12-1-3 ................................................................................. 10

Ind. Code § 4-12-1-7 ................................................................................. 10

Ind. Code § 4-12-1-9 ................................................................................. 10

Ind. Code § 4-13-1-1 ................................................................................... 8

Ind. Code § 4-13-1-4(7) ............................................................................... 9

Ind. Code § 4-15-2.2 ................................................................................... 8

Ind. Code § 4-21.5-2-4 ................................................................................ 8

Ind. Code § 4-3-9-1 ..................................................................................... 8

Ind. Code § 6-1.1-10-2 ................................................................................ 8

Ind. Code § 6-1.1-1-18 ................................................................................ 8

Ind. Code § 6-101-1-18 ............................................................................... 8

Ind. Code §§ 21-14-2-6 – 10 ....................................................................... 6

**Oregon Statutes**

ORS § 352.138(2) ...................................................................................... 13

ORS § 174.117 ........................................................................................... 13

ORS § 291.003 ........................................................................................... 14

ORS § 293.229(5)(b) ........................................................................................ 14

ORS § 293.231 ................................................................................................. 14

ORS § 307.090 ................................................................................................. 13

ORS § 350.075(3)(e) ........................................................................................ 14

ORS § 352.025(2)(c) ........................................................................................ 13

ORS § 352.033 ................................................................................................. 12

ORS § 352.039(1) ............................................................................................ 12

ORS § 352.076 ................................................................................................. 13

ORS § 352.087(1) ............................................................................................ 13

ORS § 352.087(1)(l) ........................................................................................ 13

ORS § 352.096 ................................................................................................. 14

ORS § 352.113 ................................................................................................. 13

ORS § 352.135 ............................................................................................ 11, 15

ORS §§ 183.010 – 183.690 .............................................................................. 13

ORS §§ 297.010-297.990 ................................................................................. 14

ORS §§ 30.260-30.300 ..................................................................................... 13

# I.    Introduction

The Plaintiffs' Third Amended Complaint (the "Complaint") should be dismissed because the Eleventh Amendment bars this Court's exercise of federal jurisdiction over Purdue University ("Purdue") and University of Oregon (collectively, "Defendants"), as instrumentalities of their respective states. Neither Defendant has waived their Eleventh Amendment immunity. The Complaint's class action claims against Defendants also fail due to other jurisdictional defects.[1]

First, this Court should dismiss all claims against the Defendants for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Under the Third Circuit's Eleventh Amendment analysis, Defendants qualify as instrumentalities of their respective states, and are entitled to Eleventh Amendment immunity. This immunity precludes the Defendants from being subject to the jurisdiction of this Court without their consent. Neither Defendant has waived its Eleventh Amendment immunity.

If this Court looks past the Eleventh Amendment bar, there are additional bars to the class action claims against Defendants. An FLSA collective action under 29 U.S.C. § 216(b) cannot be brought in the same federal lawsuit as a Rule 23 class action because the opposing opt-in/opt-out requirements render the two actions incompatible. The Third Amended Complaint's class action allegations against Purdue University and University of Oregon also defeat diversity jurisdiction under

---

[1] Defendants also moved to join in co-defendant NCAA's Motion to Dismiss and Memorandum of Law in Support thereof, and write separately to raise additional available defenses.

28 U.S.C. § 1332(d)((2) because 28 U.S.C. § 1332(d)((5)(A) blocks the availability of diversity jurisdiction for a class action claim against a state instrumentality.

## II.    Summary of Claims

This suit is brought as a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and as a class action under Fed. R. Civ. P. 23, against twelve (12) universities, including Purdue University and the University of Oregon. (DE 134). This suit was filed on November 6, 2019, and this Motion is filed in response to Plaintiff's Third Amended Complaint (DE 134). Only two Plaintiffs assert claims against University of Oregon and Purdue: Rhea Foster, a resident of California, and Gina Snyder, a resident of Florida (the "opt-in Plaintiffs"). *Id*. ¶¶ 28, 32. Both Foster and Snyder are opt-in Plaintiffs for the FLSA collective suit. *Id*.

