**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

RALPH "TREY" JOHNSON, STEPHANIE
KERKELES, NICHOLAS LABELLA,
CLAUDIA RUIZ, JACOB WILLEBEEK-
LEMAIR, ALEXA COOKE, RHESA FOSTER,
ZACHARY HARRIS, MATTHEW SCHMIDT,
TAMARA SCHOEN STATMAN, GINA
SYUNDER, ESTEBAN SUAREZ and LIAM
WALSH, individually and on behalf of all
persons similarly situated,

       Plaintiffs,

   v.

THE NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION, a/k/a the NCAA, and the
following NCAA Division I Member Schools as
representatives of a Defendant Class of all
private and semi-public NCAA Division I
Member Schools:

CORNELL UNIVERSITY, FORDHAM
UNIVERSITY, LAFAYETTE COLLEGE,
SACRED HEART UNIVERSITY,
VILLANOVA UNIVERSITY, UNIVERSITY
OF OREGON, TULANE UNIVERSITY,
UNIVERSITY OF NOTRE DAME,
UNIVERSITY OF ARIZONA, PURDUE
UNIVERSITY, DUKE UNIVERSITY and
MARIST COLLEGE,

      Defendants.

Case No. 2:19-cv-05230-JP

---

**DEFENDANT UNIVERSITY OF NOTRE DAME DU LAC'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   PROCEDURAL HISTORY RELATED TO SCHMIDT AND NOTRE DAME ............. 3

III.  FACTUAL BACKGROUND (AND LACK THEREOF) ABOUT SCHMIDT
      AND NOTRE DAME ........................................................................................ 4

      A.   The TAC Barely References Schmidt and Notre Dame. ........................................ 4

      B.   The TAC's Allegations About Other Schools, Sports, and Student-
           Athletes Do Not Connect to Schmidt or Notre Dame. ........................................ 5

      C.   Schmidt Never Stepped Foot in Pennsylvania with Notre Dame Lacrosse. ........... 6

IV.   ARGUMENT .................................................................................................... 7

      A.   Schmidt Is the Only Plaintiff with Claims Against Notre Dame. .......................... 7

      B.   The Court Should Dismiss Schmidt's Action Against Notre Dame Under
           Rule 12(b)(2) for Lack of Personal Jurisdiction. ............................................. 8

      C.   The Court Should Dismiss Schmidt's Action against Notre Dame for
           Misjoinder and Improper Venue Under Rules 12(b)(3), 20, and 21 .................... 11

      D.   Plaintiffs' Procedural Abuses Warrant Dismissal, Not Transfer. ....................... 20

      E.   The TAC Fails to State a Claim Against Notre Dame. ....................................... 22

      F.   The Court Should Dismiss with Prejudice Under These Special
           Circumstances. ......................................................................................... 31

V.    CONCLUSION ................................................................................................ 32

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abraham v. Am. Home Mortg. Servicing, Inc.,*
  947 F. Supp. 2d 222 (E.D.N.Y. 2013) ......................................................... 15, 17, 19

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).......................................................................................... 22

*Attanasio v. Cmty. Health Sys., Inc.,*
  No. 3:11-CV-582, 2011 WL 5008363 (M.D. Pa. Oct. 20, 2011) ...................................... 23, 26

*Baker v. Berman,*
  No. 09-1061, 2009 WL 3400941 (W.D. Pa. Oct. 21, 2009).................................... 21

*Barrios v. Suburban Disposal, Inc.,*
  No. 2:12-CV-03663, 2013 WL 1504489 (D.N.J. Apr. 10, 2013)........................... 25

*Bartol v. Barrowclough,*
  251 F. Supp. 3d 855 (E.D. Pa. 2017) ................................................................ 24

*Bayh v. Sonneburg,*
  573 N.E.2d 398 (Ind. 1991) .............................................................................. 30

*Berger v. NCAA,*
  843 F.3d 285 (7th Cir. 2016) ...................................................................... 3, 21, 30

*Black v. Premier Co.,*
  No. 01-4317, 2002 WL 31045854 (E.D. Pa. Sept. 12, 2002)........................... 17, 18

*Bristol-Myers Squibb Co. v. Superior Court of California,*
  582 U.S. 255 (2017)......................................................................................... 10

*Brueck v. John Maneely,*
  131 F. Supp. 3d 774 (N.D. Ind. 2015) ............................................................ 30

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.,*
  566 F.3d 94 (3d Cir. 2009)............................................................................... 10

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014).......................................................................................... 9

*Davis v. Abington Mem'l Hosp.,*
  765 F.3d 236 (3d Cir. 2014)......................................................................... 26, 31

*Dawson v. NCAA,*
  932 F.3d 905 (9th Cir. 2019) ...................................................................... 3, 21

*Doe 1 v. E. New Mexico Univ. Bd. of* Regents,
    2024 WL 3461404 (D.N.M. July 18, 2024) ..................................................................... 24, 25

*Dunn v. Sullivan*,
    758 F. Supp. 210 (D. Del. 1991) .................................................................................... 12

*Fed. Trade Comm'n v. Endo Pharms., Inc.*,
    No. 16-1440, 2016 WL 6124376 (E.D. Pa. Oct. 20, 2016) ..................................... 15

*Filak v. Consol. Rail Corp.*,
    No. 97-8022, 1997 WL 805167 (E.D. Pa. Dec. 31, 1997) ....................................... 18

*Fischer v. Fed. Express Corp.*,
    42 F.4th 366 (3d Cir. 2022) .............................................................................. 8, 9, 11

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ......................................................................................... 22

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
    564 U.S. 915 (2011) ....................................................................................................... 9

*Gorrio v. Terra*,
    No. CV 23-4366, 2023 WL 8373167 (E.D. Pa. Dec. 4, 2023) ........................... 14, 19

*Great W. Mining & Min. Co. v. Fox Rothschild LLP*,
    615 F.3d 159 (3d Cir. 2010) ......................................................................................... 31

*Harvey v. Cmty. Health Network, Inc.*,
    No. 122CV000659, 2022 WL 17104203 (S.D. Ind. Nov. 22, 2022) ....................................... 28

*Hawkins v. Fulton Cnty.*,
    95 F.R.D. 88 (N.D. Ga. 1982) ..................................................................................... 15

*In re Enterprise Rent-A-Car Wage & Hour Emp. Practices Lit.*,
    735 F. Supp. 2d 277 (W.D. Pa. 2010) ......................................................................... 11

*In re Lincoln Nat'l COI Litig.*,
    No. 16-06605, 2018 WL 684780 (E.D. Pa. Feb. 1, 2018) ....................................... 14

*Int'l Shoe Co. v. Wash. Off. of Unemployment Comp. & Placement*,
    326 U.S. 310 (1945) ..................................................................................................... 10

*Isaacs v. Trustees of Dartmouth Coll.*,
    No. 13-5708, 2014 WL 4186536 (E.D. Pa. Aug. 25, 2014) ....................................... 9

*Jezign Licensing, LLC v. L.T.D. Commodities, LLC*,
    2023 WL 5607908 (D. Md. Aug. 30, 2023) ............................................................... 21

*Johnson v. NCAA,*
    108 F.4th 163 (3d Cir. 2024) ................................................................. 4, 16, 24, 25

*Johnson v. NCAA,*
    556 F. Supp. 3d 491 (E.D. Pa. 2021) ................................................................... 30

*Johnson v. NCAA,*
    561 F. Supp. 3d 490 (E.D. Pa. 2021) ................................................................ 7, 14

*Livers v. NCAA,*
    No. CV 17-4271, 2018 WL 2291027 (E.D. Pa. May 17, 2018) ................................... 7, 14, 25

*Marten v. Godwin,*
    499 F.3d 290 (3d Cir. 2007) ............................................................................. 8

*Martin v. Selker Bros., Inc.,*
    949 F.2d 1286 (3d Cir. 1991) .......................................................................... 24

*Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino,*
    960 F.2d 1217 (3d Cir. 1992) ........................................................................... 8

*Montgomery v. Bd. of Trustees of Purdue Univ.,*
    849 N.E.2d 1120 (Ind. 2006) .......................................................................... 28

*Muhammad v. Weis,*
    2009 WL 2525454 (E.D. Pa. Aug. 17, 2019) ...................................................... 21

*Mussat v. IQVIA, Inc.,*
    953 F.3d 441 (7th Cir. 2020) ........................................................................... 11

*Nardelli v. Lamparski,*
    No. 2:20-CV-01723, 2022 WL 4133335 (W.D. Pa. Sept. 12, 2022) ......................... 26

*Nassau Cnty. Ass'n of Ins. Agents Inc. v. Aetna Life & Cas. Co.,*
    497 F.2d 1151 (2d Cir. 1974) .......................................................................... 20

*Pahlavan v. Drexel Univ. Coll. of,*
    *Med.*, 438 F. Supp. 3d 404 (E.D. Pa. 2020) ...................................................... 27

*Prater v. All. Coal, LLC,*
    No. 321CV00066, 2022 WL 22285582 (S.D. Ind. Mar. 16, 2022) ........................... 29

*Richardson v. Town of Worthington,*
    44 N.E.3d 42 (Ind. Ct. App. 2015) .................................................................... 28

*Rosario v. First Student Mgmt. LLC,*
    247 F. Supp. 3d 560 (E.D. Pa. 2017) ...................................................... 23, 26, 31

*Rose v. NCAA,*
   346 F. Supp. 3d 1212 (N.D. Ill. 2018) ................................................................ 30

*Santiago v. Warminster Twp.,*
   629 F.3d 121 (3d Cir. 2010) ............................................................................... 24

*Schrotberger v. Doe,*
   No. 21-cv-0364, 2022 WL 4072962 (E.D. Pa. Sept. 1, 2022) .............................. 11

*Scott v. NOW Courier, Inc.,*
   No. 110CV00971, 2011 WL 13350293 (S.D. Ind. Sept. 27, 2011) ....................... 29

*SeYoung Ra v. Gerhard's, Inc.,*
   No. CV 17-5211, 2019 WL 95473 (E.D. Pa. Jan. 3, 2019) ......................... 23, 25, 26

*Shivers v. Miller Beach Terrace, Inc.,* 2:11 CV 204, 2012 U.S. Dist. LEXIS 55804, at *3 (N.D.
   Ind. Apr. 18, 2012) ........................................................................................... 27