In addition to the FLSA claims (Count I), the lawsuit asserts Rule 23 class action state law claims against Defendants. Foster alleges University of Oregon violated the Oregon Minimum Wage and Employment Conditions Law (Count XI) and also asserts a claim of Unjust Enrichment (Count XII) (*id*. ¶¶ 661-74). Snyder, again in addition to the FLSA claim, alleges violations of the Indiana Minimum Wage Law (Count XVII) and Unjust Enrichment (Count XVIII) against Purdue. *Id*. ¶¶ 703-16).

The Complaint generally alleges that, as student athletes, the opt-in Plaintiffs and putative class members were employees of the Defendants, and that as such, they should have been compensated while acting as a student athlete. (DE 134). The Complaint alleges that Defendants failed to compensate the student

athletes and that this constitutes a violation of the FLSA and state wage laws, and that the result is that the Defendants were unjustly enriched. *Id.*

### III.    Argument

**A. Plaintiffs' claims against Purdue University and University of Oregon must be dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).**

The Eleventh Amendment of the United States Constitution is a safeguard that protects States from being sued in federal court without their consent. USCS Const. Amend. 11. This constitutional bar applies with equal force to claims under federal law and state law. This safeguard applies not only when a nonconsenting State is named as a defendant, but also extends to instrumentalities of the State as well. *Regents of the Univ. of Cal. V. Doe*, 519 U.S. 425, 429 (1997). An instrumentality of the State is an entity that, by its very nature, is so intertwined with the State that a suit against it is, practically speaking, a suit against the State itself. *Edelman v. Jordan*, 451 U.S. 651, 663 (1974). An instrumentality of the State will be entitled to Eleventh Amendment immunity when a judgment against it "would have essentially the same practical consequences as a judgment against the State itself." *Bowers v. NCAA*, 475 F.3d 524, 545-46 (3d Cir. 2007).

The Third Circuit's test for determining whether an entity is an instrumentality of the State and entitled to immunity is known as the *Fitchik* test. *See Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.3d 655 (3d Cir. 1989).

The test is a three-factor balancing test, with each factor having sub-factors, and requires a fact-intensive, individualized review. *Bowers*, 475 F.3d at 546.

The three factors to be considered under *Fitchik* are: (1) the "funding factor," that is, "whether the State treasury is legally responsible for an adverse judgment entered against the alleged arm of the State; (2) the 'status under State law' factor: whether the entity is treated as an arm of the State under State case law and statutes; and (3) the 'autonomy factor:' whether, based largely on the structure of its internal governance, the entity retains significant autonomy from State control." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016) (*citing Fitchik,* 873 F.2d 655, 659 (3d Cir. 1989)).

The first factor, the 'funding factor,' hinges on whether the money from a judgment would come from the State, and has three subparts to be evaluated: "(1) a State's legal obligation to pay a money judgment entered against the alleged arm of the State; (2) alternative sources of funding (i.e., monies not appropriated by the State) from which the entity could pay such judgments; and (3) specific statutory provisions that immunize the State from liability for money judgments." *Id*. at 86.

The 'status under State law' factor considers how the State's law treats the entity generally, whether the entity is separately incorporated, whether it can sue or be sued in its own right, whether it is immune from State taxation, whether it can exercise the power of eminent domain, the application of administrative law and civil service laws to the entity, the entity's ability to enter into contracts and make purchases on its own behalf, and whether the entity owns real estate. *Id*. at 91.

4

Finally, the 'autonomy factor' focuses on both the governing structure of the entity, and State's oversight and control as exerted by its governor and legislature. *Id.* at 96. Although the funding factor had historically been given the most weight, the test now weighs all factors equally. *Id.* In totality, the *Fitchik* test as applied to both Purdue University and University of Oregon cuts in favor of immunity.