*Simmons v. Wyeth Labs., Inc.,*
   No. 96-6631, 1996 WL 617492 (E.D. Pa. Oct. 24, 1996) .............................. 15, 16

*Skillman v. Ivy Tech Cmty. Coll.,*
   52 N.E.3d 11 (Ind. Ct. App. 2016) ..................................................................... 28

*Smith v. Burlington N. Santa Fe Ry. Co.,*
   No. 06-2151-CM, 2006 WL 3192545 (D. Kan. Nov. 1, 2006) .............................. 12

*State Automobile Mutual Insurance Co. v. Hyundai Motor America,*
   2024 WL 1829653 (C.D. Cal. Feb. 27, 2024) ..................................................... 18

*Szewczyk v. United Parcel Serv., Inc.,*
   No. 19-1109, 2019 WL 5423036 (E.D. Pa. Oct. 22, 2019) .............................. 9, 10

*Thompson v. Progressions Behav. Health Servs., Inc.,*
   No. CV 18-58, 2018 WL 1794536 (E.D. Pa. Apr. 16, 2018) ................................. 22

*Turner v. Chipotle Mexican Grill, Inc.,*
   123 F. Supp. 3d 1300 (D. Colo. 2015) ................................................................ 15

*Visendi v. Bank of Am., N.A.,*
   733 F.3d 863 (9th Cir. 2013) .............................................................................. 17

*Vizant Techs., LLC v. Whitchurch,*
   97 F. Supp. 3d 618 (E.D. Pa. 2015) ..................................................................... 8

*W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank,*
   712 F.3d 165 (3d Cir. 2013) ...................................................................... 22, 24, 26

*Woodruff v. Ind. Fam. & Soc. Servs. Admin.*,
  964 N.E.2d 784 (Ind. 2012) ........................................................................ 29, 30

*Wright v. Lehigh Valley Hosp. & Health Network*,
  No. 10-431, 2011 WL 2550361 (E.D. Pa. June 23, 2011) ........................................... 25

*Zuzel v. SEPTA*,
  No.19-268, 2019 WL 1584598 (E.D. Pa. Apr. 11, 2019) ........................................... 20

**Statutes**

28 U.S.C. § 1367 .......................................................................................... 27

28 U.S.C. § 1367(c)(3) ................................................................................... 27

28 U.S.C. § 1391 .......................................................................................... 13

28 U.S.C. § 1391(b) ................................................................................ 11, 12, 13

28 U.S.C. § 1391(b)(1) ................................................................................... 12

28 U.S.C. § 1391(b)(2) ................................................................................... 12

28 U.S.C. § 1391(b)(3) ................................................................................... 12

28 U.S.C. § 1391(c) ...................................................................................... 12

28 U.S.C. § 1406(a) ...................................................................................... 13

28 U.S.C. § 1631 ..................................................................................... 11, 20

28 U.S.C. §1406 ...................................................................................... 13, 20

29 U.S.C. § 203(g) ....................................................................................... 28

29 U.S.C. § 255(a) ....................................................................................... 19

42 Pa. C.S.A. § 5322(b) ................................................................................... 8

Ind. Code § 22-2-2-3 ................................................................................ 27, 28

Ind. Code § 22-2-2-3(i) .................................................................................. 27

**Rules**

Fed. R. Civ. P. 41(b) ..................................................................................... 20

Pursuant to various Federal Rules of Civil Procedure ("Rules"), Defendant University of Notre Dame du Lac ("Notre Dame") respectfully submits this Memorandum of Law in support of its motion to dismiss the claims of Plaintiff Matthew Schmidt ("Schmidt") for lack of personal jurisdiction (Rule 12(b)(2)), for misjoinder and improper venue (Rules 20, 21, and 12(b)(3)), and for failure to state a legal claim (Rule 12(b)(6)). On any of these grounds, the Court should dismiss the Third Amended Complaint ("TAC") against Notre Dame with prejudice.[1]

I.    **INTRODUCTION**

This case is a house of cards in which Notre Dame does not belong. Neither does Schmidt, the only Plaintiff who attended Notre Dame. In the TAC, Plaintiffs have fatally overreached to ensnare Notre Dame in an intractable mess of unrelated parties and claims, despite that the Court lacks personal jurisdiction over Notre Dame, despite that venue is improper as to Notre Dame, and despite that Schmidt's pleading of wage-related claims against Notre Dame is legally insufficient.

Schmidt's claims—under the federal Fair Labor Standards Act ("FLSA"), Indiana Minimum Wage Law ("IMWL"), and Indiana common law for unjust enrichment—are premised on Notre Dame's alleged failure to pay Schmidt wages for his unidentified activities on the Notre Dame lacrosse team. Indeed, the TAC meagerly asserts that Schmidt currently lives in Illinois and was on the Notre Dame lacrosse team from 2017 to 2021 but states nothing else relevant about Schmidt or Notre Dame: not whether Schmidt played one minute of one game, not whether he received a scholarship, and not whether he ever stepped foot in Pennsylvania for any Notre Dame lacrosse activity. In fact, on this last point, Schmidt never entered Pennsylvania for Notre Dame lacrosse, meaning that his claims against Notre Dame have no connection to Pennsylvania.

---

[1] Notre Dame also has moved simultaneously to join in Defendant National Collegiate Athletic Association's motion to dismiss the TAC pursuant to Rule 12(b)(6) for the reasons and purpose described in Notre Dame's Motion which is filed with this Memorandum of Law.

Schmidt's claims also are entirely siloed from each of the other Plaintiffs' claims against their respective schools and the National Collegiate Athletic Association ("NCAA"). In truth, the Court faces about a dozen stand-alone federal and state law actions, "*Schmidt v. Notre Dame*" being one. The Court should dismiss "*Schmidt v. Notre Dame*" based on any of several independent grounds.

<u>First</u>, this Court lacks personal jurisdiction over Notre Dame under Rule 12(b)(2). Notre Dame is "at home" only in Indiana, and Schmidt's claims against Notre Dame have absolutely no connection to Pennsylvania.

<u>Second</u>, as to Schmidt's action against Notre Dame, venue is improper under Rule 12(b)(3)—a fatal defect that Plaintiffs try in vain to hide by, in violation of Rule 20, misjoining Schmidt's case against Notre Dame with the other named Plaintiffs' various actions against their respective Defendant schools.

<u>Third</u>, Schmidt has failed to state a claim against Notre Dame under Rule 12(b)(6). The paucity of factual allegations about Schmidt and Notre Dame dooms his FLSA, IMWL, and unjust enrichment claims and flouts the Third Circuit's recent admonition, ***in this case***, that simply playing college sports does not constitute compensable work. Thus, Schmidt's bare allegation that he was on the Notre Dame lacrosse team fails to render plausible that he was an "employee" entitled to wages. Additionally, Schmidt's two state-specific claims fail as a matter of law.

In short, Plaintiffs have brazenly abused the Rules and principles governing jurisdiction, venue, joinder, and pleading standards. For these reasons, as detailed below, the only effective remedy is dismissal of Schmidt's claims against Notre Dame with prejudice, and the Court should grant Notre Dame's Motion accordingly.

## II.    <u>**PROCEDURAL HISTORY RELATED TO SCHMIDT AND NOTRE DAME**</u>

In 2016—before Schmidt would matriculate and join the NCAA Division I ("D1") lacrosse team at Notre Dame—the Seventh Circuit held in *Berger v. NCAA* that, as a matter of law, student-athletes are not employees of their schools, and thus are not entitled to wages under the FLSA. 843 F.3d 285, 293 (7th Cir. 2016) ("*Berger*"). Since then, Notre Dame has operated its D1 sports programs from its home base in Indiana—within the Seventh Circuit—according to and relying upon *Berger* as governing precedent. Nevertheless, having "lost" *Berger*,[2] Plaintiffs' counsel has now baselessly dragged Notre Dame into Pennsylvania and the Third Circuit in their almost ten-year quest to litigate (and re-litigate) the employment status and wage claims of obviously unrelated D1 athletes in a single, unmanageable morass of parties and claims.

This latest action began when lead Plaintiff Ralph Johnson filed the original complaint in November 2019 against the NCAA and twenty-two universities (only one of which, Villanova, Johnson attended). (Dkt. 1.) Shortly after, a First Amended Complaint added several more Plaintiffs and schools, but not Schmidt or Notre Dame. (Dkt. 2.) In March 2020, the group of then-defendant schools that the then-named plaintiffs ***actually*** attended moved to dismiss on grounds not raised here—namely, that collegiate athletes were not "employees" of their schools as a matter of law. (Dkt. 25-1.) In August 2021, the Court rejected that argument.[3] (Dkt. 56.) In September 2021, Plaintiffs filed a Second Amended Complaint, which added Schmidt and Notre Dame as parties, among other new student-athletes and schools. (Dkt. 67.)

---

[2] Plaintiffs' counsel lost *Dawson v. NCAA*, 932 F.3d 905 (9th Cir. 2019) on similar grounds.

[3] Separately, the NCAA and the group of then-defendant schools that no named plaintiff allegedly attended also moved to dismiss. (Dkt. 26-1.) In September 2021, the Court denied this separate motion as to the NCAA but granted it as to the so-called "non-attended" schools. (Dkt. 65.)

The Court paused before requiring any response to the Second Amended Complaint because, in February 2022, the Third Circuit granted interlocutory review to answer the threshold question: "Whether NCAA Division [I athletes] can be employees of the colleges and universities they attend for purposes of the [FLSA] solely by virtue of their participation in interscholastic athletics." *Johnson v. NCAA*, 108 F.4th 163, 175 (3d Cir. 2024) ("*Johnson*"); *see also* Dkt. 98. In July 2024, the Third Circuit answered in the affirmative and set out the following test: "college athletes may be employees under the FLSA when they (a) perform services for another party, (b) necessarily and primarily for the [other party's] benefit, (c) under that party's control or right of control, and (d) in return for express or implied compensation or in-kind benefits." *Johnson,* 108 F. 4th at 180 (internal citation omitted) (the "*Johnson* Test").

In November 2024, Plaintiffs filed the TAC, purportedly to address the *Johnson* Test. (Dkt. 134.) All told, the now-operative TAC names eleven Plaintiffs (one being Schmidt) and thirteen Defendants (one being Notre Dame). But as explained below, the TAC says almost nothing about Schmidt or Notre Dame.