### 1. Purdue University is an instrumentality of the State of Indiana and is entitled to Eleventh Amendment immunity.

The funding factor leans slightly in favor of immunity. To begin, there are no statutory obligations for the State of Indiana to pay money judgments against its universities, including Purdue, which admittedly does cut against immunity. In terms of alternative sources of funding, for fiscal year 2024, Purdue reported the following revenue percentages: 37% from tuition and fees; 17% from contracts, grants, and operation; 12% from state appropriations; 10% from investment income; 9% from gifts, 8% from other revenue, and 7% from auxiliary enterprises (such as athletics, housing, food services, etc.).[2] While at first glance, it appears that Purdue might have several alternative sources from which to pay a money judgment, there are three important considerations. The first is that Purdue is self-insured, meaning that a judgment against it may be paid from appropriations. The second is that the State controls Purdue's revenue, even outside of appropriations. For example, gifts of money to the University are taken in charge and managed by the state of Indiana as a trust. Ind. Code § 21-30-2-7. The State treasurer is also authorized to manage and

---

[2] https://www.purdue.edu/treasurer/finance/wp-content/uploads/2024/12/508_FY2024-Purdue-Financial-Report-BLENDED-FINAL-10_25_24.pdf

invest Purdue's endowment fund. *Id*. § 21-7-15-2. The third is that, while Purdue is able to set its tuition and fees for two years, the amount can only be adjusted if its State appropriations are reduced or withheld, and any revenue generated by the adjustment cannot exceed the amount by which State appropriations to the University were reduced or withheld. *Id*. §§ 21-14-2-6 – 10. So, while Purdue has alternative sources of income outside of State appropriations, much of this income is still subject to State control. This sub-factor then leans slightly in favor of immunity. Finally, there are no statutory provisions in the Indiana Code that immunize the state from money judgments against Purdue. This sub-factor leans in favor of immunity, and makes this factor lean slightly in favor of immunity as a whole.

The status under State law factor also leans in favor of immunity. First, Purdue University is a land-grant institution that is solely a creature of the Indiana legislature. The State of Indiana acquired the grounds upon which Purdue currently sits through its participation in the Morrill Act of 1862 (the "Act"). *Russell v. Trustees of Purdue University*, 201 Ind. 367, 375-76 (Ind. 1929). The Act committed federal lands to each State to be used solely for establishing colleges to further the nation's agricultural interest. Indiana's General Assembly accepted the Act, which provided that the Governor and four others would create a corporation under the name of "The Trustees of the Indiana Agricultural College." *Russell*, 201 Ind. 367, 376. The State accepted the money and land donations offered by Tippecanoe County and John Purdue, and by way of the acts of 1869, the legislature created the college contemplated by the Morrill Act and named it "Purdue University." *Id*. In the

following decades, the legislature continued to develop Purdue, including passing acts that gave Purdue part of the revenue the State collected in property taxes (*id*. at 379), permitting Purdue, "on behalf of the State of Indiana," to accept donations made to it (*id*.), designating Purdue's professor of agricultural chemistry as the State chemist (*id*.), and permitting Purdue, as a State agency, to exercise the right of eminent domain (*id*. at 385).

Indiana statutes and case law likewise treat Purdue University as an instrumentality of the State. Most importantly, the Indiana Supreme Court has held that Purdue University is an instrumentality of the State. *See Montgomery v. Bd. Of Trs.*, 849 N.E.2d 1120 (Ind. 2006) (discussing whether the IADA or ADEA applies to Purdue University as an arm of the State and governmental entity); *see also Lowe v. N. Ind. Commuter Transp. Dist.*, 177 N.E.3d 796, 804 (Ind. 2021) (validating the 7th Circuit's holding in *Kashani v. Purdue Univ.*, 813 F.2d 843 (7th Cir. 1987) that Purdue University is an arm of the State and entitled to Eleventh Amendment immunity.).