## III.    FACTUAL BACKGROUND (AND LACK THEREOF) ABOUT SCHMIDT AND NOTRE DAME

### A. The TAC Barely References Schmidt and Notre Dame.

The TAC alleges that Schmidt resides in Illinois and "worked for Defendants as a Student Athlete on the University of Notre Dame's NCAA Lacrosse Team from 2017 to 2021." (TAC ¶ 30.) This allegation is the **_only_** particularized reference to Schmidt. As for Notre Dame, the TAC alleges that Defendants "all tout their commitment to their educational missions" and then cites as an example Notre Dame's mission statement about "empowering students to pursue, discover, and share knowledge, truth, and faith." (TAC ¶ 49 (purporting to quote Notre Dame's website).) This allegation is the **_only_** particularized reference to Notre Dame. Consequently, the

TAC lacks virtually any factual allegations specific to Schmidt or Notre Dame. For example, the

TAC contains:

- No allegations about Schmidt being asked to play lacrosse for Notre Dame or otherwise being recruited from Pennsylvania or anywhere else.

- No allegations about Schmidt playing a single game of lacrosse or attending a single lacrosse practice session for Notre Dame anywhere, much less in Pennsylvania.

- No allegations about how much time, if any, Schmidt spent engaging in any lacrosse-related activities for Notre Dame.

- No allegations about whether Schmidt received scholarship money to play lacrosse at Notre Dame and, if so, how much.

- No allegations about Schmidt playing lacrosse necessarily and primarily for the benefit of Notre Dame, or Schmidt conferring any benefit on Notre Dame at all.

- No allegations about Schmidt's membership on the lacrosse team interfering with his academics at Notre Dame.

- No allegations about whether or how Notre Dame controlled or supervised Schmidt's participation in lacrosse.

- No allegations about Notre Dame's lacrosse facilities, rules, requirements, coaches, practices, schedule, or any other aspect of its lacrosse program.

- No allegations about whether lacrosse generated revenue or other alleged benefits for Notre Dame when Schmidt was on the team or otherwise.

- No allegations about whether and how Notre Dame complied with NCAA bylaws.

(*See generally* TAC.)

**B. The TAC's Allegations About Other Schools, Sports, and Student-Athletes Do Not Connect to Schmidt or Notre Dame.**

Rather than make factual allegations about Schmidt or Notre Dame, the TAC relies on

allegations about Villanova, NCAA bylaws, and other non-party schools' football programs. (*See,*

*e.g.*, TAC ¶¶ 60–67, 103–198.) The TAC does not allege substantive facts tying Schmidt or Notre

Dame lacrosse together with any of the other Plaintiffs or Defendant schools; instead, it summarily

alleges "***upon information and belief***" that the NCAA and Villanova policies "are representative of all NCAA D1 member schools." (TAC ¶ 10 (emphasis added).)

Similarly, the TAC glibly lumps Notre Dame with Defendant Purdue University ("Purdue")—calling them, together, the "Indiana-based Defendants." (TAC ¶ 560.) In doing so, Schmidt purports to bring his IMWL and Indiana unjust enrichment claims alongside not only fellow named Plaintiff Gina Snyder, who allegedly played softball at Purdue, but also countless other unidentified student-athletes who may have played a D1 sport at any of the other unidentified schools in Indiana. (TAC ¶¶ 32, 560.[4]) To be clear, the TAC does not allege that Schmidt has anything in common with Snyder or these mystery D1 Indiana student-athletes, other than they participated at different times, in different sports, at different schools in Indiana.[5]

### C.  Schmidt Never Stepped Foot in Pennsylvania with Notre Dame Lacrosse.

In its dearth of factual allegations about Schmidt and Notre Dame, the TAC does not connect Schmidt's membership on Notre Dame's lacrosse team to Pennsylvania. Nor could it. As a threshold matter, Notre Dame: (i) is a nonprofit corporation, incorporated under the laws of Indiana; (ii) has its principal place of business in Notre Dame, Indiana; (iii) is not registered to conduct business or operate in Pennsylvania as a foreign nonprofit corporation; and (iv) does not maintain any lacrosse facility outside of Indiana. (Declaration of Trent Grocock ("Grocock Decl."), attached hereto as Exhibit A, ¶¶ 5, 6, 8; Declaration of Yulander Wells, Jr. ("Wells Decl."),

---

[4] Specifically, Schmidt and Snyder seek to represent "all individuals, in all NCAA sports and of both genders, who were identified on any NCAA Squad List maintained by the Indiana-based Defendants and all other Division I schools in Indiana," pursuant to NCAA bylaws, during the defined period. (TAC ¶ 560.)

[5] Likewise, the TAC critically fails to link (i) Schmidt vis-à-vis any other Plaintiff, or (ii) Notre Dame vis-à-vis any other Defendant school.

attached hereto as Exhibit B, ¶ 11). Notre Dame processes its payroll in Indiana, not in Pennsylvania. (Grocock Decl., ¶ 7.)

Further, Schmidt did not spend *__a moment__* in Pennsylvania for Notre Dame lacrosse. He did not live in Pennsylvania when he enrolled at Notre Dame and was not recruited from a Pennsylvania high school. (Wells Decl., ¶¶ 7, 8.) When Schmidt attended Notre Dame, its lacrosse team never travelled to Pennsylvania to play a game, attend a practice, or engage in any other lacrosse-related activities. (*Id*. ¶ 9; *see also* TAC ¶ 30 (alleging Schmidt was on the Notre Dame lacrosse team from 2017 to 2021).) Notre Dame never sent Schmidt to Pennsylvania to recruit athletes or to participate in any community engagement events in Pennsylvania. (Wells Decl., ¶ 10.) Bottom line: the TAC does not—because it cannot—allege any facts connecting Schmidt's participation in Notre Dame lacrosse to Pennsylvania.

## IV.   <u>ARGUMENT</u>

### A. Schmidt Is the Only Plaintiff with Claims Against Notre Dame.

Plaintiffs' obfuscation of "who-claims-what-against-whom" requires initial clarification. As noted, the TAC alleges that Schmidt "worked for Defendants as a Student Athlete on the University of Notre Dame's NCAA Lacrosse Team from 2017 to 2021." (TAC ¶ 30.) In other words, Schmidt claims he "worked for" twelve universities and the NCAA by virtue of being "on" Notre Dame's lacrosse team. Notwithstanding this farcical group-pleading language, Schmidt is the only Plaintiff with claims against Notre Dame, and, as this Court has ruled, his "claims" are not actionable against any other Defendant school.[6] No other Plaintiff alleges to have ever enrolled

---

[6] *See Johnson v. NCAA*, 561 F. Supp. 3d 490, 506 (E.D. Pa. 2021) (finding that the First Amended Complaint, with the same bare group-pleading language still present in the TAC, did not plausibly allege that non-attended schools "are joint employers of Plaintiffs" and that Plaintiffs "lack standing to sue" schools they did not attend); *see also Livers v. NCAA,* No. CV 17-4271,

at Notre Dame. (TAC ¶¶ 22-37.) Again, "*Schmidt v. Notre Dame*" effectively stands on its own. For any of the grounds detailed below, the Court should dismiss it (and the entire TAC against Notre Dame) with prejudice.

**B. The Court Should Dismiss Schmidt's Action Against Notre Dame Under Rule 12(b)(2) for Lack of Personal Jurisdiction.**

Given the disconnect between Schmidt and Notre Dame on one hand, and Pennsylvania on the other, this Court cannot exercise personal jurisdiction over Notre Dame. Pennsylvania's long-arm statute permits this Court to exercise personal jurisdiction coextensively with that permitted under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. 42 Pa. C.S.A. § 5322(b). "The Fourteenth Amendment permits two types of personal jurisdiction: general personal jurisdiction and specific personal jurisdiction." *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 383 (3d Cir. 2022) (noting that Rule 4(k)(1)(A) does not authorize jurisdiction broader than what would be permissible for a state).

To establish either basis for personal jurisdiction over Notre Dame here, Schmidt must adduce sufficient **_specific_** facts to show with reasonable particularity that jurisdiction is proper. *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); *see also Vizant Techs., LLC v. Whitchurch*, 97 F. Supp. 3d 618, 627 (E.D. Pa. 2015) (citing *Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007)). "Vague or conclusory assertions" about jurisdiction cannot withstand a Rule 12(b)(2) motion to dismiss. *Whitchurch*, 97 F. Supp. 3d at 627. Because Schmidt has not—and cannot—meet this burden, the Court should dismiss the TAC as against Notre Dame under Rule 12(b)(2).

---

2018 WL 2291027, at *12 (E.D. Pa. May 17, 2018) (dismissing with prejudice plaintiff's FLSA claim against defendant schools that he did not attend).

**1. The Court Lacks General Personal Jurisdiction Over Notre Dame.**

A forum state has general personal jurisdiction over a defendant only if the defendant's affiliations with that state are such that the defendant is essentially "at home" there. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). Because Notre Dame is a corporation, "at home" generally means the state where it is incorporated and has its principal place of business. *Fischer*, 42 F.4th at 383 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) and *Goodyear Dunlop*, 564 U.S. at 924) (addressing general personal jurisdiction in class and collective action context). Thus, for general personal jurisdiction, Notre Dame is "at home" only in Indiana. *See supra* at Section III.C. (Indiana is Notre Dame's state of incorporation; and Notre Dame, Indiana, is its principal place of business). Consequently, this Court lacks general personal jurisdiction over Notre Dame. *See Fischer*, 42 F.4th at 383 (stating that "FedEx, which is incorporated in Delaware and has a principal place of business in Tennessee, is not 'at home' in Pennsylvania."); *Szczyk v. United Parcel Serv., Inc.*, No. 19-1109, 2019 WL 5423036, at *7–9 (E.D. Pa. Oct. 22, 2019) (dismissing FLSA claim against defendant for lack of general personal jurisdiction where defendant was incorporated in Delaware and headquartered in Georgia).[7]

**2. The Court Lacks Specific Personal Jurisdiction Over Notre Dame.**

The Court also lacks specific personal jurisdiction over Notre Dame because Notre Dame lacks the requisite "minimum contacts" with Pennsylvania. *See Fischer*, 42 F.4th at 384 (citing

---

[7] Notre Dame has not appointed an agent to accept service on its behalf in Pennsylvania. (Grocock Decl., ¶ 9.) Notre Dame also has no continuous and systematic contacts with Pennsylvania that could possibly merit the exercise of general jurisdiction here, and the TAC does not, and could not, allege otherwise. (*Id.*, ¶¶ 10-17.) *See also, e.g.*, *Isaacs v. Trustees of Dartmouth Coll.*, No. 13-5708, 2014 WL 4186536, at *4 (E.D. Pa. Aug. 25, 2014) *aff'd sub nom. Isaacs v. Arizona Bd. of Regents*, 608 F. App'x 70 (3d Cir. 2015) (declining to exercise general personal jurisdiction over college that is not incorporated in Pennsylvania and that does not have a principal place of business in Pennsylvania, even though it recruits and matriculates students from Pennsylvania, and stating that "courts in this district have found that activities typical for a national

*Int'l Shoe Co. v. Wash. Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). The minimum contacts inquiry asks whether a defendant, in contacting the forum state, "purposefully avail[ed] itself of the privilege of conducting activities within [it]." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103 (3d Cir. 2009) (internal citation omitted). Not just any contacts suffice. The defendant's contacts with the forum state must relate to the ***specific claims*** asserted. *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255, 265 (2017) (plaintiff must show "a connection between the forum [state] and the specific claims at issue."). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the [forum] [s]tate." *Id.* at 264.