Statutorily, Purdue is defined as a "State educational institution," Ind. Code § 21-7-13-32, supported in whole or in part by appropriations made by the general assembly. *Id*. Although certain Indiana statutes exclude State educational institutions from the definition of "State agency," (see Ind. Code § 2-2.2-1-19, 4-13-1-1) a number of statutes do include State educational institutions or their board of trustees in the definition. *See* Ind. Code §§ 4-3-9-1, 4-12-1-2, 6-1.1-1-18, 16-39-11-4.5, 22-6-6-7. In addition, Purdue is exempt from taxation as a State agency (Ind. Code §§

6-1.1-10-2, 6-101-1-18), and Purdue is not separately incorporated. Purdue also has the power to exercise eminent domain. *Russell v. Trs. of Purdue Univ.*, 201 Ind. 367, 385-86 (Ind. 1929) ("Purdue University was granted the right of eminent domain by the Act of 1911.). Purdue is likewise subject to the Indiana Tort Claims Act, Ind. Code § 34-13-3 *et seq. See Chang v. Purdue Univ.*, 985 N.E.2d 35 (Ind. Ct. App. 2013).

A neutral sub-factor for the present analysis is that Indiana law does not require that the land sold/conveyed/held by Purdue be titled in the name of the University or the State itself. Instead, the land can be titled in either name. Ind. Code § 21-36-3-3. However, even this sub-factor leans slightly in favor of immunity because it indicates that for title of land, Purdue is functionally synonymous with the State of Indiana.

Purdue concedes that there are three sub-factors that cut against a finding of immunity. First, that Purdue can sue and be sued. Second, that Purdue is exempt from Indiana's Administrative Orders and Procedures Act (Ind. Code § 4-21.5-2-4) and civil service laws (Ind. Code § 4-15-2.2). And third, that Purdue can enter into contracts. *Kashani*, 813 F.2d at 847.

The third and last factor (the autonomy factor) leans heavily in favor of immunity, with a far greater number of considerations demonstrating the State's involvement with Purdue rather than showing Purdue's independence. Purdue's governance structure is subject to extensive State involvement, starting with the Board of Trustees (the "Board"). The Indiana Governor appoints seven of the ten Board members, and only the Governor can fill vacancies on the Board. Ind. Code §§

21-23-3-2, 8. Board members are subject to three-year terms as set by the legislature, and are paid a per diem. *Id*. §§ 21-23-3-7, 21-38-2-1. State law sets the per diem amount permitted using State funds, and also provides that reimbursement for Board members' travel and other expenses may be done only by the Indiana Office of the Administration, a department of the State government which manages the affairs of the State government. *Id*. §§ 4-10-11-2.1, 4-13-1-4(7) (which provides that the Office may reimburse expenses for "travel of officers and employees of all State agencies when engaged in the performance of State business.").

Purdue's functionality is also subject to the jurisdiction of the Commission for Higher Education (the "Commission"), a State agency which has significant involvement in the State's educational institutions. The Commission reviews and revises legislative budget requests by the University, makes recommendations regarding the same, reviews and makes recommendations for funding and programs, and approves or disapproves new colleges, schools, regional campuses, and educational programs. *Id*. § 21-18-9. The Commission also orders and oversees a biennial audit of the State's educational institutions to ensure its compliance with the Commission's funding goals, and then submits the audit reports to the legislative council. *Id*. § 21-18-16-6.

Purdue is subject to the same annual financial reporting requirements that apply to all State agencies under the Budget Agency Act, Ind. Code 4-12-1 *et seq*. The Budget Agency Act creates the budget committee, an agency of the State, of which five of the 6 members are legislators. *Id*. § 4-12-1-3. State agencies, including Purdue,

must prepare annual reports to the budget agency that include extensive information regarding its expenditures, its proposed budget, its appropriation requests, and more. *See Id*. § 4-12-1-7. The budget committee then submits its budget bill to the Governor, who delivers it to the house members of the budget committee for introduction into the Indiana house of representatives. *Id*. §§ 9.

Although there are admittedly sub-factors that lean against a finding of immunity, they are scant. The first factor is that the Board of Trustees sets the compensation for the secretary and treasurer of the university. Ind. Code § 21-23-4-2. The second factor is that the Trustees have the authority to make all bylaws, rules, and regulations for the operation of Purdue. *Id*. § 21-27-7-5.