Here, there is no connection between Pennsylvania and Schmidt's claims against Notre Dame. Schmidt's FLSA, IMWL, and unjust enrichment claims are based on his membership on Notre Dame's lacrosse team; to wit, he claims Notre Dame failed to pay him minimum wages for his (unspecified) lacrosse activities and was therefore unjustly enriched. Yet Schmidt does not ***and cannot*** allege that his participation in Notre Dame lacrosse—the crux of his claims—connects to Pennsylvania. Schmidt never stepped foot in Pennsylvania by virtue of being on the Notre Dame lacrosse team. *See supra* at Section III.C. Because Schmidt's claims against Notre Dame lack connection to Pennsylvania, this Court lacks specific personal jurisdiction over Notre Dame. *See Bristol-Myers Squibb*, 582 U.S. at 265; *see also, e.g.*, *Szewczyk*, 2019 WL 5423036, at *7–9

---

university, such as recruiting forum state students, faculty, and athletes, receiving donations and tuition dollars from forum state residents, and having students, faculty, staff, and administrators participate in conferences in the forum state, should not alone subject an institution to general jurisdiction in the forum state of Pennsylvania.").

(dismissing FLSA claim for lack of specific personal jurisdiction where plaintiff neither lived nor worked in the forum state).[8]

Because Schmidt cannot establish that this Court has personal jurisdiction over Notre Dame in relation to his claims, the Court should dismiss Notre Dame from this case under Rule 12(b)(2) for lack of personal jurisdiction.[9]

## C. The Court Should Dismiss Schmidt's Action against Notre Dame for Misjoinder and Improper Venue Under Rules 12(b)(3), 20, and 21.

The chasm between Pennsylvania and Schmidt's claims against Notre Dame also exposes and establishes that this Court is not a proper venue for those claims under the applicable venue statute, 28 U.S.C. § 1391(b). The TAC tries to obscure this fatal flaw by grotesquely misjoining (i) Schmidt with a horde of unrelated Plaintiffs and (ii) Notre Dame with a horde of unrelated Defendants. In doing so, the TAC violates Rule 20. To that end, as detailed below, the Court should sever Schmidt's action against Notre Dame under Rule 21 and then dismiss it with prejudice under Rule 12(b)(3) for improper venue.

---

[8] In that Schmidt, as a named plaintiff, must show that his ***specific*** claims against Notre Dame connect to Pennsylvania, the class and collective action context of this case does not change this outcome. *See Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020) (class action); *Fischer*, 42 F.4th at 370 (collective action). Plaintiffs' conclusory allegation that Notre Dame and the NCAA are "joint employers" (TAC ¶ 707) also fails to confer jurisdiction over Notre Dame. *See In re Enterprise Rent-A-Car Wage & Hour Emp. Practices Lit.*, 735 F. Supp. 2d 277, 328 (W.D. Pa. 2010) (joint employer theory is not relevant to "whether a court may exercise personal jurisdictional over a party"), *aff'd*, 683 F.3d 462 (3d Cir. 2012); *see also Schrotberger v. Doe*, No. 21-cv-0364, 2022 WL 4072962, at *4 (E.D. Pa. Sept. 1, 2022) (stating that a joint employer relationship "fails to confer personal jurisdiction" over an out-of-state defendant).

[9] As explained below, the Court should dismiss Schmidt's action against Notre Dame ***with prejudice***, as opposed to transferring the action under 28 U.S.C. § 1631 to another district that could theoretically exercise personal jurisdiction over Notre Dame (*e.g.*, the Northern District of Indiana). *See infra* at Section IV.F.

**1.  Venue Is Improper as to Schmidt and Notre Dame Under 28 U.S.C. § 1391(b).**

In putative class and collective actions, proper venue must be established with respect to each named plaintiff. *See Dunn v. Sullivan*, 758 F. Supp. 210, 216 (D. Del. 1991) (class action); *Smith v. Burlington N. Santa Fe Ry. Co.*, No. 06-2151-CM, 2006 WL 3192545, at *2 (D. Kan. Nov. 1, 2006) (FLSA collective action).

Under 28 U.S.C. § 1391(b), Schmidt had three venue options—none of which is the Eastern District of Pennsylvania.

First, venue is proper in a district where "any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). For purposes of venue, a defendant corporation like Notre Dame is "deemed to reside . . . in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c). As to Schmidt's claims, venue is improper here under § 1391(b)(1) because this Court lacks personal jurisdiction over Notre Dame. *See supra* at Section IV.B.

Second, venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). As to Schmidt's claims, venue is improper here under § 1391(b)(2) because he did not, and could not, allege that any of the events or omissions giving rise to his claims against Notre Dame occurred in Pennsylvania. *See supra* at Section IV.B.

Third, "if there is no district in which an action may otherwise be brought," venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3). As to Schmidt's claims, venue is improper here under § 1391(b)(3) because he could have brought them in the Northern District of Indiana, where Notre Dame is located and operates its D1 athletic programs, and where a federal district court would have personal jurisdiction over Notre Dame. *See supra* at Section IV.B. Plaintiffs'

conclusory allegations regarding venue do not override this reality. *See* TAC ¶ 14 (citing 28 U.S.C. § 1391 and claiming that (i) "[e]ach of the Defendants can be found, resides, has an agent, or transacts business in this District," and that (ii) "the unlawful conduct has been, or will be, carried on in part by one or more of the Defendants within this [Court's] District."). In fact, as just demonstrated, neither of these assertions apply to Notre Dame in relation to Schmidt's claims.

Accordingly, venue is indisputably improper as to Schmidt's action against Notre Dame under 28 U.S.C. 1391(b), which warrants dismissal of Notre Dame from this action with prejudice. *See* 28 U.S.C. § 1406(a) (court "shall dismiss, or if it be in the interest of justice, transfer" case for which venue is improper to any district "in which it could have been brought."); *see also* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* ("Wright & Miller") § 1689 (in multi-defendant actions "in which venue is improper as to some but not all defendants," the court "may cure the venue defect by severing the claims against those parties who raise valid venue defenses" and then dismiss <u>or</u> transfer that portion of the action per § 1406(a)); *infra* Section IV.D., (addressing dismissal, as opposed to transfer, under 28 U.S.C. §1406).

### 2. Plaintiffs Cannot Distort the Venue Analysis Through Egregious Misjoinder.

Given that Plaintiffs cannot conceivably argue venue is proper here as to Schmidt's action against Notre Dame, Plaintiffs could only "establish" venue as to Notre Dame on the false pretense that Notre Dame can be tethered to other Defendants, some of which may have a connection to this District, but, more importantly, ***none*** of which have any relation to Schmidt's claims against Notre Dame. Consequently, the TAC is the quintessence of misjoined parties and claims in violation of Rule 20. The Court should reject Plaintiffs' effort to fabricate venue by misjoining

Schmidt's action against Notre Dame with the claims of other Plaintiffs against their respective Defendant schools.[10]

### (a) The Rule 20 Standard.

Rule 20 only permits joinder of multiple plaintiffs and defendants in the same action where: "(a) '[right to relief is asserted by plaintiffs or against defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences'; and (b) 'any question of law or fact common to all plaintiffs will arise in the action.'" *Gorrio v. Terra*, No. CV 23-4366, 2023 WL 8373167, at *5 (E.D. Pa. Dec. 4, 2023). Rule 20 "is not a license to join unrelated claims and defendants in one lawsuit." *Id.* at 6. Schmidt bears the burden of demonstrating that joinder is warranted under Rule 20. *In re Lincoln Nat'l COI Litig.*, No. 16-06605, 2018 WL 684780, at *3 (E.D. Pa. Feb. 1, 2018). He cannot meet this burden.

### (b) Any Rule 20 Theory Premised on Joint Liability Is a Non-Starter.

In shotgun style, the TAC asserts that "Defendants are joint employers of student athletes" based exclusively on the existence of NCAA bylaws. (*See* TAC ¶¶ 242-303.) This pleading blatantly defies this Court's two prior rulings that a Defendant school cannot be a joint employer with any other Defendant school. *See Livers*, 2018 WL 2291027, at *12 and *Johnson v. NCAA*, 561 F. Supp. 3d at 506 (both explaining that student-athletes cannot maintain claims against schools they did not attend).

The NCAA's Memorandum of Law in Support of Defendants' Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim ("NCAA Brief") explains further why Plaintiffs' assertion of joint liability or joint employer status fails, and Notre Dame joins that argument. But, notably for

---

[10] Indeed, this venue defect underscores the absurdity of Plaintiffs' pleading generally and their intransigent, untenable amalgamation of incompatible claims and parties in a single lawsuit.

purposes here, the TAC contains nothing specifically connecting Notre Dame to the NCAA or to other Defendant schools. Such vague, conclusory allegations do not permit joinder. *See Abraham v. Am. Home Mortg. Servicing, Inc.,* 947 F. Supp. 2d 222, 233–34 (E.D.N.Y. 2013). To illustrate, consider the so-called Indiana-based Defendants: Purdue's alleged adherence to NCAA bylaws does not bear on Schmidt's participation in Notre Dame lacrosse. In short, that Defendants allegedly follow NCAA bylaws is not sufficient to establish joinder based on joint liability or on any proper grounds.