The second and third factor of the *Fitchik* test weigh in favor of finding that Purdue University is an instrumentality of the State of Indiana. Therefore, Purdue is protected by the same Eleventh Amendment immunity that bars suits against the State of Indiana in federal courts.

## 2. University of Oregon is an instrumentality of the State of Oregon and is entitled to Eleventh Amendment immunity.

The first factor leans slightly in favor of immunity. To begin, there is no statute under Oregon law that requires the State to pay a judgment against University of Oregon. On the other hand, there is also no statute that immunizes the State from judgments against the University of Oregon. Because the first factor leans against immunity and the latter leans toward it, these two factors together become neutral.

We next consider University of Oregon's revenue sources. Like Purdue, at first glance it may seem that there are alternative sources from which the University could pay a money judgment, but this is not necessarily the case. For fiscal year 2022, the University's revenue breakdown is as follows: 38.44% from tuition and fees; 6.9% from State appropriations; 24.52% from gifts, grants and contracts; 1.81% from interest and investments; 5.92% from internal sales; 16.01% from sales and services; and 6.38 from other various smaller sources.[3]

While the University's biggest revenue source is tuition and fees, the University cannot simply raise its tuition and fees to account for a judgment against it. Rather, the University is restricted in how much it can raise tuition for students, and if the University wishes to raise tuition above a certain percentage, approval is first required from the Higher Education Coordinating Commission (a state agency), or the Legislative Assembly. ORS § 352.102(4). In addition, certain University funds may be subject to the State Treasurer's control pursuant to ORS § 352.135, precluding the University from having free reign to use those funds for money judgments. Taken together then, this first factor leans slightly in favor of immunity.

The second factor, status under State law, leans definitively in favor of immunity. Most significantly, the Oregon Supreme Court has identified the University of Oregon as an arm of the State. In *McClain v. Regents of University*, 124 Ore. 629 (1928), the Oregon Supreme Court determined that the University of Oregon

---

[3] https://pages.uoregon.edu/baoforms/files/brp/Report_Analysis/FY24%20Budget%20Expenditure%20Report.pdf

could not issue construction bonds without violating the constitutional prohibition on the State incurring indebtedness. In finding the University was an agency of the State, the Court stated,

> The University of Oregon is . . . not an independent legal entity. It was created by an act of the legislature in 1876; its regents are appointed by the Governor with the advice and consent of the Senate and their powers and duties are specified by statute. Since its creation, the University has been maintained largely by public funds. Its management and control has never been surrendered by the State.

*Id.* at 633.

The Ninth Circuit has held the same. *See, e.g., Rounds v. Oregon State Bd. Of Higher Educ.*, 166 F.3d 1032, 1035 (9th Cir. 1999) ("University [of Oregon] is an arm of the State of Oregon for Eleventh Amendment immunity purposes."). Oregon statutes likewise treat the University as an instrumentality of the State. ORS § 352.033 states that the University, as a public State university, is "a governmental entity performing governmental functions and exercising governmental powers." ORS § 352.039(1) holds that, as a public State university, University of Oregon was "created to carry out public missions and services in keeping with principles of public accountability and fundamental public policy." Further, the University is also subject to the State's Tort Claims Act (ORS §§ 30.260-30.300) as a "special government body." *Id.* § 174.117; 352.138(2). In addition, the University is exempt from State property taxation (ORS § 307.090), and can exercise the power of eminent domain (ORS § 352.087(1)(l)). Moreso, per ORS § 352.025(2)(c) and 352.113, the State retains title of all land acquired by its State universities, pursuant to ORS 352.135(2), and State universities are subject to Oregon's administrative procedure laws and civil service

laws (ORS §§ 183.010 – 183.690). Finally, University of Oregon is not separately incorporated from the State of Oregon itself.

Under this factor, only two items cut against immunity: that the University of Oregon has the ability to sue and be sued, and that the University has the power to enter into contracts and agreements. *Id.* §§ 352.087(1)(n), (1)(c). Regardless, the majority of sub-factors support a finding of immunity, and thus, this second factor cuts in favor of the same.