### (c) There Is No Logical Relationship Between Schmidt's Claims Against Notre Dame and the Other Plaintiffs' Claims Against Their Respective Schools.

The (mis)joinder of Schmidt's action against Notre Dame with the other Plaintiffs' claims against their respective Defendant schools also irremediably fails to meet Rule 20's "same transaction or occurrence" prong, which requires a "logical relationship" among claims. *Fed. Trade Comm'n v. Endo Pharms., Inc.*, No. 16-1440, 2016 WL 6124376, at *4 (E.D. Pa. Oct. 20, 2016). A logical relationship exists when "the central facts of each claim . . . arise on a somewhat individualized basis out of the <u>same</u> set of circumstances."[11] *Id.* at 5 (emphasis added) (citing *Simmons v. Wyeth Labs., Inc.*, No. 96-6631, 1996 WL 617492, at *3 (E.D. Pa. Oct. 24, 1996)) (emphasizing that a "logical relationship" for Rule 20 requires that claims derive from the ***same***, not just "similar," circumstances—because the fact that defendants may violate the law in identical ways in similar circumstances does not connect that misconduct).

Under this framework, no logical relationship exists between Schmidt's claims against Notre Dame and the other Plaintiffs' claims against their schools. Again, consider, just as one

---

[11] These joinder principles apply to class actions and FLSA collective actions. *See Hawkins v. Fulton Cnty.*, 95 F.R.D. 88 (N.D. Ga. 1982) (class action); *Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d 1300, 1309 (D. Colo. 2015) (collective action).

example, the "Indiana-based Defendants." To prevail on their FLSA claims, Schmidt and Snyder **_each_** must establish that **_his or her own_** participation in **_his or her own_** sport (men's lacrosse at Notre Dame for Schmidt, 2017-2021; women's softball at Purdue for Snyder, 2014-2017) meets all the *Johnson* Test factors, such as whether **_his or her_** personal participation was "necessarily and primarily for the benefit" of **_his or her_** respective school. *See infra* at Section IV.E.2.(a) (describing Plaintiffs' burden to show each of the *Johnson* Test factors).[12]

This inquiry demands personalized, fact-heavy analyses. As *Johnson* explained, "merely playing" college sports "cannot always be considered commercial *work*"; rather, the test to determine college athletes' employee status must "be able to identify athletes whose play is *also* work." *Johnson*, 108 F.4th at 177–8.[13] To that end, whether Schmidt was an "employee" of Notre Dame by virtue of being on its lacrosse team has nothing to do with Snyder's participation in Purdue softball, or Johnson's participation in Villanova football. Put otherwise, *Johnson* essentially held that just playing a college sport does not constitute the same set of circumstances from one Plaintiff to the next for purposes of establishing employee status under the FLSA. *See* 108 F.4th at 177–78; *see also Simmons*, 1996 WL 617492, at *3. Yet Plaintiffs "treat[] all student-athletes the same." *Johnson*, 108 F.4th at 184 (Porter, J., concurring) (discussing prior allegations

---

[12] These examples multiply beyond measure. Plaintiffs allegedly played eight different sports (football, tennis, lacrosse, baseball, softball, soccer, swimming, and track and field) for twelve different universities during different seasons spanning a nine-year period from 2013 to 2021. What's more, they seek to represent "**_all_** individuals, in **_all_** NCAA sports and of both genders, who were identified on any NCAA Squad List" maintained by the defendants "and **_all_** other Division I schools" in the Plaintiffs' eight respective states. (*See, e.g.*, TAC ¶¶ 339, 370, 401, 432, 467, 498, 529, 560 (emphasis added).) Meaning, the universe of sports and schools ostensibly encompassed in this litigation is practically unfathomable.

[13] *See also id.* at 192 n.15 (Porter, J., concurring) (classification question is "fact-intensive and value-laden."). "Plaintiffs' generic pleading masks an underlying heterogeneity among them and thousands of student-athletes playing different sports at different universities across the country." *Id.* at 185 (Porter, J., concurring).

like those inexplicably retained in the TAC). This sham commonality reflects textbook misjoinder. *See Visendi v. Bank of Am., N.A.,* 733 F.3d 863, 870 (9th Cir. 2013) ("Plaintiffs merely allege that [d]efendants violated the same laws in comparable ways. Rule 20[] requires more.").

Indeed, courts routinely reject these types of multi-plaintiff efforts to assemble disjointed claims against multiple defendants. For example, a court granted defendants' motion for severance and dismissal in a putative class action where several hundred homeowners alleged that several dozen mortgage originators and servicers induced them to enter mortgages based on inflated appraisals. *Abraham*, 947 F. Supp. 2d at 229, 233–34 (dismissing all but the first named plaintiff— reasoning that plaintiffs' separate mortgage transactions, in different states, over a nine-year period, did "not constitute a single transaction or occurrence under [Rule] 20."). As in *Abraham*, Plaintiffs' claims here arise from separate relationships between each Plaintiff and his or her respective school, spanning the country and a nine-year period. Plaintiffs' conclusory allegations that each played a college sport cannot suffice to permit joinder.

This Court has applied similar rationale to reject improper joinder for want of logical relationships. In *Black v. Premier Co.*, several plaintiffs sued their employer, a subsidiary company, alleging discriminatory favoritism toward a certain religion. No. 01-4317, 2002 WL 31045854, at *2 (E.D. Pa. Sept. 12, 2002). These plaintiffs moved to join an additional plaintiff, Juliann Hilton, who worked for the subsidiary's former <u>parent</u> entity and who alleged discrimination toward a different religion. *Id.* In denying this joinder motion, the Court found that Hilton's claims did not arise out of the same occurrence under Rule 20 because she and the existing plaintiffs "had different employers, different supervisors, different job locations, and different responsibilities." *Id.* Here, Schmidt and each of the other Plaintiffs represent a variation on Hilton—attending a different school, playing a different sport, and suing different alleged

employers. As in *Premier Co.*, this Court should now find that the separate "employment" relationships alleged by eleven unrelated student-Plaintiffs against their respective unrelated Defendant-schools cannot constitute the same transaction or occurrence—meaning, specifically, Schmidt and Notre Dame are misjoined under Rule 20.

### (d) Joinder Portends Pointless Inefficiency and Prejudice.

Finally, by proactively remedying the misjoinder of Schmidt and Notre Dame in the TAC, the Court would promote Rule 20's purposes of efficiency and fairness. *See Filak v. Consol. Rail Corp.*, No. 97-8022, 1997 WL 805167, at *1 (E.D. Pa. Dec. 31, 1997) (describing these purposes and severing the occupational injury claims of five plaintiffs because they worked in different jobs at different locations). The day of reckoning for this abomination in pleading will come, and that day should be now under Rule 20.

Common sense and case law dictate that keeping in "one" lawsuit a rough dozen intractably distinct class and collective actions is inefficient and prejudicial. For example, in *State Automobile Mutual Insurance Co. v. Hyundai Motor America*, the court assumed for argument's sake that the claims of 98 different plaintiffs relating to thousands of insureds arose "from the same transaction or occurrence," but nevertheless dismissed at the pleadings stage all except the first named plaintiff from the case because joinder would undermine trial efficiency and prejudice defendants. No. 8:23-CV-00439, 2024 WL 1829653, *2 (C.D. Cal. Feb. 27, 2024) (noting that allowing the 98 plaintiffs to proceed together would "lead to hundreds [if not thousands] of mini-trials," entailing thousands of unique fact-findings about _**each**_ plaintiff's ability to satisfy their statutes of limitations and claims); *see also Premier Co.*, 2002 WL 31045854, at *4 (denying joinder of the proposed plaintiff in part because her claim against a different defendant-employer, if considered

alongside the other plaintiffs' claims against their respective defendant-employer, would prejudice both defendant-employers by confusing the jury and by adding a level of discovery).

As in *Hyundai* and *Premier*, the misjoinder here forsakes efficiency and introduces prejudice. To allow such misjoinder would condone unrelated Plaintiffs bringing multiple stand-alone class and collective actions—each with its own already-unmanageable proposed collective and class groupings, each with thousands of individual statute-of-limitations and factual inquiries, each against unrelated Defendants located across the country.[14] To allow such misjoinder would prejudice Defendants, including Notre Dame, by confusing any fact-finder with this quagmire.

Simply put, "[u]nrelated claims against different defendants belong in different suits" to "prevent the sort of morass that [results from combining numerous claims against numerous defendants in one suit]." *Gorrio*, 2023 WL 8373167, at *6 (internal citation omitted) ("Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2."). Schmidt's action against Notre Dame is misjoined in violation of Rule 20 because it does not logically belong in this "one" proceeding of unrelated actions against unrelated alleged employers.

---

[14] The TAC's alleged FLSA collective essentially purports to encompass all the Defendant-schools' athletes across both sexes and all sports, so long as they were on "any NCAA Squad List" maintained by the schools pursuant to NCAA bylaws within the statute of limitations period. (TAC ¶ 328.) Each alleged Rule 23 class is likewise indecipherable: for example, the proposed Indiana class of student-athletes across all D1 sports at Notre Dame, Purdue, and other unidentified schools in Indiana. (TAC ¶ 560.) *See infra* at Section IV.E.2,4 for discussion of the elements of Plaintiffs' claims that would spawn (at least) thousands of factual inquiries if these actions are left misjoined in one lawsuit. And particularly given that Plaintiffs allegedly participated in collegiate athletics at different times during a period spanning nine years, statute-of-limitations inquiries alone counsel against joinder. *See Abraham*, 947 F. Supp. 2d at 238 (deeming problematic the same nine-year period of claims that is alleged in the TAC). Snyder's situation exemplifies the problem, as she admittedly did not even attend Purdue within the three-year limitation period preceding the initiation of her FLSA claim in this case (which is the statute of limitations under the FLSA, 29 U.S.C. § 255(a)).