The third and final factor, the autonomy factor, strongly favors Eleventh Amendment immunity. The University's governance structure demonstrates how intensely it is intertwined with the State. The governing board of the University consists of 12-16 members, all of which must be appointed by the Governor, and each appointment must then be confirmed by the State senate. *Id.* § 352.076. Should the governing board wish to appoint or remove the University's president, this can only be done in consultation with the Governor. *Id.* § 352.096. In addition, only the Governor can remove a Trustee, and can do so for any reasonable as provided by law.[4]

The Higher Education Coordinating Commission (HECC), another State agency, also has significant involvement in the State's university system. Universities must make funding and appropriation requests through the HECC, which then makes a recommendation to the Governor and the higher education budget committee regarding the requests. *Id.* § 350.075(3)(e). In addition, the HECC also adopts rules governing the distribution of appropriations to State universities,

---

[4] https://trustees.uoregon.edu/sites/default/files/2025-01/final-bylaws-10-december-2024.pdf

advises the Governor and Legislative Assembly on issues of university governance, can approve or disapprove changes to academic programs of the universities, can approve or disapprove mission Statements by the universities, and can authorize degrees to be offered. *Id*.

Finally, the State has substantial involvement with the University's financial affairs. First, the State has taken responsibility for collecting the delinquent debts of the University. University of Oregon is included as a "State agency" under ORS §§ 291.003 and 293.229(5)(b), wherein it is required to (1) follow specific reporting requirements for its delinquent debts and (2) assign its delinquent debts and accounts to the Oregon Department of Revenue (DOR) for collection. *Id*. §§ 293.229(5)(b), 293.231. Second, the University is also subject to the State's auditing procedures performed by the Secretary of State. *Id*. §§ 297.010-297.990 And third, the State Treasurer may, at their discretion, hold, keep, invest, and manage University funds as they see fit, to provide for the payment of state bonds or other state obligations that are to be paid from the University's appropriations. *Id*. § 352.135(2). The University's inclusion in the State's debt collection responsibilities, the State's power to audit the University at the Secretary of State's discretion, and the State Treasurer's discretionary control over certain University funds all indicate the State's ongoing control over the University's financial affairs and governance thereof.

The sole factor that could arguably cut against immunity regarding the University's governance is that members of the University's governing board can only be removed from their position for cause. While the Court in *Montclair* stated this

fact would "accord[] them considerable decision independence once appointed," it's also true that only the State Governor can remove board members, once again demonstrating the thorough involvement of the State in the University's governance and affairs. 845 F.3d at 98 (3d Cir. 2016).

Accordingly, the majority of the *Fitchik* factors weigh in favor of finding that the University of Oregon is an instrumentality of the State of Oregon. Therefore, this Court should join all other courts who have considered this matter and also find that University of Oregon is protected by the same Eleventh Amendment immunity that bars suits against the State of Oregon in federal courts.

## B. Purdue University and University of Oregon's immunity as to claims under the Fair Labor and Standards Act has not been waived or abrogated.

State sovereign immunity is a constitutionally protected right. *See College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999). The State, its agencies, and its instrumentalities are entitled to Eleventh Amendment immunity, for which there are only three exceptions. *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997). The first is a suit against a State official that seeks only prospective equitable relief. *See Ex parte Young*, 209 U.S. 123 (1908). The second is where Congress has abrogated the State's immunity through an unequivocal exercise of valid legislative power. *Marie O.*, 131 F.3d at 615. And last, where the State has waived its immunity and consented to suit in federal court. *College Sav. Bank,* 527 U.S. at 670.

Opt-in Plaintiff's do not name any official-capacity individual defendants and do not seek injunctive relief against State officials. Thus, the first exception does not apply. The second exception does not apply because the United States Supreme Court has held that Congress has not abrogated sovereign immunity by enacting the FLSA. *See Alden v. Me.*, 527 U.S. 706 (1999). Therefore, only the third exception could be at play. Neither Defendant has waived immunity and consented to suit in this case.