**D.  Plaintiffs' Procedural Abuses Warrant Dismissal, Not Transfer.**

While the Court could rightly dismiss this entire action to redress Plaintiffs' egregious misjoinder of "*Schmidt v. Notre Dame*" alongside a dozen or so unrelated (likely uncertifiable) class and collective actions,[15] the Court should dismiss "*Schmidt v. Notre Dame*," regardless of what it may do with the rest of the case. Indeed, each procedural defect detailed above—lack of personal jurisdiction, improper venue, and misjoinder—leads to the same juncture for *Schmidt v. Notre Dame*: dismissal or, if in the interest of justice, transfer to the Northern District of Indiana, where personal jurisdiction over Notre Dame would exist and where venue would be proper. *See* 28 U.S.C. § 1631 (regarding transfer, instead of dismissal for lack of jurisdiction, if in interest of justice); 28 U.S.C. § 1406 (regarding dismissal or transfer for improper venue); Rule 21 (regarding dismissal, *i.e.* "dropping," a defendant or severing claims); *see also* Wright & Miller § 1689 (regarding multi-defendant actions in which venue is improper as to some but not all defendants, resulting in severance under Rule 21 followed by either dismissal or transfer).[16]

---

[15] Misjoinder may apply to each of the other Plaintiffs' actions against their respective schools, thereby infecting this entire litigation and warranting dismissal under Rule 41(b), which authorizes courts to dismiss a case where a plaintiff "fails . . . to comply with [the Federal Rules of Civil Procedure.]" Fed. R. Civ. P. 41(b); *see also Nassau Cnty. Ass'n of Ins. Agents Inc. v. Aetna Life & Cas. Co.*, 497 F.2d 1151, 1154 (2d Cir. 1974) (finding dismissal under Rule 41(b) appropriate because the misjoinder of "thousands of unrelated transactions" was "a gross abuse of procedure"). Such global relief seems appropriate here, given that even after multiple opportunities for Plaintiffs to amend, and despite the Third Circuit's clear instructions to Plaintiffs in *Johnson* on how to fix their pleading, the TAC fixes nothing and, instead, remains the same-old ghastly amalgamation of insufficiently pleaded disparate claims against disparate parties that do not belong together in a single case.

[16] Rule 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." In multi-defendant cases like this one, however, "[d]rop[ping] a defendant under Rule 21 amounts to dismissal[.]" *Zuzel v. SEPTA*, No.19-268, 2019 WL 1584598, at *3 (E.D. Pa. Apr. 11, 2019) Thus the Court could also drop Notre Dame under Rule 21, which, given that Schmidt is the only Plaintiff with claims against Notre Dame, would practically result in dismissal of his action. Regardless, once Schmidt's action against Notre

The path for the Court from this juncture is clear: (i) find misjoinder under Rule 20, (ii) sever Schmidt's action against Notre Dame under Rule 21, and then (iii) dismiss with prejudice, rather than transfer, the severed action for lack of personal jurisdiction or for improper venue.

Transfer of Schmidt's action against Notre Dame to the Northern District of Indiana would not be in the interest of justice. First, transfer would be futile, as Schmidt's severed and transferred case would likely be dismissed under *Berger*, pursuant to which Notre Dame has operated its D1 sports programs and pursuant to which student-athletes are not "employees" under the FLSA as a matter of law. *Berger*, 843 F.3d at 293; *see also Muhammad v. Weis*, 2009 WL 2525454, *6 (E.D. Pa. Aug. 17, 2019) (Padova, J.) (discussing futility where case would just be dismissed upon transfer). And second, relatedly, Plaintiffs flagrantly forum-shopped Schmidt's action against Notre Dame into this District to avoid *Berger's* fatal impact. *See Baker v. Berman*, No. 09-1061, 2009 WL 3400941, *2 (W.D. Pa. Oct. 21, 2009) (discussing blatant forum-shopping as reason for transfer not being in the interests of justice).[17] Here, transfer is both unjust and futile.

In sum, Plaintiffs' procedural overreach should cost them Schmidt's action against Notre Dame. The Court should sever *Schmidt v. Notre Dame* and dismiss it with prejudice.[18]

---

Dame is properly severed and considered as a stand-alone case, dismissal with prejudice is warranted as explained below. *See infra* at Section IV.F.

[17] *See also Dawson v. NCAA*, 932 F.3d 905, 908 (9th Cir. 2019) (following *Berger* and holding that D1 Football Bowl Subdivision players are not FLSA employees as a matter of law).

[18] Alternatively, if the Court does not sever and dismiss Schmidt's action against Notre Dame, the Court should sever and transfer the action to the Northern District of Indiana, where venue and the exercise of personal jurisdiction would be proper, *see supra* at Section IV.B,C, and where any decision on the merits (including the instant Rule 12(b)(6) motion detailed below) should be made. *See Jezign Licensing, LLC v. L.T.D. Commodities, LLC*, 2023 WL 5607908 at *3 (D. Md. Aug. 30, 2023) ("When confronted with a motion to dismiss based on both the failure to state a claim and improper venue, [a] Court must first resolve the venue question."); *see also Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007) ("When cases have been transferred for improper venue, transferee courts generally apply the substantive law they would have applied had the action been brought there initially").

**E.  The TAC Fails to State a Claim Against Notre Dame.**

If the Court declines to dismiss (or transfer) this case against Notre Dame under Rule 12(b)(2) or (3), then the Court should dismiss the federal and state law claim against Notre Dame for failure to state a claim under Rule 12(b)(6).

### 1.  The Rule 12(b)(6) Standard.

On a Rule 12(b)(6) motion, the Court accepts a complaint's factual allegations as true but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Thompson v. Progressions Behav. Health Servs., Inc.*, No. CV 18-58, 2018 WL 1794536, at *2 (E.D. Pa. Apr. 16, 2018) (Padova, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must contain 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" *Id.* (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). Accordingly, dismissal under Rule 12(b)(6) is appropriate if the factual allegations do not "'raise a right to relief above the speculative level.'" *Id.* (citing *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013)). Under this analysis, Schmidt's claims against Notre Dame fail.

### 2.  Schmidt Fails to State an FLSA Claim Against Notre Dame.

Count I of the TAC purports to assert a claim for minimum wages under the FLSA. (TAC ¶ 328.) The NCAA Brief comprehensively details Plaintiffs' abject failure to state a claim under the FLSA pursuant to Rule 12(b)(6). Those arguments apply with equal force in relation to Schmidt's claims against Notre Dame and compel dismissal of Count I, including as against Notre Dame. Specifically, the absence of particularized allegations against Notre Dame is fatal, especially in the aftermath of the Third's Circuit's remanded decision. As a named Plaintiff, Schmidt bears an "individual burden to state a legal claim for relief" under the FLSA. *Rosario v.*

*First Student Mgmt. LLC*, 247 F. Supp. 3d 560, 567 (E.D. Pa. 2017). This means ***he*** must plausibly allege: (1) he was employed by Notre Dame; (2) his work "involved some kind of interstate activity"; and (3) "the approximate number of hours worked for which [he] did not receive [minimum] wages." *SeYoung Ra v. Gerhard's, Inc.*, No. CV 17-5211, 2019 WL 95473, at *4 (E.D. Pa. Jan. 3, 2019) (internal citation omitted).

Failure to plead adequately even one of these three elements would doom Schmidt's action against Notre Dame; the TAC fails all three, providing no specific factual allegations about Schmidt on any of them.

### (a) Schmidt Has Not Plausibly Alleged He Was Employed by Notre Dame.

Despite his action to recover unpaid wages from Notre Dame, Schmidt does not even allege he was an employee of Notre Dame, specifically. Rather, as noted, the TAC alleges that Schmidt "worked for ***Defendants*** as a Student Athlete on the University of Notre Dame's NCAA Lacrosse Team from 2017 to 2021." (TAC ¶ 30 (emphasis added).) In other words, Schmidt claims he "worked for" twelve universities (one being Notre Dame) and the NCAA—solely by being "on" Notre Dame's lacrosse team. [19] This conclusory nonsense does not suffice under Rule 12(b)(6) standards.[20] Moreover, Schmidt's employment status under the FLSA "is a legal conclusion."

---

[19] The focus here can only be on Schmidt's claims against Notre Dame because, as this Court previously determined, he cannot bring wage-related claims against schools he did not attend. See *supra* at Section IV.C.2. In a similar vein, Schmidt cannot salvage his action against Notre Dame by relying on Plaintiffs' allegation that, "***upon information and belief***," all NCAA D1 member schools are like Villanova. (TAC ¶ 10 (emphasis added).) *See, e.g., Attanasio v. Cmty. Health Sys., Inc.*, No. 3:11-CV-582, 2011 WL 5008363, at *6 (M.D. Pa. Oct. 20, 2011) (dismissing class action complaint in part because plaintiffs' conclusory allegation that multiple defendants operated "as part of an integrated, comprehensive, consolidated health care delivery system" did not satisfy their burden to "plead their specific relationship and grievances with the parties.").

[20] It even falls short of Rule 8(a)(2)'s mandate of a plain statement showing entitlement to relief. *See Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (invoking Rule 8(a)(2) to reject a shotgun complaint that brought twelve counts against any combination of seven or more distinct defendants, some of which were not involved in plaintiff's claims).

*Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1292 (3d Cir. 1991). Thus, this Court should disregard the bare assertion that Schmidt "worked for" Notre Dame. *See Santiago v. Warminster Twp.,* 629 F.3d 121, 131 (3d Cir. 2010) (discounting legal conclusions in reviewing sufficiency of pleading); *see also Johnson*, 108 F.4th at 187 (Porter, J., concurring) (observing that Plaintiffs' allegation that their "college athletic experience constitutes work" is "not a given," as the court need not "accept as true a legal conclusion couched as a factual allegation.").

That leaves only Schmidt's allegation that he was "on" the Notre Dame lacrosse team. This barebones assertion does not allege facts in relation to any of the four factors of the *Johnson* Test, meaning Schmidt cannot meet the "employee" prong of his FLSA claim:

(1) **Performance of "services" for another party:** That Schmidt was on Notre Dame's lacrosse team does not factually support that he "performed services" for Notre Dame, the first *Johnson* Test factor. *See Johnson,* 108 F. 4th. at 180, 182 (mandating "an economic realities framework that ***distinguishes*** college athletes who 'play' their sports for predominantly recreational or noncommercial reasons from those whose specific circumstances transforms play into work protected by the FLSA.") (emphasis added). Yet the TAC is silent about what, if anything, Schmidt actually did on the Notre Dame lacrosse team. As a result, the TAC requires speculation as to whether Schmidt might be one of those athletes whose play crosses the line into compensable work, while saying nothing about him or Notre Dame. Such speculative pleading is insufficient. *See Huntington Nat'l Bank*, 712 F.3d at 169.