State sovereign immunity is a constitutionally protected right, for which the "[c]ourts indulge every reasonable presumption against waiver." *College Sav. Bank,* 527 U.S. at 682. Thus, the test regarding whether a State has waived its immunity from federal court jurisdiction is a stringent one. *Id*. at 670, 675. A waiver may be found if the State voluntarily invokes the federal court's jurisdiction, or if the State makes a clear declaration that it intends to submit to the federal court's jurisdiction. *Id*. at 676. Constructive consent will not overcome the presumption of Eleventh Amendment immunity. *See Edelman v. Jordan*, 415 U.S. 651 (1974). Instead, waiver will only be found "where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Id*. at 673.

Neither Defendant has waived its sovereign immunity to suit in federal court under the FLSA or the Third Amended Complaint's state law claims.[5] There is no

---

[5]Eleventh Amendment immunity prevails over federal supplemental jurisdiction for state law claims. *See Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 541-42, 122 S. Ct. 999, 152 L. Ed. 2d 27 (2002) ("[Section] 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants."); *Grezak v. Ropes & Gray, LLP*, 809 F. App'x 60, 63 n.6 (3d Cir. 2020) ("Because the Eleventh Amendment barred all of Grezak's claims against MHLS, there was no basis for exercising supplemental jurisdiction over any

legislation that waives sovereign immunity in either State, nor an Answer by either Defendant waiving immunity, and both Defendants have unequivocally maintained their immunity in correspondence with opt-in Plaintiffs' counsel. Likewise, case law establishes that neither State has waived immunity to FLSA claims. *See, e.g. Nunez v. Ind. Dep't of Child Servs.*, 817 F.3d 1042 (7th Cir. 2016) (finding no sovereign immunity waiver by the State of Indiana in FLSA suit); *Quillin v. State of Oregon*, 127 F.3d 1136, 1139 (9th Cir. 1997) ("Federal courts lack jurisdiction over FLSA cases brought against States in the absence of a waiver of immunity. There is no evidence that Oregon waived its immunity. . . .").

Because neither Purdue University, the University of Oregon, the State of Oregon, nor the State of Indiana has waived Eleventh Amendment immunity, each of the Third Amended Complaint's federal and state law claims against Defendants must be dismissed.

## C. The Rule 23 class action claims are improperly brought and must be dismissed.

### 1. FLSA collective actions under 29 U.S.C. § 216(b) cannot be brought in the same lawsuit as a Rule 23 class action.

In addition to opt-in Plaintiffs' FLSA collective action claims brought under 29 U.S.C. § 216(b), opt-in Plaintiffs attempt to bring state-law class action claims against Defendants pursuant to Fed. R. Civ. P. 23. (DE 134, pp. 163-64, 169-71). To do so is

---

state-law claims against that defendant."). There is no diversity jurisdiction for the state law claims against Defendants. "Even if a state waives its Eleventh Amendment immunity to suit . . . federal jurisdiction based on diversity will not lie because the state is not a citizen within the meaning of the Constitution or the acts of Congress." *Harris v. Pa. Tpk. Com.*, 410 F.2d 1332, 1333 n.1 (3d Cir. 1969).

improper. Like the opt-in Plaintiffs here, the plaintiffs in *Warner v. Orleans Home Builders, Inc.* brought both an FLSA claim under 29 U.S.C. § 216(b) and a Rule 23 class action in the same lawsuit. 550 F. Supp. 2d 583 (E.D. Pa. 2008). The Court dismissed the Rule 23 claims, stating the two actions could not be brought in the same lawsuit because they are incompatible together. *Id*. The incompatibility, the Court said, lies in the opt-in requirement for FLSA actions and the opt-out requirement for Rule 23 class actions. *Id*.