(2) **Services "necessarily and primarily" for Notre Dame's benefit:** That Schmidt was on Notre Dame's lacrosse team does not factually support that his participation in lacrosse was "necessarily and primarily for [Notre Dame's] benefit," the second *Johnson* Test factor. *See Johnson,* 108 F. 4th. at 180.[21] On this point, the TAC is

---

[21] A recent case applying *Johnson* illustrates how Schmidt failed on this factor. In *Doe 1 v. E. New Mexico Univ. Bd. of Regents*, student-athletes claimed they "worked for" the defendant university by playing basketball. No. CV 23-362, 2024 WL 3461404, at *5 (D.N.M. July 18, 2024). The court dismissed their claims at the Rule 12(b)(6) stage, holding they "completely fail[ed] to plausibly claim that their participation in basketball was 'pursued necessarily and primarily for [defendant's] benefit." *Id.* (citing *Johnson*). The plaintiffs did not allege, for example, that the defendant "earned revenue, let alone profit" from <u>their</u> team or that <u>their</u> play was somehow more than an "extra-curricular activity creating at best indirect and attenuated economic benefit" for the defendant. *Id.*

otherwise silent about how and whether Notre Dame benefited from his being on the lacrosse team.

**(3)    Services under Notre Dame's "control or right of control":** That Schmidt was on Notre Dame's lacrosse team does not factually support that he was under Notre Dame's "control or right of control," the third *Johnson* Test factor. *Id.* at 180. Bare allegations of control—which would be more than Schmidt mustered about Notre Dame—cannot withstand a Rule 12(b)(6) motion. *See Wright v. Lehigh Valley Hosp. & Health Network*, No. 10-431, 2011 WL 2550361, at *3 (E.D. Pa. June 23, 2011) (disregarding as legal conclusions the plaintiff's allegations that defendants had "operational control" and were "ultimately responsible" for FLSA compliance).

**(4)    Services in return for express or implied compensation or in-kind benefit:** That Schmidt was on Notre Dame's lacrosse team does not factually support that he played lacrosse "in exchange for express or implied compensation or in-kind benefits" from Notre Dame, the fourth *Johnson* Test factor. *Johnson,* 108 F. 4th. at 180. The TAC contains no allegation as to what specific compensation Schmidt did or expected to receive—if any—from Notre Dame. On the contrary, the TAC suggests the opposite—that Plaintiffs, including Schmidt, had **_no_** expectation of payment. *See infra* at Section IV.E.4.(b). The TAC's allegations that "some Plaintiffs"—no mention of Schmidt—received in-kind benefits like free meals, subsidized housing, and scholarships (TAC ¶¶ 205-208)) cannot salvage this element. Even if the Court speculated that Schmidt is among these unidentified Plaintiffs, the TAC does not allege that he (or they, for that matter) economically depended on such benefits. *See Livers*, 2018 WL 2291027, at *16 (dismissing student-athlete's FLSA claim where he failed to sufficiently allege economic dependence).

In sum, the TAC fails to allege facts showing that Schmidt is an "employee" of Notre Dame under *Johnson*. The Court should therefore dismiss Count I of the TAC against Notre Dame.

### (b) Schmidt Has Not Plausibly Alleged He Was Involved in Interstate Activity.

The TAC also fails to allege the second element of Schmidt's FLSA claim, that his alleged membership on the Notre Dame lacrosse team "involved some kind of interstate activity." *Ra*, 2019 WL 95473, at *4. This pleading failure independently warrants dismissal of Schmidt's FLSA claim. *See, e.g.*, *Barrios v. Suburban Disposal, Inc.,* No. 2:12-CV-03663, 2013 WL 1504489, at

*2 (D.N.J. Apr. 10, 2013) (dismissing FLSA claim where plaintiff failed to allege that his work involved interstate activity).

### (c) Schmidt Has Not Plausibly Alleged Approximate Unpaid Hours.

The TAC also fails to allege anything about the third element of Schmidt's FLSA claim, specifically, the "approximate number of hours" of his allegedly uncompensated "work." *See Ra*, 2019 WL 95473, at *4. On this element, the TAC's sole reference to Schmidt being on the Notre Dame lacrosse team from 2017 to 2021 (TAC ¶ 30) is insufficient even at the Rule 12(b)(6) stage.[22] Lacking relevant factual allegations, the TAC effectively requires speculation not only about what Schmidt did for Notre Dame lacrosse, but also when and for how long. With these key elements left to conjecture, dismissal of the TAC is justified. *See Huntington Nat'l Bank*, 712 F.3d at 169; *see also Nardelli v. Lamparski,* No. 2:20-CV-01723, 2022 WL 4133335, at *5 (W.D. Pa. Sept. 12, 2022) (declining to "speculate that it is plausible" that the plaintiff worked overtime).

In sum, the TAC failed to plead sufficient facts on all three elements of his FLSA claim, and, accordingly, the Court should dismiss Count I of the TAC against Notre Dame.

### 3. The Court Should Not Exercise Supplemental Jurisdiction over Schmidt's State Law Claims.

If, as it should, the Court dismisses Schmidt's FLSA claim (i.e., the federal question on which Plaintiffs plead subject matter jurisdiction), the Court should decline to exercise

---

[22] *See, e.g.*, *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 242–43 (3d Cir. 2014) (internal citation omitted) (affirming dismissal of FLSA overtime claim at Rule 12(b)(6) stage in part because plaintiff did not "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked" overtime); *Rosario*, 247 F. Supp. 3d at 567 (dismissing 73 of 76 named plaintiffs who "failed to allege that they worked a forty-hour work week in which they were not compensated for their overtime."); *Attanasio,* 2011 WL 5008363, at *8 (dismissing plaintiffs' FLSA claims at the Rule 12(b)(6) stage because their "globalized assertions as to the general loss suffered" due to alleged uncompensated work during the "relevant period" did not give a "coherent approximation of the time owed.").

supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367. *See Pahlavan v. Drexel Univ. Coll. of Med.*, 438 F. Supp. 3d 404, 428 (E.D. Pa. 2020) (citing 28 U.S.C. § 1367(c)(3)) ("A district court may decline to extend supplemental jurisdiction over a state law claim where 'the district court has dismissed all claims over which it had original jurisdiction."). Courts typically do so. *See id*. This Court should do the same upon dismissing Schmidt's FLSA claim from this action, by declining to exercise supplemental jurisdiction over and then dismissing his IMWL claim (Count XVII) and unjust enrichment claim (Count XVIII).

### 4. Schmidt Fails to State an Actionable Indiana State Law Claim Against Notre Dame.

Even if considered as pleaded, though, Schmidt's Indiana state law claims fail.

### (a)  Schmidt Cannot Pursue an IMWL Claim as a Matter of Law.

Count XVII alleges that Notre Dame violated the IMWL. (*See* TAC ¶¶ 703-710.) Yet, there can be no actionable claims under the IMWL as a matter of law because the IMWL exempts both Schmidt and Notre Dame from coverage.

First, Schmidt is not an "employee" under the IMWL, which defines "employee" to exclude "[s]tudents performing services for any … university in which they are enrolled and are regularly attending classes." Ind. Code § 22-2-2-3(i). Plaintiffs assert that they performed "services" for the schools they attended (*see* TAC ¶¶ 43-44, 49), and thereby pleaded Schmidt out from IMWL coverage or protection. Count XVII must fail.

Second, Notre Dame is not an "employer" under the IMWL, which excludes from coverage "any employer who is subject to the minimum wage provisions of the [FLSA]." Ind. Code § 22-2-2-3. Based on this statutory exclusion, courts routinely dismiss IMWL claims where the plaintiff also alleges that the defendant is an "employer" under the FLSA. *See, e.g.*, *Shivers v. Miller Beach Terrace, Inc.*, No. 2:11 CV 204, 2012 U.S. Dist. LEXIS 55804, at *3 (N.D. Ind. Apr. 18, 2012)

(allegations that the defendant "is an employer subject to the FLSA," which plaintiff incorporated into his IMWL claim, "preclude[d] [him] from recovery under the [IMWL]"); *Harvey v. Cmty. Health Network, Inc.*, No. 122CV000659, 2022 WL 17104203, at *1 (S.D. Ind. Nov. 22, 2022) (dismissing IMWL claim because plaintiff alleged defendant was subject to FLSA). Here, Plaintiffs incorporate their allegation that Notre Dame is subject to the FLSA's minimum wage provisions into their IMWL claim. (TAC ¶¶ 37, 711.) This pleading has foreclosed Schmidt's IMWL claim.[23]

Even if the Court set aside these IMWL exemptions (and it should not), Schmidt's Indiana state law claims still fail. Just as Schmidt has insufficiently pleaded an FLSA claim against Notre Dame, *see supra* at Section IV.E.2, he has insufficiently pleaded an IMWL claim against Notre Dame. *See Richardson*, 44 N.E.3d at 44 (describing the FLSA as the "federal analogue of the [IMWL]."); *and compare* Ind. Code Ann. § 22-2-2-3 (subject to statutory exceptions, defining "employee" as "any person employed or permitted to work….") *with* 29 U.S.C. § 203(g) (defining "employ" as "to suffer or permit to work."). Thus, dispositive IMWL exemptions aside, Schmidt's insufficient, speculative pleadings present no actionable FLSA or IMWL claim.

---

[23] To be sure, that Notre Dame denies employing Schmidt (or any other proposed Indiana class member) does not entitle Schmidt to pursue an IMWL claim, because a plaintiff's inability to recover under the FLSA does not rescue an alternatively pleaded IMWL claim. *See Skillman v. Ivy Tech Cmty. Coll.*, 52 N.E.3d 11, 15–16 (Ind. Ct. App. 2016) (citing *Montgomery v. Bd. of Trustees of Purdue Univ.*, 849 N.E.2d 1120, 1125 (Ind. 2006)) (plaintiff could not maintain an IMWL claim even though he could not recover overtime pay under the FLSA due to the defendant's Eleventh Amendment immunity from private suit); *see also Richardson v. Town of Worthington*, 44 N.E.3d 42, 47 (Ind. Ct. App. 2015) (defendant was subject to the FLSA minimum wage provisions but statutorily exempt from its overtime provisions, meaning the plaintiff could not recover overtime under the FLSA ***and*** could not state a claim for overtime under the IMWL).