In reviewing the history of the FLSA opt-in requirement, the Court discussed that Congress' intention in creating the opt-in requirement was to "'limit private FLSA plaintiffs to employees who asserted claims in their own right' and thus curb the 'excessive litigation spawned by plaintiffs lacking a personal interest in the outcome.'" *Id*. at 588. The Court ultimately held:

> [O]pt-in FLSA collective actions are "inherently incompatible" with opt-out Rule 23 state-law class actions because permitting a Rule 23 class action to proceed in the same suit with a FLSA collective action would "essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement." Thus . . . the two types of actions cannot be brought simultaneously in federal court in a single lawsuit.

*Id*. (internal citations omitted).

Because opt-in Plaintiffs cannot bring both their FLSA collective action claim and their Rule 23 class action claims in the same lawsuit, the class action claims against Defendants should be dismissed.

**2. The Rule 23 class action claims must be dismissed because University of Oregon and Purdue University are primary defendants under 28 U.S.C. § 1332(d)(5)(A).**

The Complaint fails to comply with the requirement of Fed. R. Civ. P. 8(a)(1) to allege a basis for class action jurisdiction for the class action claims against University of Oregon and Purdue, which are asserted solely under state law. (DE 134, ¶¶ 661-74, 703-16). The Complaint does not allege diversity jurisdiction for any claims. The Complaint's allegation of supplemental jurisdiction for state law claims (*id.* ¶¶ 13-21) does not validly invoke subject-matter jurisdiction for a state law class action claim that is not limited to the federal claim plaintiffs. *See* section III(C)(1), *supra* (discussing that an FLSA collective action cannot be brought in tandem with a Rule 23 class action). Thus, the only other potential source of jurisdiction over the Complaint's Rule 23 state law class action claims against Purdue University and University of Oregon is 28 U.S.C. § 1332(d)(2).

Under 28 U.S.C. § 1332(d)(2), a district court has original jurisdiction over a Rule 23 class action where the amount in controversy exceeds $5 million, and wherein any member of the plaintiff class is a citizen of a state different from any defendant. However, 28 U.S.C. § 1332(d)(5)(A) prohibits district courts from exercising 1332(d)(2) jurisdiction if any of "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." While not expressly defined in the statute, the Third Circuit has explained that a "primary defendant" is a defendant that is the "real target" of the lawsuit, i.e., those who are directly liable to the proposed class.

*Vodenichar v. Halcón Energy Props.*, 733 F.3d 497, 504 (3rd Cir. 2013). Interpreting the statute, the *Vodenichar* Court contemplated that a class action may have more than one "primary defendant." *Id*. at 506.

Although the NCAA is named as a co-defendant for the Indiana class and Oregon class, those claims each allege employment relationships between the proposed class members and the universities identified as defendants for those classes. As such, Purdue University and University of Oregon are primary defendants for the Indiana and Oregon classes, respectively: they are the "real targets" alleged to be directly liable to the proposed class plaintiffs. The Complaint confirms this in footnotes 28 and 34, which name Purdue University and University of Oregon as separate state-"based" defendants for the Indiana and Oregon classes. However, both universities are instrumentalities of their respective states (*see* section III(A), *supra*). Thus, pursuant 28 U.S.C. § 1332(d)(5)(A),  inclusion of Purdue University and University of Oregon as defendants on the Complaint's class action claims for the Indiana and Oregon classes defeats Section 1332(d)(2) jurisdiction for those class claims. For this reason, the class action claims against the University of Oregon (Counts XI and XII)  and those against Purdue University (Counts XVII and XVIII) must be dismissed.

## IV.    Conclusion

WHEREFORE, Defendants Purdue University and the University of Oregon pray this Court enter an Order granting this Motion to Dismiss, and for all other relief just and proper in the premises.

Respectfully submitted,

/s/ Trenten D. Klingerman
Trenten D. Klingerman
William P. Kealey
Kirstie E. Klutzke
STUART & BRANIGIN LLP
300 Main St., Ste. 900
Lafayette, IN 47901
Phone: 765.423.1561
tdk@stuartlaw.com
wpk@stuartlaw.com
**_Attorneys for Defendants_**
**_Purdue University and_**
**_University of Oregon_**

21