### (b) Schmidt Has Failed to State an Actionable Claim for Unjust Enrichment Against Notre Dame.

Schmidt asserts a common law claim for unjust enrichment (Count XVIII) against Notre Dame, which also should be dismissed under Rule 12(b)(6) for two independent reasons.

First, because Schmidt's unjust enrichment claim is premised on the same allegations as his FLSA claim, the FLSA preempts it. (*See* TAC ¶¶ 711-716.) *See Scott v. NOW Courier, Inc.,* No. 110CV00971, 2011 WL 13350293, at *4 (S.D. Ind. Sept. 27, 2011) (plaintiffs "cannot utilize their unjust enrichment claim as a route to the same remedies available to them under the FLSA, i.e. unpaid wages."). Schmidt's unjust enrichment claim is plainly a poorly disguised FLSA claim. Specifically, Count XVIII alleges (albeit without particularity) that Notre Dame benefited from Schmidt's "uncompensated labors"; "secur[ed] work" from him "without properly paying compensation"; induced him "to perform work while failing to properly compensate [him] for all hours worked as required by law"; and, as a result, "enjoyed reduced overhead with respect to [his] labor costs, and therefore realized additional earnings and profits." (TAC ¶¶ 712-715.) Based on FLSA preemption, a district court in Indiana recently dismissed an unjust enrichment claim premised on allegations nearly identical to these asserted by Schmidt. *See Prater v. All. Coal, LLC,* No. 321CV00066, 2022 WL 22285582, at *5 (S.D. Ind. Mar. 16, 2022). This Court should do the same and dismiss Schmidt's unjust enrichment claim as preempted by the FLSA.

Second, Count XVIII fails because the TAC does not allege facts sufficient to plead two of the requisite elements of an unjust enrichment claim under Indiana law: (a) some benefit conferred at the express or implied request of Notre Dame, and (b) an expectation of payment by Schmidt. *See Woodruff v. Ind. Fam. & Soc. Servs. Admin.,* 964 N.E.2d 784, 791 (Ind. 2012) (identifying unjust enrichment claim elements).

Schmidt did not allege that Notre Dame expressly or impliedly requested that he play lacrosse, the only purported source of his alleged "benefit" to Notre Dame. For example, the TAC does not mention whether Notre Dame recruited Schmidt or anything else about how he came to be "on" its lacrosse team. *See supra* at Section III.A. The absence of these allegations dooms his unjust enrichment claim. *See Rose v. NCAA*, 346 F. Supp. 3d 1212, 1229 (N.D. Ill. 2018) (applying Indiana law and dismissing unjust enrichment claim because plaintiffs, football players for Purdue, did not allege that either defendant, the NCAA or the Big Ten Conference, asked them to play football at Purdue).

Nor did Schmidt allege that he "expected payment" from Notre Dame for playing lacrosse. *Woodruff*, 964 N.E.2d at 794; *Rose*, 346 F. Supp. 3d at 1229 (citing *Bayh v. Sonneburg*, 573 N.E.2d 398, 408 (Ind. 1991) (noting that one who "labors without an expectation of payment cannot recover" under an unjust enrichment theory). In fact, the TAC reflects that Plaintiffs did ***not*** expect payment for playing a sport at their respective schools. *See* TAC ¶ 282 (alleging NCAA D1 member schools are prohibited from compensating student-athletes); *see also Johnson v. NCAA*, 556 F. Supp. 3d 491, 510 (E.D. Pa. 2021) (finding that the First Amended Complaint, based on the same allegations still contained in the TAC, did not allege that Plaintiffs expected compensation).[24] Schmidt's failure and inability to allege that he expected Notre Dame somehow to pay him for playing lacrosse irretrievably dooms his unjust enrichment claim. *Rose*, 346 F. Supp. 3d at 1229 (dismissing unjust enrichment claim because plaintiffs failed to allege an expectation of payment); *see also Brueck v. John Maneely*, 131 F. Supp. 3d 774, 781 (N.D. Ind. 2015) (same).

---

[24] Relatedly, the TAC does not allege that Schmidt participated in lacrosse involuntarily, and "[s]tudent participation in collegiate athletics is entirely voluntary." *Berger*, 843 F.3d at 293 (governing precedent in the Seventh Circuit, the jurisdiction where Schmidt alleges to have been "employed" by Notre Dame as a lacrosse player).

### F.  The Court Should Dismiss with Prejudice Under These Special Circumstances.

Plaintiffs' calculated disregard for jurisdictional and procedural rules, and for the Third Circuit's pleading instructions, justifies dismissal with prejudice. To recap, seeking to avoid *Berger,* Plaintiffs forum-shopped Notre Dame and Schmidt into this case in 2021, ***even though*** this Court does not have personal jurisdiction over Notre Dame, ***even though*** venue is improper as to Notre Dame, and ***even though*** Schmidt's action against Notre Dame has no logical relationship to any of the other Plaintiffs' claims against their respective schools. Plaintiffs then had ***years*** to garner specific factual allegations about Notre Dame and Schmidt. Then, in July 2024, *Johnson* told Plaintiffs that they must allege such specific facts—that they must distinguish between student-athletes like Schmidt and others—because playing a D1 college sport does not automatically qualify as "work" under the FLSA. Yet, in brazen disregard of the Third Circuit's guidance, Plaintiffs filed the TAC, which, like the Second Amended Complaint, says absolutely nothing specific about Schmidt and Notre Dame, except that he was on its lacrosse team roster from 2017 to 2021.

As explained fully in the NCAA Brief, the Court has discretion to dismiss with prejudice because Plaintiffs were plainly on notice about these fatal deficiencies in their pleading "but chose not to resolve them." *Davis*, 765 F.3d at 244–45; *see also Rosario*, 247 F. Supp. 3d at 567 n.9 (denying leave to amend FLSA claims after court told plaintiff what they needed to do to state those claims and they failed to do it). Plaintiffs' contempt for *Johnson's* mandate should not unlock a fifth chance to pursue a patently untenable case.

Moreover, dismissal with prejudice is particularly appropriate as to Schmidt's forum-shopped claims against Notre Dame because he cannot salvage them in any proper forum, either. *See Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174–75 (3d Cir. 2010)

31

(affirming dismissal with prejudice because amendment would be futile). While this Court is not bound by *Berger*, the Court should consider that *Berger* governs law within the Seventh Circuit, which includes Notre Dame's home base from which it allegedly "employs" student-athletes like Schmidt. In this regard, having operated under *Berger*'s holding that Schmidt cannot be an FLSA employee, Notre Dame would not expect to be (and should not be): (i) hailed into a Pennsylvania court to defend an FLSA wage claim by a student-athlete (even one, unlike Schmidt, who may have played a game in or had transient contact with Pennsylvania); (ii) (mis)joined together with unrelated defendant-schools located outside the Seventh Circuit, which may not have directly relied upon *Berger*; or (iii) forced to prove under any test that Schmidt is not an FLSA employee, as *Berger* would not require such a test. Consequently, principles of fundamental fairness counsel that the Court dismiss with prejudice (and not transfer) Schmidt's action against Notre Dame.

In sum, Schmidt's action against Notre Dame does not merit any court's attention, and, under no circumstance, does it belong in this Court. *See supra* at Section IV.B, C. Rather, Schmidt's action against Notre Dame would belong, if anywhere, within the Seventh Circuit, where *Berger* would render it dead on arrival. *See supra* at Section IV.D. There is thus no reason to prolong the inevitable: Schmidt's FLSA, IMWL, and Indiana unjust enrichment claims against Notre Dame must be dismissed, and, in these unique circumstances, the Court should do so with prejudice.

## V.    <u>CONCLUSION</u>

On any of the above-detailed grounds, the Court should extricate Notre Dame from this house of cards, which should topple due to Plaintiffs' refusal to play by the rules. The Court lacks personal jurisdiction over Notre Dame, warranting dismissal under Rule 12(b)(2). Venue is improper here as to Schmidt's action against Notre Dame—a defect Plaintiffs cannot disguise by

violating Rule 20 via misjoinder of Schmidt and Notre Dame—warranting severance of Schmidt's action against Notre Dame under Rule 21 and then dismissal of it under Rule 12(b)(3). Finally, even if the Court declines to dismiss (or transfer) for these procedural defects (and it should not), Schmidt's indisputably deficient pleading requires dismissal under Rule 12(b)(6) for failure to state his claims against Notre Dame. Whichever such ground the Court may invoke, it should not countenance much less permit transfer or leave to replead Schmidt's claims against Notre Dame. The only effective remedy under these special circumstances is dismissal with prejudice. Accordingly, the Court should grant this Motion and dismiss the TAC, in its entirety and with prejudice, against Notre Dame.

Dated: March 24, 2025                    Respectfully submitted,


                                         /s/ Jonathan L. Israel
                                         Jonathan L. Israel (Admitted *pro hac vice*)
                                         FOLEY & LARDNER LLP
                                         90 Park Avenue
                                         New York, NY 10016
                                         212.338.3610
                                         jisrael@foley.com

                                         Katelynn M. Williams (Admitted *pro hac vice*)
                                         FOLEY & LARDNER LLP
                                         150 East Gilman Street
                                         Madison, WI 53703
                                         608.258.4286
                                         kmwilliams@foley.com

                                         John R. FitzGerald (Admitted *pro hac vice*)
                                         FOLEY & LARDNER LLP
                                         777 East Wisconsin Avenue
                                         Milwaukee, WI 53202
                                         414.297.5079
                                         jfitzgerald@foley.com

                                         Mark Neuberger, PA Bar No. 49714
                                         FOLEY & LARDNER LLP
                                         One Biscayne Tower
                                         2 South Biscayne Boulevard, Suite 1900
                                         Miami, FL 33131
                                         305.482.8408
                                         mneuberger@foley.com

                                         *Attorneys for Defendant University of Notre*
                                         *Dame du Lac*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2025, I electronically filed the above with the Clerk of

Court using the CM/ECF system which will automatically send e-mail notification of such filing

to all counsel of record.

<u>*/s/ Mark Neuberger*</u>
Mark Neuberger